# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| PCS FINANCIAL CORP., | ) | |
| | ) | Case Nos. 08-30930 |
| In re: | ) | Case Nos. 08-30934 |
| | ) | |
| PRIME ACCEPTANCE CORP., | ) | |
| | ) | Judge Hollis |
| Debtors/Debtors in Possession. | ) | |

## AMENDED FINAL ORDER PURSUANT TO 11 U.S.C. §363, RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND LOCAL BANKRUPTCY RULE 4001-2(A)(2) (I) AUTHORIZING THE USE OF CASH COLLATERAL, AND (II) GRANTING RELATED RELIEF

Upon the motions, dated November 13, 2008 (the "Motion"), of PCS Financial

Corp. ("PCS") and Prime Acceptance Corp. ("Prime Acceptance" and together with PCS, the

"Debtors") seeking, among other things, the Debtors' emergency use of cash collateral ("Cash

Collateral") pursuant to section 363 of the United States Code (11 U.S.C. §§ 101, et seq.) (as

amended, the "Bankruptcy Code"), as more fully set forth in the Motion; an interim hearing on

the Motion having been held on November 18, 2008; and a second interim hearing on the Motion

having been held on December 2, 2008; and a final hearing on the Motion having been held on

January 6, 2009; and a continued status hearing on the Motion having been held on February 12,

2009; and notice of the Motion having been given as set forth in the Motion and in the Amended

Notice of Hearing; and it appearing from the record before the Court (as defined herein) and after

due deliberation that sufficient cause exists for the entry of this Order, the Court makes the

following findings and enters its Order, all as set forth below:

## **FINDINGS**

A.     The Debtors commenced their cases (collectively, the "Cases") by the filing of

voluntary petitions for relief under chapter 11 of the Bankruptcy Code on November 13, 2008

(the "Petition Date"), in the United States Bankruptcy Court for the Northern District of Illinois

(the "Court").

B.     The Debtors intend to operate such operating businesses and manage their assets

and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and

1334.

D.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

E.     A final hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2)

on January 6, 2009 (the "Final Hearing"). Notice sufficient under the circumstances of the Final

Hearing and the relief requested in the Motion was given to (i) the Office of the United States

Trustee, (ii) counsel to the Agent and the Lenders, (iii) the creditors holding the 20 largest

unsecured claims against each of the Debtors; and (iv) all other parties that have requested to

receive notice of pleadings in the Cases.

F.     At the Final Hearing, it was represented to the Court that:

1.     Prior to the Petition Date, the Debtors obtained financing pursuant to that

certain Third Restated Loan and Security Agreement, dated as of September 1, 2002 (as

amended, supplemented or otherwise modified prior to the commencement of this chapter

11 case, the "Credit Agreement"), by and among the Debtors, as borrowers, certain

financial institutions, including Bank of America, N.A. ("Bank of America"), as lenders

(the "Lenders"), and Bank of America, as administrative agent (the "Agent"). The

2

Debtors have acknowledged that the Agent and the Lenders assert that they have valid claims under the Credit Agreement and/or other agreements secured by senior and perfected in substantially all of the Debtors' assets (the "Prepetition Collateral"). However, there has been no adjudication as to the validity, amount, enforceability, priority, and/or perfection of the claims, liens, and security interests of the Agent and/or the Lenders, and accordingly, nothing contained in this Order shall constitute a final determination by this Court with respect to the amount, validity, enforceability, priority, and/or perfection of the claims, liens, and security interests of the Agent and the Lenders; provided, however, that the rights of the Debtors and other persons or entities to challenge the amount, validity, enforceability, priority, and/or perfection of the claims, liens, and security interests of the Agent and the Lenders shall be subject to the provisions of Paragraph 18 hereof. As a result, payments (if any) hereunder to the Agent, on behalf of the Agent and/or the Lenders, shall be provisional. On the other hand, nothing contained in this Order shall constitute any concession by the Agent, whether on behalf of the Agent, any of the Lenders, or otherwise, of any deficiency of any nature or type whatsoever with respect to any such claims, liens, or security interests.

2.      The Debtors' use of Cash Collateral as provided herein is necessary to fund the Debtors' day-to-day operations and the administration of these chapter 11 Cases. In particular, the Debtors have no cash or assets readily convertible into cash that are not subject to the asserted liens and security interests of the Agent and the Lenders. Absent this Court's authorization to use the Cash Collateral, the Debtors will be unable to meet payroll obligations as well as other ordinary course business expenditures that are essential to the Debtors' existence as going concerns.

13437816.9 08135930

3.    The Agent has withdrawn its objection to the relief provided herein in
return for the adequate protection lien and other protections granted pursuant to the
provisions of this Order.

G.    Based on the record before this Court, it appears (and the Debtors and the Agent
and the Lenders have stipulated) that the terms of this Order, including, without limitation, the
terms of the Debtors' use of Cash Collateral and the provision of adequate protection therefor are
fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with
their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

H.    This Court concludes that entry of this Order is in the best interests of the
Debtors' estates and creditors as its implementation will, among other things, allow for the flow
of supplies and services to the Debtors necessary to sustain the operation of their existing
business and enhance their prospects for a successful reorganization.

## ORDER

Based on the foregoing, it is hereby ORDERED, ADJUDGED AND DECREED that:

1.    The Motion is granted to the extent set forth in this Order.

2.    Subject to the terms and conditions of this Order (but only subject to such terms
and conditions), the Debtors are authorized to use Cash Collateral (including, but not limited to,
cash constituting the proceeds, product or profits of any Prepetition Collateral, whether received
prior to or after the Petition Date) for the period (the "Specified Period") from the Petition Date
through a period not to extend beyond April 3, 2009 pursuant to an approved budget attached
hereto as Exhibit A (the "Cash Collateral Budget"). Except as otherwise expressly provided in
this Order, Cash Collateral may be used solely (a) during the Specified Period, and (b) up to the
amounts stated for any line item, during the periods and for the purposes identified in the Cash

Collateral Budget; provided, that during any week in the Specified Period, the Debtors may

spend, or the Debtors' receipts may vary, by up to 10% of the respective aggregate amount set

forth in the Cash Collateral Budget for such week, that the Debtors' cash balance may vary from

the Cash Collateral Budget by 10%, and that any amount in the Cash Collateral Budget (plus the

10% allowance) not spent in any week will be available during subsequent weeks prior to the

expiration of the Specified Period.

3.      If Cash Collateral is not used for a particular line item in the Cash Collateral

Budget during the period for which Cash Collateral usage is authorized for such line item in this

Order, or if Cash Collateral is used in an amount less than specified in such line item during the

budgeted period, then the Debtors may use the unused balance of such line item in other line

items so long as the aggregate amount expended with respect to such line items does not exceed

the amounts budgeted therefor.

4.      The Debtors reserve the right to seek authority to use additional Cash Collateral

beyond the amounts set forth herein during the Specified Period either (a) with the further

written consent of the Agent or (b) as may be further ordered by the Court after notice and a

hearing.  The Agent and the Lenders expressly reserve their right, in their sole and absolute

discretion, to grant or withhold any such written consent, and the Agent and the Lenders further

expressly reserve any rights they may have under this Order, the Bankruptcy Code, or other

applicable law to oppose any such relief.  Without limiting the generality of the preceding

sentence, the Agent's and the Lenders' consent to use Cash Collateral during the Specified

Period pursuant to the provisions of this Order shall not be deemed to imply or otherwise

constitute consent to the use of Cash Collateral for any purpose after the expiration of the

Specified Period and specifically, the Agent's and the Lenders' consent to expenditures during

5

the Specified Period shall not imply or otherwise constitute any consent of the Agent and the

Lenders to any such expenditures in future budgets for the period after the Specified Period that

are not the subject of further consensual cash collateral orders. Nothing contained herein

prejudices the rights of either the Debtors or the Agent and the Lenders with respect to any

requested use of Cash Collateral for the period subsequent to the Specified Period.

5.    Pursuant to sections 361 and 363(e) of the Bankruptcy Code and for purposes of

section 507(b) of the Bankruptcy Code, as adequate protection to the Agent and the Lenders for

the Debtors' use of Cash Collateral and other use or diminution of the value of the collateral

arising on account of the stay imposed under section 362 of the Bankruptcy Code and/or the use

of Cash Collateral or other collateral (and solely to the extent of any diminution of the value of

its prepetition collateral), the Agent is hereby granted a post-petition replacement lien and

security interest in all property, assets, interests in property, and rights of any kind and nature, of

any Debtor (other than actions under chapter 5 of the Bankruptcy Code, which avoidance actions

are expressly excluded from the scope of the adequate protection lien granted pursuant to this

paragraph 5 of this Order), wherever located, whether existing on the Petition Date or acquired

or arising thereafter, which replacement lien and security interest shall be junior only to all valid,

enforceable and perfected prior liens in existence as of the Petition Date. The liens and security

interest granted to the Agent pursuant to this paragraph shall be valid and perfected, as of the

Petition Date, without the need for execution or filing of any further document or instrument

otherwise required to be executed or filed under applicable non-bankruptcy law.

6.    In order to provide the Agent and the Lenders with adequate protection pursuant

to 11 U.S.C. § 361 in respect of their interests in the Cash Collateral (existing as of the date of

commencement of this case) resulting from the stay imposed under Section 362 of the

6

Bankruptcy Code and in return for the Debtors' use of Cash Collateral, the Agent further shall be

entitled to receive and the Debtors shall be obligated to timely make the following adequate

protection payments:

(a)    The Debtors shall pay to the Agent, for the ratable benefit of the Lenders

in accordance with the provisions of the Credit Agreement, (i) $500,000 no later than February

25, 2009, which payment shall be applied by the Lenders to the principal amount then

outstanding under the Credit Agreement, (ii) $600,000 per month on the tenth (10th) day of each

calendar month beginning with the month of December 2008, which payments shall be

provisionally applied by the Lenders in their discretion pursuant to the terms of the Credit

Agreement (it being understood that the Banks intend to provisionally apply amounts received,

in part, to accrued and accruing default interest amounts but that the Debtors reserve all rights in

accordance therewith, including to challenge the Banks' entitlement to default interest at a later

date) and (iii) the net proceeds of Permitted Bulk Sales, if any, consummated in accordance with

the terms of this Order.

(b)    As additional adequate protection, the Debtors are further authorized and

directed to promptly pay all reasonable fees, costs and charges (including attorneys', consultants'

and field examiner fees and expenses) incurred by the Agent and/or the Lenders (to the extent of

and subject to the limitations, if any, on the right of the Agent and/or the Lenders to receive the

reimbursement of fees, costs and expenses set forth in the Credit Agreement) on demand and

without further approval of the Court; provided that with respect to the Agent's and or the

Lenders' attorneys' and consultants' fees, the following procedures shall be utilized: (i) the

Agent shall serve copies of any pertinent fee statements of the Agent's and/or the Lenders'

professionals (with appropriate redacting to any time entries advisable in the Agent's good faith

7

judgment to address any concerns about the inadvertent disclosure of privileged or confidential

material) upon the attorneys for the Debtors and the Office of the United States Trustee, (ii) such

fee statements promptly shall be paid if there are no written objections to the reasonableness of

such fee statements from any such parties in interest within ten (10) business days after such

delivery, and (iii) if there are any such written objections within such ten business day period,

which must be made with specificity and reference particular time entries or expense items that

are objected to as being unreasonable or otherwise unrecoverable under the Credit Agreement,

the unobjectionable balance of such fee statements promptly shall be paid, with any disputed

items to be resolved either by agreement of the Debtors and the Agent and/or the Lenders, upon

motion brought before the Court or at the time of the final determination of the Agent's and the

Lenders' claims.

      7.      In addition, the Agent and the Lenders shall have an administrative claim of the

highest administrative priority under Section 507(b) of the Bankruptcy Code for any diminution

in the value of the Prepetition Collateral not otherwise protected and satisfied by the lien on the

Replacement Collateral granted to the Lenders and any payments made or other adequate

protection granted pursuant to this order (the "Superpriority Claim"), including those specified

in, or ordered pursuant to Sections 105, 326, 330, 331, 503(b), 507(a) or 726 or any other

provision of the Bankruptcy Code or otherwise (whether incurred in the Cases or any or any

successive or superseding case of the Debtors under any chapter of the Bankruptcy Code (a

"Successor Case")), and shall at all times be senior to the rights of the Debtors, any successor

trustee or estate representative in the Cases or any Successor Case.

      8.      Notwithstanding any provision of the Motion, this order or the Debtors' proposed

budget to the contrary, the Debtors shall not be authorized to use the Cash Collateral to originate

or acquire new receivables from third parties or otherwise to create "New Originations" as such line-items are identified in the budget unless: (i) they have complied with the reporting requirements of the Credit Agreement and this Order; (ii) any such new originations comply with the Debtors' underwriting standards that are in effect as of the Petition Date; and (iii) such new originations do not, in the aggregate for any monthly period, exceed 37.5% of budgeted cash collections for such monthly period as reflected in the line items of the Cash Collateral Budget labeled "Cash receipts - Prime Acceptance Corp." and "Cash receipts-PAC agency payments (net)"; provided further that the Debtors shall, on or before the 7th day of each month beginning with the month of January 2009, undertake a reconciliation of actual to budgeted cash collections for the prior month whereupon if actual cash collections varied from the budgeted amount for such prior month, then the amount of budgeted cash collections for the following month shall (solely for the purposes of the calculation under clause (iii) above) be increased or decreased by the actual variance in such prior month's cash collections.

9.      During the Specified Period, the Debtors shall:

(a)      take all reasonable actions necessary to safeguard the collateral from dissipation;

(b)      apply Cash Collateral and other sources of cash available to the Debtors hereunder to the expenses of operation of their businesses in all material respects as provided in the Cash Collateral Budget (as modified by this Order) and not otherwise;

(c)      (i)      segregate, as soon as practicable, any collections of receivables for which the Debtors solely act as servicer or for which the Debtors hold such collections in trust for any dealers or other third parties from the cash, collections and other proceeds of the Agent's collateral and (ii) pending any such segregation, maintain a record and accounting of such cash

9

receipts and collections as would enable the tracing and/or differentiation of cash held in any commingled account;

(d)     establish separate cash reserves of (i) not less than $250,000 in a segregated, interest-bearing cash collateral account maintained with Bank of America, N.A. (the "ACH Reserve Account"), to guarantee the payment of any cash management obligations of Bank of America, N.A. incurred as a result of the Debtors' postpetition incoming ACH activity and (ii) not less than $50,000 in a segregated, interest-bearing cash collateral account maintained with MB Financial Bank (the "Merchant Activity Reserve Account"), to guarantee the payment of any cash management obligations of MB Financial Bank incurred as a result of the Debtors' postpetition merchant card activity; provided that such minimum reserve amounts shall be adjusted upward or downward monthly (in Bank of America, N.A.'s or MB Financial Bank's sole discretion, respectively) based upon actual chargeback or return activity for the prior month;

(e)     pre-fund, in a separate account from the ACH Reserve Account and the primary debtor-in-possession operating account, any budgeted outgoing ACH activity that the Debtors will originate for the benefit of any third parties;

(f)     use reasonable best efforts to consummate bulk sales of receivables from their portfolio of owned receivables at prices above the Debtors' origination cost for such receivables (each, a "Permitted Bulk Sale");

(g)     provide the Agent and the Banks with at least five (5) business days advance notice of any proposed modifications to the Debtors' existing dealer agreements or any proposed new dealer agreements and will not agree to any modifications that lessen the dealers' underwriting standards and/or eligibility requirements without the Agent's prior written consent;

10

(h)    provide to Agent (or its designees) the following information regarding the

Debtors:

(i)    a weekly written report delivered to Agent and its financial advisors not later than 12:00 p.m. (Central time) on each Tuesday setting forth for the immediately preceding week (ending on Friday) reflecting actual figures against those set forth in the Budget for such weekly period;

(ii)    a weekly written report on the aging and status of all accounts payable and all accounts receivable owned or financed by the Debtors, including, on a gross basis, the status and amount of any such receivables that are past-due, delinquent or charged-off;

(iii)    a weekly Borrowing Base Certificate, in the form appended as Exhibit B to the Credit Agreement, to the Agent not later than 12:00 p.m. (Central time) on each Tuesday for the immediately preceding week (ending on Friday); and

(iv)    copies of all loan agreements, notes and/or shareholder agreements relating to any subordinated indebtedness of the Debtors in effect on the date hereof; and

(v)    without limiting the generality of the other provisions of this Order, all financial reporting required by the Credit Agreement; and

(i)    not retain a financial consultant unless such financial consultant is

reasonably satisfactory to the Agent (including, without limitation, following the Debtors'

review and consideration of potential consultants to be proposed by the Agent and the Lenders).

10.    During the Specified Period, the Debtors shall cooperate with the Agent's field

examiners and/or financial consultants. The Debtors shall grant such field examiners and/or

financial consultants and their representatives reasonable access to the books, records, personnel,

premises and consultants of the Debtors during normal business hours upon reasonable advance

notice (which shall be not less than twenty-four hours notice), and the Debtors and their

consultants shall cooperate with the Agent's field examiners and/or financial consultants and

their representatives with respect to any reasonable request for information, documentation

and/or inspection relating to the operations of the Debtors and the collateral securing the

Debtors' obligations to the Agent and the Lenders.

11

13437816.9 08135930

11.    In the event that any or all of the provisions of this Order are hereafter reversed, stayed, modified, amended, or vacated by a subsequent order of the Court or any other court, such reversal, stay, modification, amendment, or vacation shall not affect the validity of any right or obligation arising under this Order prior to the effective date of such modification, amendment or vacation, and such right or obligation shall be governed in all respects by the provisions of this Order.

12.    The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order in these Cases, including, without limitation, any order appointing any chapter 11 trustee or other estate representative for any of the Debtors, any order confirming any chapter 11 plan, or any order converting any of the Cases from chapter 11 to chapter 7, and the provisions of this Order, including, without limitation, the priorities (and applications) in payment, liens, and security interests granted pursuant to this Order, shall continue in these and any superseding cases under the Bankruptcy Code, and such priorities (and applications) and payments, liens and security interests shall maintain their priority as provided by this Order.

13.    In connection with any future hearing on the Motion, the Debtors shall comply with the following procedural requirements (except in an emergency situation requiring expedited relief from the Court):

    (a)    to the extent that any future requests to use the Cash Collateral differ from the use originally sought in the Motion or shall be tied to a budget for the period for which such use is required other than that as appended to the Motion, any such request or budget, along with the proposed terms of any such order, shall be served on Agent at least five (5) days prior to any future hearing on the Motion; and

12

      (b)     to the extent that the Debtors intend to rely on affiants or witnesses other than Louis Gineris, Christopher Ward or Kenneth Nichol in support of the Motion, the Debtors shall identify any such additional affiants and witnesses and, in any event, shall make available all of their affiants or witnesses for discussion of the budget for the next period no sooner than two (2) days after delivery to Agent of any extended budget and projections, and no later than two (2) business days prior to any hearing on extended use of Cash Collateral.

14.     The Debtors do not seek to use Cash Collateral to make payments to their attorneys or other professionals for any of their prepetition fees and expenses during the Specified Period, and no Cash Collateral shall be used for such purpose during the Specified Period.

15.     The Debtors' right to use the Cash Collateral shall terminate upon the earliest of the following:

      (a)     Automatically upon the termination of the Specified Period (*i.e.*, April 3, 2009); or

      (b)     Forty-eight hours after the Debtors' counsel receives e-mail notification from the Agent's counsel that a Cash Collateral Termination Event, as defined below, has occurred.

16.     The occurrence of any of the following shall constitute an "Cash Collateral Termination Event":

      (a)     any default by the Debtors under or failure by Debtor to perform, keep or observe any term, provision, condition, covenant, promise or undertaking in this Order, including but not limited to any expenditure of Cash Collateral materially inconsistent with the Cash Collateral Budget;

13437816.9 08135930

(b)    the Debtors enter into an agreement for the proposed sale of substantially all of the remaining assets of any of the Debtors to which Agent has not consented (or indicated its lack of objection) in writing, or this Court enters an Order authorizing the sale of substantially all of the assets of any of the Debtors to which Agent has objected;

(c)    the occurrence of a material Event of Default under the Credit Agreement (other than relating to the commencement of the Cases or under any financial covenant) relating to the period following the Petition Date;

(d)    any representation by the Debtors in this Order, or any schedule, statement, report, notice, certificate or other writing furnished by Debtors to Agent is untrue or misleading in any material respect on the date as of which the facts set forth therein are stated or certified;

(e)    the occurrence of any fraudulent act, fraudulent conduct or fraudulent omission by the Debtors;

(f)    the Debtors make payments to, or for the benefit of, their existing equity holders or the holders of any subordinated debt on account of such entities' equity or subordinated debt interests or otherwise on account of any prepetition obligation;

(g)    appointment of a trustee or of an examiner with enhanced powers for the Debtors or the property of the estate of the Debtors;

(h)    conversion of any Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

(i)    dismissal of any Chapter 11 Case or any subsequent case under Chapter 7 of the Bankruptcy Code;

13437816.9 08135930

(j)      the entry of an order granting any lien superior or equal in priority to those held by Agent;

(k)      entry of an order under section 506(c) of the Bankruptcy Code surcharging the Prepetition Collateral;

(l)      the entry of an order granting relief from the automatic stay so as to allow a third-party to proceed against any material asset of the Debtors; or

(m)      the entry of an order staying, reversing, vacating or otherwise modifying this Order.

17.      By agreeing to the entry of this Order, Agent does not intend to prejudice or limit any of its or the Lenders' rights under the Bankruptcy Code, any agreement with or relating to any other creditor or party in interest, or other applicable law, including, without limitation, its right (if any) (without the necessity of seeking further relief from the automatic stay imposed pursuant to Section 362(a) of the Bankruptcy Code) to impose an administrative freeze on any of the Debtors' bank accounts in the event that any of the Debtors violate the provisions of this Order or the Debtors' authority to use Cash Collateral hereunder expires by its own terms or is terminated pursuant to the provisions hereof. Without limiting the generality of the preceding sentence, (a) Agent, by withdrawing its objection to the entry of this Order or otherwise, shall not be deemed to have consented, expressly or implicitly, to any surcharge of its collateral under or pursuant to section 506(c) of the Bankruptcy Code, and Agent expressly reserve its rights to oppose any relief that may be sought by the Debtors, any trustee, any other estate representative, or any creditor or other party in interest with respect to surcharge of collateral pursuant to section 506(c) of the Bankruptcy Code, and (b) the rights of the Agent or the Lenders under section 507(b) or other priority provisions of the Bankruptcy Code are not waived, but instead are

15

expressly reserved, in the event that the relief provided herein proves inadequate and Agent or

any Lender establishes entitlement to a priority claim under Section 507(b) or any other

provision of the Bankruptcy Code, including with respect to the proceeds of any actions under

chapter 5 of the Bankruptcy Code.

18.     The Debtors and any person or entity, including without limitation the official

committee of unsecured creditors (if any has been appointed), with appropriate legal standing

and/or authority to do so, shall have through and until March 6, 2009 (unless extended by

agreement of the Debtors and the Agent or by order of the Court entered on or prior to March 6,

2009) to commence an adversary proceeding against the Agent or the Lenders for the purpose of

challenging the validity, extent, priority, perfection and enforceability of the Agent's or the

Lenders' prepetition claims and liens, mortgages and security interests in the Debtors' assets, and

any person or entity, including without limitation the Debtors and any committee then or

thereafter appointed, that fails to commence such an adversary proceeding within such period

shall be barred forever from doing so.

19.     So long as the Debtors' right to use Cash Collateral has not been terminated

pursuant to the provisions of this Order and unless there is a subsequent order of the Court, the

Debtors are permitted to use the Cash Collateral to pay reasonable professional fees and

expenses on a monthly basis in amounts not to exceed the amounts set forth on the Cash

Collateral Budget after and to the extent that the payment of such fees and expenses has been

approved or permitted (including on an interim basis) pursuant to a procedure authorized by this

Court; provided, however, that the Debtors are not permitted to use the Cash Collateral to pay

professional fees of the Debtors incurred in connection with (i) the investigation, commencement

or prosecution of any action or proceeding of any claims, causes of action, or defenses against

16

the Agent or the Banks or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors; (ii) an assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, or determination of similar relief: (x) challenging the legality, validity, priority, perfection or enforceability of the Debtors' obligations under the Credit Agreement or the claims, liens, and security interests of the Agent and/or the Banks, (y) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Debtors' obligations under the Credit Agreement or the Agent's and/or the Banks' claims, liens and security interests, or (z) preventing, hindering or delaying the Agent's or the Bank's assertion of any lien, claim, right or security interest or realization upon any collateral; (iii) a request to use Cash Collateral that is not contemplated by or reflected in the Cash Collateral Budget without the prior written consent of the Agent; or (iv) a request for authorization to obtain postpetition loans or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code other than from the Agent without the prior written consent of the Agent.

20. This Order and the use of Cash Collateral authorized herein shall become effective as of the Petition Date immediately upon the entry of this Order by the Court. Except with respect to the payment of accrued items set forth in the Cash Collateral Budget or unless terminated for cause (within the meaning of section 362(d)(1) of the Bankruptcy Code) on a prior date by another Order of this Court entered after notice and opportunity for a hearing, the use of Cash Collateral authorized herein shall terminate on April 3, 2009 at 11:59 p.m., prevailing Central time, subject to the Debtors' right pursuant to paragraph 4 hereof to seek further order of the Court authorizing use of Cash Collateral. Termination of the use of Cash

Collateral authorized herein shall not impair the continuing effectiveness and enforceability of all

other provisions in this Order.

21.    A further status hearing on the Debtors' use of cash collateral shall be held on

April **2**, 2009 at 10:30 a.m., prevailing Central time, before the Court.

22.    The Court shall retain jurisdiction over the parties with respect to the enforcement

and interpretation of this Order.

Dated:    Chicago, Illinois
          February ___, 2009

                                        _____
                                        The Honorable Pamela S. Hollis
                                        United States Bankruptcy Judge    FEB 1 9 2009

13437816.9 08135930

# EXHIBIT A

Consolidated Cash Flow Estimates

Page 1 of 8

**Version 9**
**Week ending Friday**

| | 2/27/2009 | 3/6/2009 | 3/13/2009 | 3/20/2009 | 3/27/2009 |
|---|---|---|---|---|---|
| **CASH BALANCES** | | | | | |
| Beginning Cash Balance | 7,300,000.00 | 6,982,585.00 | 7,284,635.00 | 6,844,535.00 | 7,433,935.00 |
| **CASH IN FLOWS** | | | | | |
| Cash receipts - Prime Acceptance Corp. | 525,000.00 | 675,000.00 | 750,000.00 | 850,000.00 | 500,000.00 |
| Cash receipts - PAC Agency Payments (Net) | 10,000.00 | 10,000.00 | 75,000.00 | 5,000.00 | 5,000.00 |
| Cash receipts - PCS Financed | 350,000.00 | 575,000.00 | 525,000.00 | 650,000.00 | 325,000.00 |
| **TOTAL CASH IN FLOWS** | 885,000.00 | 1,260,000.00 | 1,350,000.00 | 1,505,000.00 | 830,000.00 |
| **TOTAL CASH AVAILABLE** | 8,185,000.00 | 8,242,585.00 | 8,634,635.00 | 8,349,535.00 | 8,263,935.00 |
| **CASH OUT FLOWS** | | | | | |
| Account Refunds | 20,000.00 | | 20,000.00 | | 20,000.00 |
| Audit Expense | | | | | 70,000.00 |
| Bank Charges | 75,000.00 | | | | |
| Bank Legal Fees | | | | | |
| Billing Outsourcing Expense | | | 7,000.00 | | |
| Chapter 11 Quarterly Fee | | | | | |
| Collection Expense | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Consulting Fees | | | | | |
| Credit Bureau Inquiries | | | 5,000.00 | | |
| Data Processing Expense | 7,500.00 | 500.00 | 500.00 | 500.00 | 22,500.00 |
| Dues and Subscriptions | 250.00 | | | | 250.00 |
| Employer 401(K) match | 4,000.00 | | 6,000.00 | | 4,000.00 |
| Equipment Maintenance and Replacement | 500.00 | 500.00 | 2,500.00 | 500.00 | 500.00 |
| Equipment Rental/Lease | 300.00 | | | | 300.00 |
| Field Expense | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Income Tax Distribution (Estimated Tax Payment) | | | | | |
| Insurance Expense - Group Medical/Dental | | 20,000.00 | | | |
| Insurance Expense - Workmens Compensation | | 1,350.00 | | | |
| Insurance Expense - Other | | | | 9,000.00 | |
| Illinois State Replacement | 33,265.00 | | | | 75,000.00 |
| Legal Expense | | | | | |
| Legal (Collection) | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Office Expense | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 |
| Messenger Expenses | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Vending | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Electricity | 1,500.00 | | | | 1,500.00 |
| Payroll Admin. Expenses (ADP) | 1,500.00 | | | 1,500.00 | |
| Processing Fees | 27,500.00 | 27,500.00 | 27,500.00 | 27,500.00 | 27,500.00 |
| Postage / Freight / Shipping | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| TB and Daily Postage (CGI/APS) | 5,000.00 | 3,000.00 | 6,000.00 | 9,000.00 | 2,500.00 |
| Purchase Power postage | | 5,000.00 | | | |
| Rent | | 30,000.00 | | | |
| Salaries | 125,000.00 | | 205,000.00 | | 125,000.00 |
| Seminars & Education | | 2,500.00 | | | |
| Supplies | 20,750.00 | 750.00 | 750.00 | 750.00 | 750.00 |
| Taxes - Employer Payroll | 13,500.00 | | 21,000.00 | | 13,500.00 |
| Telephone Expense | | | 7,500.00 | | |
| UCC Filings | | | 12,500.00 | | |
| Sales Expense | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| **TOTAL WEEKLY OUT FLOWS** | 352,415.00 | 107,950.00 | 340,100.00 | 65,600.00 | 380,150.00 |

We have excluded from this projection the line items previously noted as:
"Cash receipts - PCS Serviced & Non-owned cash" in CASH IN FLOWS and
"Payments to serviced & non-owned entities" in CASH OUT FLOWS
as they are not material to the budget and do not belong to PCS.

|  | Version 9 | | | | Page 2 of 8 |
| Week ending Friday | 2/27/2009 | 3/6/2009 | 3/13/2009 | 3/20/2009 | 3/27/2009 |
|---|---|---|---|---|---|
| **EXPENSES NOT NECESSARILY REQUIRING CASH OUT FLOW** | | | | | |
| Payments/Interest Expense - Banks | | | | | |
| Payments/Interest Expense - Notes | | | 600,000.00 | | |
| | | | | | |
| *TOTAL WEEKLY EXPENSES* | 352,415.00 | 107,950.00 | 940,100.00 | 65,600.00 | 380,150.00 |
| | | | | | |
| *APPROX WEEKLY EXCESS CASH INTEREST INC* | 7,832,585.00 | 8,134,635.00 | 7,694,535.00 | 8,283,935.00 | 7,883,785.00 |
| | | | | | |
| **NEW ORIGINATIONS** | | | | | |
| PCS Financial Dealers - New Originations including Reloans | 550,000.00 | 550,000.00 | 550,000.00 | 550,000.00 | 550,000.00 |
| Prime Acceptance Dealers | 300,000.00 | 300,000.00 | 300,000.00 | 300,000.00 | 300,000.00 |
| | | | | | |
| **ENDING CASH** | 6,982,585.00 | 7,284,635.00 | 6,844,535.00 | 7,433,935.00 | 7,033,785.00 |

Consolidated Cash Flow Estimates

|  | Version 9 |
| --- | --- |
|  | **Week ending Friday** |
|  | 4/3/2009 |

| | |
| --- | --- |
| **CASH BALANCES** | |
| Beginning Cash Balance | 7,033,785.00 |
| **CASH IN FLOWS** | |
| Cash receipts - Prime Acceptance Corp. | 625,000.00 |
| Cash receipts - PAC Agency Payments (Net) | 10,000.00 |
| Cash receipts - PCS Financed | 400,000.00 |
| **TOTAL CASH IN FLOWS** | 1,035,000.00 |
| **TOTAL CASH AVAILABLE** | 8,068,785.00 |

| | |
| --- | --- |
| **CASH OUT FLOWS** | |
| Account Refunds | |
| Audit Expense | |
| Bank Charges | 75,000.00 |
| Bank Legal Fees | |
| Billing Outsourcing Expense | |
| Chapter 11 Quarterly Fee | |
| Collection Expense | 2,000.00 |
| Consulting Fees | |
| Credit Bureau Inquiries | |
| Data Processing Expense | 500.00 |
| Dues and Subscriptions | |
| Employer 401(K) match | |
| Equipment Maintenance and Replacement | 500.00 |
| Equipment Rental/Lease | |
| Field Expense | 300.00 |
| Income Tax Distribution (Estimated Tax Payment) | |
| Insurance Expense - Group Medical/Dental | 20,000.00 |
| Insurance Expense - Workmans Compensation | 1,350.00 |
| Insurance Expense - Other | |
| Illinois State Replacement | |
| Legal Expense | |
| Legal (Collection) | 10,000.00 |
| Office Expense | 750.00 |
| Messenger Expenses | 250.00 |
| Vending | 250.00 |
| Electricity | |
| Payroll Admin. Expenses (ADP) | 1,500.00 |
| Processing Fees | 27,500.00 |
| Postage / Freight / Shipping | 3,000.00 |
| TB and Daily Postage (CGI/APS) | 3,000.00 |
| Purchase Power postage | 5,000.00 |
| Rent | 45,000.00 |
| Salaries | |
| Seminars & Education | 2,500.00 |
| Supplies | 750.00 |
| Taxes - Employer Payroll | |
| Telephone Expense | |
| UCC Filings | |
| Sales Expense | 300.00 |
| **TOTAL WEEKLY OUT FLOWS** | 199,450.00 |

We have excluded from this projection the line items previously noted as:
"Cash receipts - PCS Serviced & Non-owned cash" in CASH IN FLOWS and
"Payments to serviced & non-owned entities" in CASH OUT FLOWS
as they are not material to the budget and do not belong to PCS.

Version 9
**Week ending Friday**

4/3/2009

**EXPENSES NOT NECESSARILY REQUIRING CASH OUT FLOW**
Payments/Interest Expense - Banks
Payments/Interest Expense - Notes

| | |
|---|---|
| *TOTAL WEEKLY EXPENSES* | 199,450.00 |
| *APPROX WEEKLY EXCESS CASH INTEREST INC* | 7,869,335.00 |
| **NEW ORIGINATIONS** | |
| PCS Financial Dealers - New Originations including Reloans | 550,000.00 |
| Prime Acceptance Dealers | 300,000.00 |
| **ENDING CASH** | 7,019,335.00 |