# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

| | | |
|---|---|---|
| PCS FINANCIAL CORP., | ) | Chapter 11 |
| | ) | |
| In re: | ) | Case Nos. 08-30930 |
| | ) | Case Nos. 08-30934 |
| PRIME ACCEPTANCE CORP., | ) | Judge Hollis |
| | ) | |
| Debtors/Debtors-in-Possession. | ) | |

## **DEBTORS' JOINT FIRST AMENDED PLAN OF REORGANIZATION**

**DEBTORS' COUNSEL**:
David K. Welch, Esq. (Atty. No. 06183621)
Arthur G. Simon, Esq. (Atty. No. 03124481)
Scott R. Clar, Esq. (Atty. No. 06183741)
Jeffrey C. Dan, Esq. (Atty. No. 06242750)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
TEL: (312) 641-6777



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

PCS FINANCIAL CORP.,                    )        Chapter 11
                                        )
In re:                                  )        Case Nos. 08-30930
                                        )        Case Nos. 08-30934
PRIME ACCEPTANCE CORP.,                 )        Judge Hollis
                                        )
        Debtors/Debtors-in-Possession.  )


**DEBTORS' JOINT FIRST AMENDED PLAN OF REORGANIZATION**

PCS FINANCIAL CORP. ("PCS") and PRIME ACCEPTANCE CORP. ("Prime"),[1]

by and through their Attorneys, propose the following Joint First Amended Plan of

Reorganization ("Plan") in accordance with Section 1121(a) of the Bankruptcy Code.

**THE DEBTOR'S PRIMARY SECURED CREDITOR, BANK OF AMERICA, N.A.,**

**SUPPORTS CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**


**PREAMBLE**

On November 13, 2008, the Debtors filed their voluntary petitions for relief under

Chapter 11 of the Bankruptcy Code ("Petition Date").  The Debtors are operating their

businesses and managing their financial affairs as Debtors in Possession pursuant to

Sections 1101, 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner or

committee of unsecured creditors has been appointed to serve in these Chapter 11

---

[1] PCS and Prime are, at times, jointly referred to in this Plan as the "Debtors."

cases.  On December 2, 2008, the Bankruptcy Court entered an Order authorizing the joint administration of the Chapter 11 cases of PCS and Prime.

The Debtors are the proponents of the Plan.  The Plan provides for distributions to the holders of Allowed Claims from funds realized from continued operation of the Debtors' businesses on a consolidated basis[2] as well as from existing cash deposits and cash resources of the Debtors.  For a further discussion of the Plan, the reader's attention is directed to the Joint Disclosure Statement filed by the Debtors in connection with this Plan.

**ARTICLE I**

**DEFINITIONS**

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

**1.1**      **Administrative Expense:**      A cost or expense of administration of these Chapter 11 cases, including any actual, necessary expense of preserving or liquidating the estate, or of operating the businesses of the Debtors and all allowances approved by the Bankruptcy Court in accordance with Section 503 of the Bankruptcy Code.

**1.2**      **Allowed Claim:**  A "Claim" (as defined below) (I) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtors as liquidated in amount and not disputed or contingent in the Debtors' bankruptcy

---

[2]  Under Article VI of the Plan, Prime will be merged into PCS thereby formally consolidating the Debtors' businesses, assets and liabilities into a single consolidated entity bearing the corporate name of "PCS Receivables Corp."

schedules filed in these Chapter 11 cases, or (iii) that has been allowed by a "Final

Order" (as defined below) by the Bankruptcy Court, or (iv) that is allowed by the

provisions of this Plan.

**1.3**      **Allowed Interest**:  An "Interest" (as defined below) (I) proof of which has

been filed within the time fixed by the Bankruptcy Rules or within the time fixed by the

Bankruptcy Court; or (ii) that has been scheduled in the list of equity security holders

identified in the Debtors' bankruptcy schedules which have been filed with the

Bankruptcy Court in theses Chapter 11 cases; and (iii) in the event of either (I) or (ii), as

to which no objection to the allowance thereof has been filed within any applicable

period of time fixed by an Order of the Bankruptcy Court, or as to which any such

objection has been determined by a Final Order of the Bankruptcy Court.

**1.4**      **Bankruptcy Code**:   Title 11 of the United States Code, Section 101 *et*

*seq*., as amended.

**1.5**      **Bankruptcy Court**:  The United States Bankruptcy Court for the Northern

District of Illinois, Eastern Division.

**1.6**      **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**1.7**      **Chapter 11**:  Chapter 11 of the Bankruptcy Code.

**1.8**      **Claim**:  The term "Claim" shall have the meaning set forth in Section

101(5) of the Bankruptcy Code.

**1.9**      **Confirmation**:   The entry by the Bankruptcy Court of a Final Order

confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy

Code.

-4-

**1.10**     **Debtors**: PCS Financial Corp. and Prime Acceptance Corp.

**1.11**     **Debtors' Estate**:  All of the Debtors' "property of the estate" as defined in Section 541 of the Bankruptcy Code.

**1.12**     **Debtors in Possession**: PCS Financial Corp. and Prime Acceptance Corp.

**1.13**     **Effective Date**:  Thirty (30) days following the date on which the Order confirming this Plan becomes a Final Order.

**1.14**     **Final Confirmation Order**: Final Order confirming the Plan under Section 1129 of the Bankruptcy Code.

**1.15**     **Final Order**:  (I) An order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reargument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, reargument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, reargument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for reargument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, reargument, reconsideration, rehearing or certiorari has expired, so that in the event of either (I) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

**1.16**     **Interest**:  Any equity interest held by any shareholder of the Debtors.

**1.17**     **Month**:  A calendar month, including the month in which a date or event occurs.

**1.18**  **PCS**:  PCS Financial Corp.

**1.19**  **Person:** An individual, partnership, corporation, business trust, estate, limited liability company, limited liability partnership, joint stock company, trust, unincorporated association, joint venture or other entity or any government, governmental agency or any subdivision, department or other instrumentality thereof.

**1.20**  **Plan:**  This Joint Plan of Reorganization including any amendments or modifications thereto.

**1.21**  **Pre-Petition Agent:** Bank of America, N.A., in its capacity as administrative agent under the Pre-Petition Credit Agreement.

**1.22**  **Pre-Petition Credit Agreement:** Third Restated Loan and Security Agreement, dated as of September 1, 2002, by and among the Debtors, the Pre-Petition Agent, and the Pre-Petition Lenders, as amended, supplemented or otherwise modified.

**1.23**  **Pre-Petition Lenders**: The "Lenders" as defined in the Pre-Petition Credit Agreement, and their respective successors and assigns, in each case in their respective capacities as such.

**1.24**  **Post-Confirmation Loan Agreement**:  The Post-Confirmation Loan and Security Agreement attached to the Plan as **Exhibit A**.

**1.25**  **Prime:**  Prime Acceptance Corp.

**1.26**  **PRC:**  PCS Receivables Corp.

**1.27**  **Pro-rata:** With respect to any distribution on account of any Claim or matter, in the same proportion as the amount of such Claim or matter bears to the aggregate amount of all Claims or matters of its class.

-6-

**1.28** **Related Persons:** With respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective present and former members, partners, equity-holders, officers, directors, managers, employees, representatives, advisors (whether engaged prior to or subsequent to the Petition Date), attorneys (whether engaged prior to, on or subsequent to the Petition Date), agents and professionals, acting in such capacity, and any Person claiming by or through any of them.

**1.29** **Released Parties:** (i) The Debtors, (ii) the Pre-Petition Agent and the Pre-Petition Lenders, in each case, solely in their respective capacities as such, and (iii) the respective Related Persons of each of the foregoing persons and entities referenced in clauses (i)-(ii) above.

**1.30** **Reorganized Debtors:** PCS Financial Corp. and Prime Acceptance Corp. as of the Final Confirmation Order.

**1.31** **Unclassified Claims:** Claims of the kind specified in Sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code, which Claims shall not be classified pursuant to Section 1123(a)(1) of the Bankruptcy Code.

Unless otherwise defined in this Plan, the words and phrases used herein shall have the meanings ascribed to them in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE

## UNCLASSIFIED CLAIMS

The following Unclassified Claims exist under the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code:

**2.1**       **Administrative Claims:**   Administrative Claims shall consist of Allowed Claims for Administrative Expenses as well as claims arising under Sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code.[3]

**2.2**       **Tax Claims:**   The Allowed Claims, if any, of the Internal Revenue Service ("IRS"), the Illinois Department of Revenue ("IDR") and any other federal, state or local taxing authority which are entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

## [4]ARTICLE III

## CLASSIFICATION OF CLAIMS
## AND INTERESTS

**3.1**    **Class 1:**   The Allowed Secured Claim(s) of the Pre-Petition Agent and the Pre-Petition Lenders.

**3.2**    **Class 2:**   The Allowed Claims of general unsecured creditors whose claims are allowed in an amount of $1500.00 or less ("Convenience Creditors").

---

[3] Since the Debtors' Chapter 11 cases were commenced as voluntary proceedings, no claims under Sections 507(a)(3) and 502(f) of the Bankruptcy Code exist.
[4] No claims of the types specified in Sections 507(a)(1) and 507(a)(4) through 507(a)(7) of the Bankruptcy Code exist in these Chapter 11 cases.

-8-

**3.3**   **Class 3:**   The Allowed Claims of general unsecured creditors, exclusive of the Allowed Claims in Classes 2 and 4.

**3.4**   **Class 4:**   The Allowed Claims of Noteholders exclusive of the Allowed Claims of Subordinated Noteholders as provided in Article VII of the Plan.[5]

**3.5**   **Class 5:**   The Allowed Interests of the shareholders of the Debtors.

---

[5]The holders of Noteholder Claims are:

Christopher Ward, Trustee, ECM Grandchildren's Trust, Z Ward Fund
Christopher Ward, Trustee, ECM Grandchildren's Trust, A Ward Fund
Christopher Ward, Trustee, ECM Grandchildren's Trust, B Ward Fund
Jean Ward Hall Trust
Louis G. Gineris Trust
Diane W. Jones Trust
Diane W. Jones, Trustee, Diane W. Jones Trust dated 4/7/93 Stock Sale Proceeds
Diane W. Jones, Trustee, S&L Jones Trust, FBO S Jones
Diane W. Jones, Trustee, S&L Jones Trust, FBO L Jones
Lenore M. Sesner
Kenneth R. Nichol
Diane Jones, Adminstrator, Estate of David W. Jones, Deceased
Christopher C. Ward Trust dated 2/8/96
Diane W. Jones & TO, Trustees, ECM Trust FBO Tim Ward DD 1994
Andrew Ward
Philip C. Ward, Trustee, FBO Zachary Ward
Philip C. Ward, Trustee, FBO Alex Ward
G. G. Gineris or T Lappas-Gineris
J. J. Gineris or L.G. Gineris
Christopher C. Ward
Timothy C. Ward
Stephen A. Ewing
Stephen A. Ewing, Trustee, Ewing Family Trust dated 03/07/01
Peter W. Ewing, Trustee, Christine E. Ewing Trust dated 11/17/94
Peter W. Ewing, Trustee, Jennifer L. Ewing Trust dated 11/17/94

# ARTICLE

## PAYMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

Under the terms of the Plan, Unclassified Claims are unimpaired and shall be paid as follows:

**4.1    Administrative Claims:**  Except as expressly provided herein and except as may be agreed to by the holder of each Allowed Administrative Claim, holders of Allowed Administrative Claims shall be paid on the Effective Date in cash in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code as follows, unless the holder of an Administrative Claim agrees to a different treatment:

> Each holder of an Allowed Administrative Claim of the kinds specified in Section 507(a)(2) of the Bankruptcy Code will receive on account of such Claim, cash equal to the allowed amount of such Claim, on the Effective Date except that post-petition trade creditors of the Debtor will be paid according to the terms under which the debt was incurred; and provided, however, that all Administrative Claims with respect to the payment of any professional person shall remain subject to and be paid in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules and the Final Order of the Bankruptcy Court.

**4.2        Tax Claims:**  Holders of Allowed Tax Claims shall be paid in full, inclusive of allowed interest as provided by applicable federal or state statutes, in cash on the Effective Date, unless the holder of a Tax Claim agrees to a different treatment.  This treatment of Allowed Tax Claims is intended to comply with the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.[6]

---

[6] The Internal Revenue Service has filed an unsecured priority claim in the amount of $34,483.45 ("IRS Claim").  The Debtors believe that the IRS Claim should be disallowed and, therefore, intend to object to the IRS Claim.  No other Tax Claims have been filed in these Chapter 11 cases.

# ARTICLE

## TREATMENT OF CLAIMS AND INTERESTS
## IMPAIRED UNDER THE PLAN

Under the terms of the Plan, Allowed Claims in Classes 1 through 4 and Allowed

Interests in Class 5 are impaired.  Only Allowed Administrative Claims and Allowed Tax

Claims are unimpaired under the Plan.  As a result of such impairment, the holders of

Allowed Claims in Classes 1 through 4 and Allowed Interests in Class 5 may have the

right to vote on the Plan.

**5.1**       **Class 1**:   The Pre-Petition Agent is the holder of the Allowed Class 1

Claim, in which the Pre-Petition Lenders have an interest by virtue of the Pre-Petition

Credit Agreement.    The actual allowed amount of the Class 1 Claim is subject to adjustment

for payments made to the Pre-Petition Agent by the Debtors pursuant to Orders entered by this

Court after the filing of the Plan as well as based upon an accounting by the Pre-Petition Agent

for all payments received and charges made.  The Pre-Petition Agent shall retain, for the

benefit of the Pre-Petition Lenders: (1) the liens and security interests it had against the

Debtors' property as of the Petition Date; and (2) any liens and security interests it

acquired against the Debtors' property during the course of these Chapter 11 cases

pursuant to Orders entered by the Bankruptcy Court.

The treatment of the Allowed Class 1 Claim under the Plan is the result of

extensive negotiations between the Debtors and the Pre-Petition Agent and Pre-Petition

Lenders.  The specific treatment of the Allowed Class 1 Claim under the Plan is

embodied in the Post-Confirmation Loan Agreement.  Generally, the Debtors shall pay the Allowed Class 1 Claim in full, with interest pursuant to the terms and conditions set forth in the Post-Confirmation Loan Agreement.

The Debtors may accelerate payments to the holder of the Allowed Class 1 Claim. All unaccrued interest shall be deemed waived and no penalty shall be chargeable to the Debtors in the event that the Debtors elect to accelerate payments.

Upon completion of the payments under the Plan to the Pre-Petition Agent (for the benefit of the Pre-Petition Lenders) as against the Allowed Class 1 Claim as required by the Plan, all of the liens and security interests of the Pre-Petition Agent and the Pre-Petition Lenders shall be deemed released and discharged.  To the extent requested by the Debtors, once the Allowed Class 1 Claim is paid in full as required by the Plan, the Pre-Petition Agent and the Pre-Petition Lenders shall prepare and file any and all documents that may be reasonably necessary to effectuate the termination of such liens and security interests.  This Plan and the Post-Confirmation Loan Agreement shall supercede and replace the terms and conditions of the Pre-Petition Loan Agreement and any related documents establishing the Allowed Class 1 Claim.

The Post-Confirmation Loan Agreement and any related documents shall be executed, delivered and performed by the Reorganized Debtors in accordance with its terms, and all fees and expenses and other amounts provided for thereunder shall be paid promptly when due.

**5.2**          **Class 2**:          Convenience Creditors shall receive 100% of the allowed

amount of their Class 2 Claims payable in full in cash without interest within ninety (90) days of the Effective Date of the Plan.   The Debtors estimate that there are approximately 27 Convenience Creditors with Allowed Class 2 Claims aggregating approximately $13,227.00.

**5.3**      **Class 3:**      The holders of Allowed Class 3 Claims shall receive 100% of the allowed amount of their Class 3 Claims ("Unsecured Dividend").  The Unsecured Dividend shall be payable in two (2) equal consecutive semi-annual installments over a one (1) year period commencing on the 15th day of the month following the end of the first six (6) month period after the Effective Date.  No interest shall be paid on the Allowed Class 3 Claims.  The payments to the holders of Allowed Class 3 Claims under the Plan shall be made in full and complete satisfaction of such Claims.  The Debtors estimate that there are approximately 12 creditors holding Allowed Class 3 Claims aggregating approximately $124,161.00.

**5.4**      **Class 4:**      Subject to the provision of Article VII of the Plan, the Noteholders shall be paid their pro-rata share of $1,200,000.00  ("Noteholder Dividend") to be accumulated from revenue of the Debtors generated in the operation of the Debtors' businesses in the ordinary course.  The Noteholder Dividend shall be payable in equal consecutive semi-annual installments of $100,000.00 over a six (6) year period commencing on the 15th day of the month following the end of the first quarter after the Effective Date.  No interest shall be paid on the Allowed Class 4 Claims.  The payments to the holders of Allowed Class 4 Claims under the Plan shall be made in full and complete satisfaction of such Claims.  After deducting the Allowed Claims of the

Subordinated Noteholders as provided in Article VII of the Plan, the Debtors estimate that there are approximately 23 creditors holding Noteholder Claims aggregating approximately $9,295,153.25.

**5.5**      **Class 5:**      The stock interests in the Debtors shall be deemed cancelled as of Confirmation of the Plan.

## ARTICLE VI

### MERGER OF PRIME INTO PCS CREATING A
### SINGLE CONSOLIDATED ENTITY

**6.1**      In conjunction with Confirmation of the Plan, Prime will be merged into PCS thereby formally consolidating the Debtors' businesses, assets and liabilities into a single consolidated entity with PCS being the surviving entity.  Upon such merger, PCS will change its corporate name to "PCS Receivables Corp." ("PRC").  This merger is expressly conditioned upon Confirmation of the Plan and shall be deemed effective upon such Confirmation.  PRC shall be obligated under the Post-Confirmation Loan Agreement.

**6.2**      PRC shall assume all of the Debtors' liabilities, obligations and duties under the Plan upon confirmation of the Plan.  Whatever is required of the Debtors under the Plan, shall be deemed required of PRC.

**6.3**      PRC, through its President, Kenneth Nichol, shall be the disbursing agent charged with making the payments required under the Plan to the holders of Allowed Claims.

-14-

**6.4** Upon Confirmation and in furtherance of the merger described herein, common stock in PRC will be issued to Louis Gineris ( 1145 shares), Christopher Ward ( 1145 shares) and Kenneth Nichol ( 126 shares).

## ARTICLE VII
## VOLUNTARY SUBORDINATION OF CERTAIN NOTEHOLDER CLAIMS

**7.1** The Christopher C. Ward Trust date 2/8/96, Louis G. Gineris Trust and Kenneth R. Nichol ("Subordinated Noteholders") voluntarily agree to subordinate their Noteholder Claims in the following manner by reducing the amount of their Noteholder Claims as follows:

| Subordinator Noteholder | Amount of Noteholder Claim | Reduced Amount of Noteholder Claim Under Plan |
|---|---|---|
| Christopher C. Ward Trust Date 2/8/96 | $1,062,696.34 | $856,298.99 |
| Louis G. Gineris Trust | $  206,397.35 | $          0.00 |
| Kenneth R. Nichol | $    81,179.03 | $  58,466.31 |

By agreeing to these reduced Noteholder Claims, the Subordinated Noteholders have effectively increased the pro-rata distribution of the Noteholder Dividend to the holders of Allowed Noteholder Claims.

-15-

## ARTICLE VIII

## IMPLEMENTATION OF PLAN

**8.1**        Upon Confirmation, the Debtors (and PRC) shall be vested with the

Debtors' assets, subject only to the terms and conditions of this Plan.  The Debtors (and

PRC) shall be entitled to continue to operate their businesses and manage their

businesses and financial affairs without further Order of this Court as set forth in the

Plan.

**8.2**        Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall

arise to prevent any party from foreclosing its lien or security interest in any assets of

the Debtors (and PRC) or otherwise enforcing claims against the Debtors (and PRC)

and their assets except in a manner provided for under the terms and conditions of this

Plan. Such injunction shall not affect any secured creditor's right to foreclose upon any

security interest provided in the Plan in the event of any post-Confirmation default under

this Plan.  This injunction shall remain in full force and effect to prevent said actions until

all distributions have been made in accordance with the terms and conditions of the

Plan.

**8.3**        Management of the Debtors will remain unchanged after Confirmation of

the Plan.  Those persons presently serving on the Debtors' Boards of Directors and as

officers of the Debtors will continue to serve after Confirmation of the Plan.  As to PRC,

Messrs. Gineris, Ward and Nichol and Ms. Jones shall be directors.  The officers of

PRC shall be as follows: Louis Gineris, Chief Executive Officer; Kenneth R. Nichol,

President; Christopher C. Ward, Vice President; and Diane W. Jones, Secretary.

**8.4**　　　　After Confirmation of the Plan, the Debtors (and PRC) will operate the

Debtors' businesses in the ordinary course.  Payments to creditors pursuant to the Plan

will be made from funds realized from continued business operations and from existing

cash deposits.   If necessary, the Debtors (and PRC) may borrow funds sufficient to pay

the balance of the Allowed Class 1 Claim in full as required by the Plan, or on such

earlier date as the Debtors (and PRC) may elect at their sole and exclusive option.

**8.5**　　　　The Debtors (and PRC) will have the right to make any distribution to

creditors earlier than required by the Plan, without penalty.  However, in the event that

the Debtor elects to make any such early distribution while the Allowed Class 1 Claim

remains unpaid, such early distribution may only be made with the consent of the Pre-

Pre-Petition Agent and Pre-Petition Lenders.  In the event that the Allowed Class 1

Claim is paid in full as of the time of any such early distribution, no consent from the

Pre-Pre-Petition Agent or Pre-Petition Lenders shall be required.

**8.6**　　　　The Plan is self-executing.  Except as expressly set forth in the Plan, the

Debtors (and PRC) shall not be required to execute any newly created documents to

evidence the Claims, liens or terms of repayment to the holder of any Allowed Claim.

The terms of this Plan will exclusively govern payments to creditors and any other rights

of creditors as against the Debtors (and PRC) and their property.  Furthermore, upon

the completion of the payments required under this Plan to the holders of Allowed

Claims, such Claims, and any liens that may support such Claims, shall be deemed released and discharged.

**8.7** Subject to the provisions of Article XVIII hereof, the Debtors (and PRC) shall have the right, power and authority after Confirmation to commence any preference, fraudulent conveyance or other litigation they deem appropriate. The Bankruptcy Court shall retain jurisdiction for such litigation.

## ARTICLE IX

## EXECUTORY CONTRACTS

**9.1** All executory contracts and unexpired leases which exist between the Debtors and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned, rejected or otherwise terminated by the Debtors shall be deemed assumed as of Confirmation of this Plan pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code. To the extent necessary, such assumed contracts shall be deemed assigned to PRC upon confirmation of the Plan.

**9.2** Any and all Claims asserted by any party arising from the rejection of executory contracts and unexpired leases pursuant to this Plan or otherwise must be filed on or within thirty (30) days following Confirmation. Further, with respect to Claims for default relating to any unexpired lease or executory contract that is deemed assumed pursuant to the Plan, any and all such Claims must also be filed on or within thirty (30) days following Confirmation. Allowed Claims emanating from the rejection of unexpired leases and executory contracts will be treated as Class 3 Claims. Allowed Claims for default emanating from the assumption of unexpired leases and executory

contracts will be treated as Administrative Claims. Any person failing to file such a

Claim within the time provided herein shall be forever barred from asserting such Claim

and shall not receive any distribution under this Plan.

9.3　　　　　The provisions set forth herein shall be equally applicable to executory

contracts and unexpired leases of real and personal property.


## ARTICLE X

## BANKRUPTCY COURT'S RETENTION OF JURISDICTION

10.1　 The Bankruptcy Court shall retain jurisdiction after Confirmation to: (i) hear and

determine applications for fees and allowances for professional persons; (ii) supervise

the implementation of this Plan; (iii) hear and determine objections to Claims filed in

these Chapter 11 cases; (iv) hear and determine applications for the assumption,

assignment and/or rejection of executory contracts; (v) hear and determine all adversary

proceedings or contested matters whether filed before or after Confirmation; (vi) resolve

disputes regarding interpretation of this Plan; (vii) allow Administrative Claims; (viii)

enter Orders to further consummation of the Plan; (ix) approve modification of the Plan

upon motions brought before the Bankruptcy Court in accordance with Section 1127 of

the Bankruptcy Code; (x) hear and determine all applications and motions pending

before the Bankruptcy Court on the date of Confirmation or such other matters as are

commenced after Confirmation of the Plan; (xi) enter any order, including injunctions,

necessary to enforce title, rights and powers of the Debtors, and to impose such

limitations, restrictions, terms and conditions of such title, rights and powers as may be

necessary; (xii) enforce terms of Plan; (xiii) hear and determine all matters brought by the Debtors (and PRC) under Article VIII, Section 8.8 of this Plan; (xiv) enter an Order concluding and terminating these Chapter 11 cases.; and (xv) hear and determine any and all matters brought before the Bankruptcy Court by the Debtors (and PRC) after Confirmation.

**ARTICLE XI**

**INVALIDATION OF LIENS AND DISCHARGE**

**11.1**       The provisions of the confirmed Plan shall bind all creditors and other parties in interest, whether or not such persons accept the Plan.  The distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all liens and Claims against any of the assets or properties of the Debtors (and PRC) and Debtors' Estates.  Unless otherwise specifically provided to the contrary herein or in the Final Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded from asserting any lien or Claim against the Debtors (and PRC) or their property.

**ARTICLE XII**

**INTEREST AND PENALTIES**

**12.1**       Except as otherwise provided herein, or required by the Bankruptcy Code, no interest or penalties accruing on or after November 13, 2008, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

# ARTICLE XIII

## CONFIRMATION OF PLAN UNDER
## SECTION 1129(b) OF THE BANKRUPTCY CODE

**13.1**     To the extent necessary, pursuant to Section 1129(b) of the Bankruptcy

Code, the Debtors intend to request that the Bankruptcy Court confirm the Plan if all

applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section

1129(a)(8), are met.

# ARTICLE XIV

## UNCLAIMED PROPERTY

**14.1**   In the event that any distribution made to a claimant by the Debtors (and PRC)

under this Plan remains unclaimed sixty (60) days after such distribution is made, this

distribution shall become property of the Debtors( and PRC) and shall not be recouped

by any claimant in subsequent distributions.  Once the distribution becomes "unclaimed"

under this provision of the Plan, the claimant shall forfeit any and all legal and equitable

right to such distribution and the proceeds thereof.

## ARTICLE XV

## CLAIMS OBJECTIONS

**15.1**     Except as otherwise ordered by the Bankruptcy Court, the Debtors (and

PRC) shall file any and all objections to the allowance of Claims or Interests on or within

a hundred and twenty (120) days of Confirmation of this Plan unless extended by Order

of the Bankruptcy Court.  Cause shall not be a requirement for an extension of this

deadline.

## ARTICLE XVI

## DISPUTED CLAIMS

**16.1**     No distribution shall be made to the holders of disputed Claims until the

dispute is resolved either by agreement or by Order of the Bankruptcy Court.

Distributions to the holders of Allowed Claims shall not be held back pending resolution

of disputed Claims.  However, in the event a distribution is made to the holders of

Allowed Claims in a given Class of Claims under the Plan before all disputed Claims in

such Class have been resolved, sufficient funds shall be held back to pay the pro rata

share due the holders of disputed Claims in such Class in the event the dispute is

resolved against the Debtors (and PRC).

## ARTICLE XVII

## RETENTION OF CAUSES OF ACTION

**17.1**        Except for all claims and causes of action against Released Parties that

have been released as provided in Article XVIII below, the Debtors (and PRC) shall

retain any and all claims and causes of action they have against third parties.  Such

claims and causes of action shall survive and be unaffected by Confirmation of this

Plan. Any funds realized from such retained claims and causes of action shall be

property of the Debtors (and PRC) and shall be paid to the holders of Allowed Claims

only to the extent expressly required by the Plan.


## ARTICLE XVIII

## RELEASES AND INJUNCTIONS RELATED TO RELEASES

**18.1**        **Exculpation.**  The Debtors, the Reorganized Debtors and the other

Released Parties shall have no liability to any Person for any act or omission in

connection with, or arising out of, the Debtors' Chapter 11 cases, the Disclosure

Statement, this Plan, the solicitation of votes for and the pursuit of confirmation of this

Plan, the formulation, preparation, implementation or consummation of this Plan or the

transactions contemplated thereby, including the pre-petition and post-petition

negotiations with respect thereto, the administration of this Plan or the property to be

distributed under this Plan or the Debtors' Chapter 11 cases or any contract, instrument,

release or other agreement or document created or entered into in connection with this

Plan.  All causes of action based upon or arising out of all of the foregoing will be

-23-

forever waived and released by any Person as of the Effective Date; provided, however, that nothing in this section shall affect the liability (if any) of any Person that otherwise would result from any action or omission to the extent that such action or omission is determined in a Final Order to have constituted (i) a breach of any of its obligations under this Plan or any contract, release or other agreement or document entered into in connection herewith or (ii) intentional acts that constitute fraud or willful misconduct.

**18.2      Releases by Debtors.**  Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors, and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date of the Plan, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors and their estates, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or that could be asserted by or on behalf of the Debtors, the Reorganized Debtors or their estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors or their estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Chapter 11 cases (including, without limitation, causes of action under Chapter 5 of the Bankruptcy Code), any acts or conduct of any party to the Pre-Petition Credit Agreement with respect to

-24-

any of the Debtors, the purchase, sale, or rescission of the purchase or sale of any

security of the Debtors, the subject matter of, or the transactions or events giving rise to,

any Claim or Equity Interest that is treated in the Plan, the business or contractual

arrangements between any Debtor and any Released Party, the restructuring of Claims

and Equity Interests prior to or in the Debtors' Chapter 11 cases, the negotiation,

formulation or preparation of the Plan, the related Disclosure Statement, or related

agreements, instruments or other documents, or any other act or omission, transaction,

agreement, event or other occurrence taking place on or before the Effective Date of the

Plan, other than Claims or liabilities arising out of or relating to any act or omission of a

Released Party that is determined in a final and non-appealable order of a court of

competent jurisdiction to constitute willful misconduct or gross negligence by such

Released Party.

**18.3**      <u>**Releases by Holders of Claims and Equity Interests.**</u> As of the

Effective Date of the Plan, for good and valuable consideration, the adequacy of which

is hereby confirmed, (i) each holder of a Claim that votes to accept the Plan, solely in its

capacity as the holder of such Claim, and (ii) to the fullest extent permissible under

applicable law, as such law may be extended or interpreted after the Effective Date,

each person or entity (other than a Debtor), which has held, holds or may hold a Claim

or Equity Interest in or relating to the Debtors and solely in its capacity as the holder of

such Claim or Equity Interest, shall be deemed to have conclusively, absolutely,

unconditionally, irrevocably and forever, released and discharged the Debtors, the

Reorganized Debtors and the Released Parties from any and all Claims, Equity

Interests, obligations, rights, suits, damages, causes of action, remedies and liabilities

whatsoever, including any derivative Claims, asserted or that could be asserted by or on

behalf of any such holder, person or entity, based on or relating to, or in any manner

arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Debtors'

Chapter 11 cases(including, without limitation, causes of action under Chapter 5 of the

Bankruptcy Code), any acts or conduct of any party to the Pre-Petition Credit

Agreement with respect thereto, the purchase, sale or rescission of the purchase or sale

of any security of the Debtors, the subject matter of, or the transactions or events giving

rise to, any Claim or Equity Interest that is treated in the Plan, the business or

contractual arrangements between any Debtor and any Released Party, the

restructuring of Claims and Equity Interests prior to or in the Debtors' Chapter 11 cases,

the negotiation, formulation or preparation of the Plan, the related Disclosure Statement

or related agreements, instruments or any other act or omission, transaction,

agreement, event or other occurrence taking place on or before the Effective Date of the

Plan, other than Claims or liabilities arising out of or relating to any act or omission of a

Released Party that is determined in a final and non-appealable order of a court of

competent jurisdiction to constitute willful misconduct or gross negligence of such

Released Party.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in

Sections 18.2 and 18.3 of the Plan do not release (i) any Claims or liabilities assumed

by any Reorganized Debtor pursuant to the Plan or any related document or otherwise

arising on or after the Effective Date under any such document or (ii) any post-Effective Date obligations of any party under the Plan or any related document.

**18.4** <u>**Injunction Related to Releases**</u>. Except as provided in the Plan or the Final Confirmation Order, as of the Confirmation Date, subject to the occurrence of the Effective Date, all Persons that have held, currently hold or may hold Claims or Equity Interests that (a) have been released pursuant to Sections 18.2 and 18.3, or (b) are discharged pursuant to Section 11.1 are permanently enjoined from taking any of the following actions against the Debtors or their property, or any of the Released Parties, on account of Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action, in each case in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 18.4.

**18.5** <u>**No Waiver**</u>. The release set forth in this Plan does not limit, abridge or otherwise affect the rights of the Reorganized Debtors to enforce, sue on, settle or compromise the rights, claims and other matters retained by the Reorganized Debtors pursuant to this Plan.

**18.6**     **Deemed Consent.** By voting to accept this Plan or accepting any distribution directly under this Plan, each holder of a Claim will be deemed to the fullest extent permitted by applicable law to have specifically consented to the releases and injunctions set forth in this Article XVIII.


# ARTICLE XVIIII

## GENERAL PROVISIONS

**19.1**     **Rules of Construction.**  The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules are applicable to this Plan.

**19.2**     **Definitions.**  A term used in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**19.3**     **Amendment and Modification.**  The Debtors may alter, amend or modify the Plan before or after Confirmation in accordance with the applicable provisions of the Bankruptcy Code.

**19.4**     **Severability.**  Should any provision of this Plan be determined to be unenforceable, such determination shall not impair, limit or otherwise affect the enforceability of any other provision of this Plan.

**19.5**     **Successors and Assigns.**  The rights and obligations of any person or entity referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of any such person or entity.

**19.6**      **Headings.**  The headings of the Articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation therein.

**19.7**      **Effect of Appeals.**  Unless the Final Confirmation Order is stayed pending appeal, the Debtors may consummate this Plan notwithstanding the pendency of an appeal from the Final Confirmation Order, or the timely service of the filing of a Motion under Bankruptcy Rules 7052, 8002(b), 8002(c), 8003, 8015, 9023 or 9024.

**19.8**      **Debtors' Corporate Existence.**  The Debtors' corporate existence shall survive and be unaffected by Confirmation of this Plan except to the extent provided in the Plan.

**19.9**      **Computation of Time**.  Unless expressly provided otherwise in this Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**19.10**      **Insurance Preservation**.  Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtors (and PRC) or any other person.

**19.11**      **Assignment of Licenses and Insurance**.  Any and all licenses of the Debtors and any and all insurance policies, contracts, rights and coverages shall be deemed assigned to and for the benefit of PRC upon Confirmation of the Plan

**19.12**      **Terms Binding.**  On the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in accordance with the Plan and executed by the Debtors in connection with the Plan, shall be binding upon the Debtors (and PRC), all creditors  and shareholders and all other entities that are

affected in any manner by the Plan.  All agreements, instruments and other documents filed in connection with Plan shall have full force and effect, and shall bind all parties thereto as of the Final Confirmation Order.

**19.13**      **Inconsistencies**.  In the event that there is any inconsistency between the terms and provisions of this Plan and the terms and provisions in the Post-Confirmation Loan Agreement, the terms and provisions of the Post-Confirmation Loan Agreement shall control and govern.  In the event that there is any other inconsistency between the Plan and Disclosure Statement, any exhibit to the Plan or other instrument or document created or executed pursuant to the Plan (with the exception of Post-Confirmation Loan Agreement), the Plan shall govern. The provisions of the Final Confirmation Order shall control over the contents of the Plan.

**19.14**      **Compliance With Applicable Law**.  It is intended that the provisions of the Plan (including the implementation thereof) shall be in compliance with all applicable laws and any rules and regulations promulgated thereunder.  If the Debtors conclude that the Plan may not comply with applicable law, then in such event the Debtors intend to amend the Plan in such respects as it deems necessary to bring the Plan into compliance therewith.

**19.15**      **Tax Consequences**.  At this time, it is uncertain as to what tax consequences, if any, may exist under the Plan with respect to the Debtors.

PCS FINANCIAL CORP. and PRIME
ACCEPTANCE CORP.
By: /s/David K. Welch

**DEBTORS' COUNSEL**:
David K. Welch, Esq. (Atty. No. 06183621)
Arthur G. Simon, Esq. (Atty. No. 03124481)
Scott R. Clar, Esq. (Atty. No. 06183741)
Jeffrey C. Dan, Esq. (Atty. No. 06242750)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
TEL: (312) 641-6777