employer or other plan described in Section 4064(a) of ERISA, has made contributions at any time during the preceding five plan years.

Permitted Asset Disposition: as long as no Default or Event of Default exists and all Net Proceeds are remitted to Agent, an Asset Disposition that is (a) a sale of a Borrower Consumer Credit Contract or a Loan Receivable, provided that such sales are for cash and for a price that is at least equal to the fair market value thereof and that is at least equal to or greater than, respectively, 75% and 80% of its outstanding amount or principal balance; (b) termination of a lease of real or personal Property that is not necessary for the Ordinary Course of Business, could not reasonably be expected to have a Material Adverse Effect and does not result from Borrower's default; (c) a sale of Borrower's obsolete or worn out equipment in the Ordinary Course of Business, provided that such sales are for cash and for a price that is at least equal to the fair market value thereof and that the aggregate amount of all such sales does not exceed $10,000 in any calendar year; or (d) approved in writing by Agent and Required Lenders.

Permitted Contingent Obligations: Contingent Obligations (a) arising from endorsements of Payment Items for collection or deposit in the Ordinary Course of Business; (b) arising from Hedging Agreements permitted hereunder; (c) existing on the Closing Date, and any extension or renewal thereof that does not increase the amount of such Contingent Obligation when extended or renewed; (d) incurred in the Ordinary Course of Business with respect to surety, appeal or performance bonds, or other similar obligations; (e) arising from customary indemnification obligations in favor of purchasers in connection with dispositions of Equipment permitted hereunder; (f) arising under the Loan Documents; or (g) in an aggregate amount of $250,000 or less at any time.

Permitted Lien: as defined in **Section 9.2.2**.

Permitted Purchase Money Debt: Purchase Money Debt of Borrower and Subsidiaries that is unsecured or secured only by a Purchase Money Lien, as long as the aggregate amount does not exceed $250,000 at any time and its incurrence does not violate **Section 9.3**.

Person: any individual, corporation, limited liability company, partnership, joint venture, joint stock company, land trust, business trust, unincorporated organization, Governmental Authority or other entity.

Petition Date: as defined in the recitals.

Plan: any employee benefit plan (as such term is defined in Section 3(3) of ERISA) established by Borrower or, with respect to any such plan that is subject to Section 412 of the Code or Title IV of ERISA, an ERISA Affiliate.

Plan Effectiveness: the time the Plan of Reorganization becomes effective in accordance with Article [__] of the Plan of Reorganization.

Plan of Reorganization: as defined in the recitals of this Agreement.

Pre-Petition Debtors: as defined in the recitals of this Agreement.

Pre-Petition Loan Agreement: the Third Restated Loan and Security Agreement dated as of September 1, 2002, among PCS, Prime Acceptance, LaSalle Bank National Association, Harris Trust and Savings Bank, MB Financial Bank N.A. and LaSalle Bank National Association as agent, as amended, restated or otherwise modified prior to the Petition Date.

Pre-Petition Loan Documents: the "Transaction Documents" as defined in the Pre-Petition Loan Agreement.

Prime Acceptance: as defined in the recitals of this Agreement.

Prime Rate: the rate of interest announced by Bank of America from time to time as its prime rate. Such rate is set by Bank of America on the basis of various factors, including its costs and desired return, general economic conditions and other factors, and is used as a reference point for pricing some loans, which may be priced at, above or below such rate. Any change in such rate announced by Bank of America shall take effect at the opening of business on the day specified in the public announcement of such change.

Pro Rata: with respect to any Lender, a percentage (carried out to the ninth decimal place) determined by dividing the amount of such Lender's Loans by the aggregate amount of all outstanding Loans.

Properly Contested: with respect to any obligation of Borrower, (a) the obligation is subject to a bona fide dispute regarding amount or the Borrower's liability to pay; (b) the obligation is being properly contested in good faith by appropriate proceedings promptly instituted and diligently pursued; (c) appropriate reserves have been established in accordance with GAAP; (d) non-payment could not have a Material Adverse Effect, nor result in forfeiture or sale of any assets of Borrower; (e) no Lien is imposed on assets of Borrower, unless bonded and stayed to the satisfaction of Agent; and (f) if the obligation results from entry of a judgment or other order, such judgment or order is stayed pending appeal or other judicial review.

Property: any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible.

Protective Advances: as specified in **Section 2.2**.

Purchase Money Debt: (a) Debt (other than the Obligations) for payment of any of the purchase price of fixed assets; (b) Debt (other than the Obligations) incurred within 10 days before or after acquisition of any fixed assets, for the purpose of financing any of the purchase price thereof; and (c) any renewals, extensions or refinancings (but not increases) thereof.

Purchase Money Lien: a Lien that secures Purchase Money Debt, encumbering only the fixed assets acquired with such Debt and constituting a Capital Lease or a purchase money security interest under the UCC.

RCRA: the Resource Conservation and Recovery Act (42 U.S.C. §§ 6991-6991i).

Real Estate: all right, title and interest (whether as owner, lessor or lessee) in any real Property or any buildings, structures, parking areas or other improvements thereon.

Related Real Estate Documents: with respect to any Real Estate subject to a Mortgage, the following, in form and substance satisfactory to Agent and received by Agent for review at least 15 days prior to the effective date of the Mortgage: (a) a mortgagee title policy (or binder therefor) covering Agent's interest under the Mortgage, in a form and amount and by an insurer acceptable to Agent, which must be fully paid on such effective date; (b) such assignments of leases, estoppel letters, attornment agreements, consents, waivers and releases as Agent may require with respect to other Persons having an interest in the Real Estate; (c) a current, as-built survey of the Real Estate, containing a metes-and-bounds property description and flood plain certification, and certified by a licensed surveyor acceptable to Agent; (d) flood insurance in an amount, with endorsements and by an insurer acceptable to Agent, if the Real Estate is within a flood plain; (e) a current appraisal of the Real Estate, prepared by an appraiser acceptable to Agent, and in form and substance satisfactory to Required Lenders; (f) an environmental assessment, prepared by environmental engineers acceptable to Agent, and accompanied by such reports, certificates, studies or data as Agent may reasonably require, which shall all be in form and substance satisfactory to Required Lenders; and (g) an Environmental Agreement and such other documents, instruments or agreements as Agent may reasonably require with respect to any environmental risks regarding the Real Estate.

Report: as defined in **Section 11.2.3**.

Reportable Event: any of the events set forth in Section 4043(c) of ERISA, other than events for which the 30-day notice period has been waived. For purposes of this Agreement, the term "Reportable Event" shall not be deemed to refer to the filing by any Pre-Petition Debtor of a petition for relief under the Bankruptcy Code on November 13, 2008.

Required Lenders: Lenders having Loans in excess of 50% of all outstanding Loans.

Reserve Percentage: the reserve percentage (expressed as a decimal, rounded up to the nearest 1/8th of 1%) applicable to member banks under regulations issued from time to time by the Board of Governors for determining the maximum reserve requirement (including any emergency, supplemental or other marginal reserve requirement) with respect to Eurocurrency funding (currently referred to as "Eurocurrency liabilities").

Restricted Investment: any Investment by Borrower or a Subsidiary, other than (a) Cash Equivalents that are subject to Agent's Lien and control, pursuant to documentation in form and substance satisfactory to Agent; (b) purchasing Accounts in the Ordinary Course of Business, so long as no Default or Event of Default exists or would result from such purchase; and (c) loans and advances permitted under **Section 9.2.8**.

Restrictive Agreement: an agreement (other than a Loan Document) that conditions or restricts the right of Borrower or a Subsidiary to incur or repay Borrowed Money, to grant Liens on any assets, to declare or make Distributions, to modify, extend or renew any agreement evidencing Borrowed Money, or to repay any intercompany Debt.

Royalties: all royalties, fees, expense reimbursement and other amounts payable by Borrower under a License.

**S&P**: Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., and its successors.

**Secured Parties**: Agent, Lenders and providers of Bank Products.

**Security Documents**: the Deposit Account Control Agreements and all other documents, instruments and agreements now or hereafter securing (or given with the intent to secure) any Obligations.

**Senior Officer**: the chairman of the board, president, chief executive officer or chief financial officer of Borrower.

**Servicing Accounts**: any deposit accounts established in the name of Borrower in the Ordinary Course of Business to hold funds on behalf of a third party in connection with or pursuant to a servicing agreement with respect to accounts receivable in Borrower's capacity as servicer and any related deposit accounts maintained in the ordinary course of Borrower's servicing businesses in the name of Borrower that are used solely for the collection, maintenance and disbursement of such funds on behalf of third parties for insurance payments, tax payments, suspense payments and other similar payments required to be made by Borrower in its capacity as servicer; provided that the books and records of Borrower indicate that such accounts are being held "in trust for" or on behalf of another Person; provided, further, that the accounts listed on **Schedule 7.3** shall not be Servicing Accounts.

**Solvent**: as to any Person, such Person (a) owns Property whose fair salable value is greater than the amount required to pay all of its debts (including contingent, subordinated, unmatured and unliquidated liabilities); (b) owns Property whose present fair salable value (as defined below) is greater than the probable total liabilities (including contingent, subordinated, unmatured and unliquidated liabilities) of such Person as they become absolute and matured; (c) is able to pay all of its debts as they mature; (d) has capital that is not unreasonably small for its business and is sufficient to carry on its business and transactions and all business and transactions in which it is about to engage; (e) is not "insolvent" within the meaning of Section 101(32) of the Bankruptcy Code; and (f) has not incurred (by way of assumption or otherwise) any obligations or liabilities (contingent or otherwise) under any Loan Documents, or made any conveyance in connection therewith, with actual intent to hinder, delay or defraud either present or future creditors of such Person or any of its Affiliates.  "Fair salable value" means the amount that could be obtained for assets within a reasonable time, either through collection or through sale under ordinary selling conditions by a capable and diligent seller to an interested buyer who is willing (but under no compulsion) to purchase.

**Subordinated Debt**: Debt incurred by Borrower that is expressly subordinate and junior in right of payment to Full Payment of all Obligations, and is on terms (including maturity, interest, fees, repayment, covenants and subordination) satisfactory to Agent.

**Subordinated Debt Documents**: all documents and instruments relating to the Subordinated Debt and all amendments and modifications thereof approved by Agent.

Subordination Agreement: subordination agreements executed by a holder of Subordinated Debt in favor of Agent and the Lenders from time to time after the Closing Date in form and substance and on terms and conditions satisfactory to Agent.

Subsidiary: any entity at least 50% of whose voting securities or Equity Interests is owned by Borrower (including indirect ownership by Borrower through other entities in which Borrower directly or indirectly owns 50% of the voting securities or Equity Interests).

Tangible Net Worth: at any date, common shareholder equity plus preferred shareholder equity that is not redeemable (and that is not convertible into or exchangeable for Debt or for other securities that are redeemable) prior to Full Payment plus Subordinated Debt *less*: treasury stock, notes and accounts receivables from Affiliates (unsecured advances to Affiliates are deducted as intangible; secured advances as tangible and are not deducted), prepaid expenses, return items, suspense items, deposits, loans and advances to officers and employees, Affiliates, and intangible assets as defined by GAAP consistently applied.

Taxes: all present or future taxes, levies, imposts, duties, deductions, withholdings (including backup withholding), assessments, fees or other charges imposed by any Governmental Authority, including any interest, additions to tax or penalties applicable thereto.

Term Loan: a loan made pursuant to **Section 2.1**.

Term Loan Maturity Date: _____, 20__. **[TO BE THREE YEARS AFTER THE CLOSING DATE]**

Term Note: a promissory note to be executed by Borrower in favor of a Lender in the form of **Exhibit A**, which shall be in the amount of such Lender's Term Loan and shall evidence the Term Loan made by such Lender.

Total Collateral Value: at any time, the aggregate of (a) Consumer Credit Contract Value at such time plus (b) 80% of the amount of all Eligible Dealer Loan Receivables at such time minus Collateral Reserves at such time.

Total Collateral Value Certificate: a certificate, in form and substance satisfactory to Agent by which Borrower certifies calculations of Total Collateral Value.

Transferee: any actual or potential Eligible Assignee, Participant or other Person acquiring an interest in any Obligations.

UCC: the Uniform Commercial Code as in effect in the State of Illinois or, when the laws of any other jurisdiction govern the perfection or enforcement of any Lien, the Uniform Commercial Code of such jurisdiction.

Unearned Discount: as defined in the definition of "Consumer Credit Contract Value."

Unfunded Pension Liability: the excess of a Pension Plan's benefit liabilities under Section 4001(a)(16) of ERISA, over the current value of that Pension Plan's assets, determined

in accordance with the assumptions used for funding the Pension Plan pursuant to Section 412 of the Code for the applicable plan year.

Upstream Payment: a Distribution by a Subsidiary of Borrower to Borrower.

Value: for an Account, its face amount, net of any returns, rebates, discounts (calculated on the shortest terms), credits, allowances or Taxes (including sales, excise or other taxes) that have been or could be claimed by the Account Debtor or any other Person.

**1.2** **Accounting Terms**.  Under the Loan Documents (except as otherwise specified herein), all accounting terms shall be interpreted, all accounting determinations shall be made, and all financial statements shall be prepared, in accordance with GAAP applied on a basis consistent with the most recent audited financial statements of Borrower delivered to Agent before the Closing Date and using the same inventory valuation method as used in such financial statements, except for any change required or permitted by GAAP if Borrower's certified public accountants concur in such change, the change is disclosed to Agent, and **Section 9.3** is amended in a manner satisfactory to Required Lenders to take into account the effects of the change.

**1.3** **Uniform Commercial Code**.  As used herein, the following terms are defined in accordance with the UCC in effect in the State of Illinois from time to time:  "Chattel Paper," "Commercial Tort Claim," "Deposit Account," "Document," "Fixture," "Electronic Chattel Paper," "Equipment," "General Intangibles," "Goods," "Instrument," "Investment Property," "Inventory," "Letter-of-Credit Right" and "Supporting Obligation."

**1.4** **Certain Matters of Construction**.  The terms "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, paragraph or subdivision.  Any pronoun used shall be deemed to cover all genders.  In the computation of periods of time from a specified date to a later specified date, "from" means "from and including," and "to" and "until" each mean "to but excluding."  The terms "including" and "include" shall mean "including, without limitation" and, for purposes of each Loan Document, the parties agree that the rule of *ejusdem generis* shall not be applicable to limit any provision.  Section titles appear as a matter of convenience only and shall not affect the interpretation of any Loan Document.  All references to (a) laws or statutes include all related rules, regulations, interpretations, amendments and successor provisions; (b) any document, instrument or agreement include any amendments, waivers and other modifications, extensions or renewals (to the extent permitted by the Loan Documents); (c) any section mean, unless the context otherwise requires, a section of this Agreement; (d) any exhibits or schedules mean, unless the context otherwise requires, exhibits and schedules attached hereto, which are hereby incorporated by reference; (e) any Person include successors and assigns; (f) time of day mean time of day at Agent's notice address under **Section 13.3.1**; or (g) discretion of Agent or any Lender mean the sole and absolute discretion of such Person.  All calculations of Value, fundings of Loans and payments of Obligations shall be in Dollars and, unless the context otherwise requires, all determinations (including calculations of Total Collateral Value and financial covenants) made from time to time under the Loan Documents shall be made in light of the circumstances existing at such time.  Total Collateral Value calculations shall be consistent with historical methods of valuation and calculation, and otherwise satisfactory to Agent (and not necessarily calculated in accordance with GAAP).  Borrower shall have the burden of

establishing any alleged negligence, misconduct or lack of good faith by Agent or any Lender under any Loan Documents.  No provision of any Loan Documents shall be construed against any party by reason of such party having, or being deemed to have, drafted the provision. Whenever the phrase "to the best of Borrower's knowledge" or words of similar import are used in any Loan Documents, it means actual knowledge of a Senior Officer, or knowledge that a Senior Officer would have obtained if he or she had engaged in good faith and diligent performance of his or her duties, including reasonably specific inquiries of employees or agents and a good faith attempt to ascertain the matter to which such phrase relates.

## SECTION 2.        CREDIT FACILITIES

### 2.1     Term Loans.

2.1.1        Term Loans.    Upon Plan Effectiveness, each Lender's Existing Secured Lender Claims shall be automatically converted to a term loan hereunder payable by the Borrower to such Lender (each such loan, a "Term Loan") in an amount equal to the amount of the Term Loan set forth opposite such Lender's name on Schedule 2.1.

2.1.2        Term Notes.  Each Lender's Term Loans and interest accruing thereon shall be evidenced by the records of Agent and such Lender.  At the request of any Lender, Borrower shall deliver a Term Note to such Lender.

### 2.2     Protective Advances.  Agent shall be authorized, in its discretion, at any time (a) to pay any amounts that Agent deems necessary or desirable to preserve or protect Collateral, or to enhance the collectibility or repayment of Obligations; or (b) to pay any other amounts chargeable to Borrower under any Loan Documents, including costs, fees and expenses; it being understood that all such amounts paid by Agent pursuant to clause (a) or (b) ("Protective Advances") shall constitute Obligations and shall bear interest, and shall be due and payable, in the manner provided in Section 3.1.  Each Lender shall participate in each Protective Advance on a Pro Rata basis.  Required Lenders may at any time revoke Agent's authority to make further Protective Advances by written notice to Agent.  Absent such revocation, Agent's determination that funding of a Protective Advance is appropriate shall be conclusive.

### 2.3     Cash Collateral.  If Agent, at its discretion, requires payment by Borrower of Cash Collateral, then Borrower shall, at Agent's request, Cash Collateralize the stated amount of Cash Collateral.  If Borrower fails to provide any Cash Collateral as required hereunder, Lenders may (and shall upon direction of Agent) advance, on a Pro Rata basis, the amount of the Cash Collateral required, and such advances shall constitute Obligations hereunder and shall bear interest, and shall be due and payable in the manner provided in Section 3.1.

## SECTION 3.        INTEREST, FEES AND CHARGES

### 3.1     Interest.

3.1.1        Rates and Payment of Interest.

-25-

(a)      The Obligations shall bear interest at the Base Rate in effect from time to time, plus the Applicable Margin.  Interest shall accrue from Plan Effectiveness or (if later) the date on which the applicable Obligation is incurred or payable, until paid by Borrower.

(b)      During an Insolvency Proceeding with respect to Borrower, or during any other Event of Default if Agent or Required Lenders in their discretion so elect, Obligations shall bear interest at the Default Rate (whether before or after any judgment).      Borrower acknowledges that the cost and expense to Agent and Lenders due to an Event of Default are difficult to ascertain and that the Default Rate is a fair and reasonable estimate to compensate Agent and Lenders for this.

(c)      Interest accrued on the Loans shall be due and payable in arrears, (i) on the seventh day of each month, (ii) on any date of prepayment, with respect to the principal amount of Loans being prepaid, and (iii) on the Term Loan Maturity Date.  Interest accrued on any other Obligations shall be due and payable as provided in the Loan Documents and, if no payment date is specified, shall be due and payable **on demand**.  Notwithstanding the foregoing, interest accrued at the Default Rate shall be due and payable **on demand**.

**3.2**     **Fees**.

3.2.1      Annual Facility Fee.  Borrower shall pay to Agent, for the Pro Rata benefit of Lenders, an annual fee equal to (a) with respect to the first Loan Year, 0.75% *per annum* on the aggregate outstanding principal amount of the Term Loan as of the last day of such Loan Year, (b) with respect to the second Loan Year, 1.25% *per annum* on the aggregate principal amount of the Term Loan as of the last day of such Loan Year, and (c) with respect to the third Loan Year, 1.75% *per annum* on the aggregate principal amount of the Term Loan as of the last day of such Loan Year; *it being understood* that, in each case, the fee shall be payable on the seventh day following the last day of the applicable Loan Year.

3.2.2      Closing Fee.  Borrower shall pay to Agent, for the Pro Rata benefit of Lenders, a closing fee equal to 0.50% of the aggregate principal amount of the Term Loans outstanding immediately following the conversion of Existing Secured Lender Claims under **Section 2.1** upon Plan Effectiveness, which shall be paid on the Closing Date.

**3.3**     **Computation of Interest, Fees, Yield Protection**.  All interest, as well as fees and other charges calculated on a *per annum* basis, shall be computed for the actual days elapsed, based on a year of 360 days.  Each determination by Agent of any interest, fees or interest rate hereunder shall be final, conclusive and binding for all purposes, absent manifest error.  All fees shall be fully earned when due and shall not be subject to rebate, refund or proration.  All fees payable under **Section 3.2** are compensation for services and are not, and shall not be deemed to be, interest or any other charge for the use, forbearance or detention of money.  A certificate as to amounts payable by Borrower under **Section 3.4, 3.5** or **4.7**, submitted to Borrower by Agent or the affected Lender, as applicable, shall be final, conclusive and binding for all purposes, absent manifest error, and Borrower shall pay such amounts to the appropriate party within 10 days following receipt of the certificate.

-26-

**3.4**     <u>**Reimbursement Obligations**</u>.    Borrower shall reimburse Agent for all Extraordinary Expenses and Lenders for all Default Expenses. Borrower shall also reimburse Agent for all legal, accounting, appraisal, consulting, and other fees, costs and expenses incurred by it in connection with (a) negotiation and preparation of any Loan Documents, including any amendment or other modification thereof; (b) administration of and actions relating to any Collateral, Loan Documents and transactions contemplated thereby, including any actions taken to perfect or maintain priority of Agent's Liens on any Collateral, to maintain any insurance required hereunder or to verify Collateral; and (c) subject to the limits of **Section 9.1.1(b)**, each inspection, audit or appraisal with respect to Borrower or any Collateral, whether prepared by Agent's personnel or a third party. All legal, accounting and consulting fees shall be charged to Borrower by Agent's professionals at their full hourly rates, regardless of any reduced or alternative fee billing arrangements that Agent, any Lender or any of their Affiliates may have with such professionals with respect to this or any other transaction. If, for any reason (including inaccurate reporting on financial statements or a Compliance Certificate), it is determined that a higher Applicable Margin should have applied to a period than was actually applied, then the proper margin shall be applied retroactively and Borrower shall immediately pay to Agent, for the Pro Rata benefit of Lenders, an amount equal to the difference between the amount of interest and fees that would have accrued using the proper margin and the amount actually paid. All amounts payable by Borrower under this Section shall be due **on demand**.

**3.5**     <u>**Increased Costs; Capital Adequacy**</u>.

     3.5.1    <u>Change in Law</u>. If any Change in Law shall:

     (a)    impose modify or deem applicable any reserve, special deposit, compulsory loan, insurance charge or similar requirement against assets of, deposits with or for the account of, or credit extended or participated in by, any Lender (except any reserve requirement reflected in LIBOR);

     (b)    subject any Lender to any Tax with respect to any Loan or Loan Document or change the basis of taxation of payments to such Lender in respect thereof (except for Indemnified Taxes or Other Taxes covered by **Section 4.7** and the imposition of, or any change in the rate of, any Excluded Tax payable by such Lender); or

     (c)    impose on any Lender any other condition, cost or expense affecting any Loan or Loan Document;

and the result thereof shall be to reduce the amount of any sum received or receivable by such Lender hereunder (whether of principal, interest or any other amount) then, upon request of such Lender, Borrower will pay to such Lender such additional amount or amounts as will compensate such Lender for reduction suffered.

     3.5.2    <u>Capital Adequacy</u>. If any Lender determines that any Change in Law affecting such Lender or any Lending Office of such Lender or such Lender's holding company, if any, regarding capital requirements has or would have the effect of reducing the rate of return on such Lender's or holding company's capital as a consequence of this Agreement, or such Lender's Loans, to a level below that which such Lender or holding company could have

achieved but for such Change in Law (taking into consideration such Lender's and holding company's policies with respect to capital adequacy), then from time to time Borrower will pay to such Lender, as the case may be, such additional amount or amounts as will compensate it or its holding company for any such reduction suffered.

        3.5.3     <u>Compensation</u>.  Failure or delay on the part of any Lender to demand compensation pursuant to this Section shall not constitute a waiver of its right to demand such compensation, but Borrower shall not be required to compensate a Lender for any increased costs incurred or reductions suffered more than nine months prior to the date that the Lender notifies Borrower of the Change in Law giving rise to such increased costs or reductions and of such Lender's intention to claim compensation therefor (except that, if the Change in Law giving rise to such increased costs or reductions is retroactive, then the nine-month period referred to above shall be extended to include the period of retroactive effect thereof).

    **3.6**    **<u>Mitigation</u>**.  If any Lender requests compensation under **Section 3.5**, or if Borrower is required to pay additional amounts with respect to a Lender under **Section 4.7**, then such Lender shall use reasonable efforts to designate a different Lending Office or to assign its rights and obligations hereunder to another of its offices, branches or Affiliates, if, in the judgment of such Lender, such designation or assignment (a) would eliminate the need for such notice or reduce amounts payable or to be withheld in the future, as applicable; and (b) would not subject the Lender to any unreimbursed cost or expense and would not otherwise be disadvantageous to it.  Borrower shall pay all reasonable costs and expenses incurred by any Lender in connection with any such designation or assignment.

    **3.7**    **<u>Maximum Interest</u>**.  Notwithstanding anything to the contrary contained in any Loan Document, the interest paid or agreed to be paid under the Loan Documents shall not exceed the maximum rate of non-usurious interest permitted by Applicable Law ("<u>maximum rate</u>").  If Agent or any Lender shall receive interest in an amount that exceeds the maximum rate, the excess interest shall be applied to the principal of the Obligations or, if it exceeds such unpaid principal, refunded to Borrower.  In determining whether the interest contracted for, charged or received by Agent or a Lender exceeds the maximum rate, such Person may, to the extent permitted by Applicable Law, (a) characterize any payment that is not principal as an expense, fee or premium rather than interest; (b) exclude voluntary prepayments and the effects thereof; and (c) amortize, prorate, allocate and spread in equal or unequal parts the total amount of interest throughout the contemplated term of the Obligations hereunder.

## SECTION 4.    PAYMENTS

    **4.1**    **<u>General Payment Provisions</u>**.  All payments of Obligations shall be made in Dollars, without offset, counterclaim or defense of any kind, free of (and without deduction for) any Taxes, and in immediately available funds, not later than 12:00 noon on the due date.  Any payment after such time shall be deemed made on the next Business Day.  If any payment to be made by Borrower shall come due on a day other than a Business Day, payment shall be made on the next following Business Day, and such extension of time shall be reflected in computing interest or fees, as the case may be.

    **4.2**    **<u>Repayment of Term Loans</u>**.

4.2.1 <u>Payment of Principal</u>. The principal amount of the Term Loans shall be repaid on the seventh day of each month in consecutive monthly installments equal to the amount that is 1.4% of the aggregate principal amount of the Term Loans outstanding as of the last day of the immediately preceding month until the Term Loan Maturity Date, on which date all principal, interest and other amounts owing with respect to the Term Loans shall be due and payable in full. Each installment shall be paid to Agent for the Pro Rata benefit of Lenders. Once repaid, whether such repayment is voluntary or required, the Term Loans may not be reborrowed.

4.2.2 <u>Mandatory Prepayments</u>.

(a) Within seven days after the end of each month, commencing with January 2011, Borrower shall (i) deliver to Agent a written statement of its Cash and Cash Equivalents as of the last day of the just ended month, certified by a Senior Officer of Borrower, and (ii) prepay Term Loans in an amount equal to 100% of such Cash and Cash Equivalents in excess of $4,000,000;

(b) Concurrently with any Permitted Asset Disposition and concurrently with any sale of any Dealer Consumer Credit Contract in connection with the exercise of a remedy with respect to Loan Receivables, Borrower shall prepay Term Loans in an amount equal to the Net Proceeds of such Permitted Asset Disposition or the net proceeds of such sale of such Dealer Consumer Credit Contract; and

(c) Concurrently with any issuance of Equity Interests by Borrower, Borrower shall prepay Term Loans in an amount equal to the net proceeds of such issuance.

4.2.3 <u>Optional Prepayments</u>. Borrower may, at its option from time to time, prepay the Term Loans, which prepayment must be at least $25,000, or in an increment of $10,000 in excess thereof. Borrower shall give written notice to Agent of an intended prepayment of Term Loans, which notice shall specify the amount of the prepayment, shall be irrevocable once given, shall be given at least 10 Business Days prior to the end of a month and shall be effective as of the first day of the next month.

4.2.4 <u>Premium; Interest; Application of Prepayments</u>. No premium or penalty shall be payable in connection with a prepayment of Term Loans. Each prepayment of Term Loans shall be accompanied by all interest accrued thereon, and shall be applied to installments of principal in inverse order of maturity.

**4.3 Payment of Other Obligations**. Obligations other than Loans, including Extraordinary Expenses, shall be paid by Borrower as provided in the Loan Documents or, if no payment date is specified, **on demand**.

**4.4 Marshaling; Payments Set Aside**. None of Agent or Lenders shall be under any obligation to marshal any assets in favor of Borrower or against any Obligations. If any payment by or on behalf of Borrower is made to Agent or any Lender, or Agent or any Lender exercises a right of setoff, and such payment or the proceeds of such setoff or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by Agent or such Lender in its discretion) to

-29-

be repaid to a trustee, receiver or any other Person, then to the extent of such recovery, the Obligation originally intended to be satisfied, and all Liens, rights and remedies relating thereto, shall be revived and continued in full force and effect as if such payment had not been made or such setoff had not occurred.

**4.5     Post-Default Allocation of Payments**.

     4.5.1     Allocation.  Notwithstanding anything herein to the contrary, during an Event of Default, monies to be applied to the Obligations, whether arising from payments by Borrower, realization on Collateral, setoff or otherwise, shall be allocated as follows:

     (a)     first, to all costs and expenses, including Extraordinary Expenses and Default Expenses, owing to Agent and Lenders;

     (b)     second, to all Obligations constituting fees (excluding amounts relating to Bank Products);

     (c)     third, to all Obligations constituting interest (excluding amounts relating to Bank Products);

     (d)     fourth, to all other Obligations, other than Bank Product Debt; and

     (e)     fifth, to Bank Product Debt.

Amounts shall be applied to each category of Obligations set forth above until Full Payment thereof and then to the next category.  If amounts are insufficient to satisfy a category, they shall be applied on a pro rata basis among the Obligations in the category.  Amounts distributed with respect to any Bank Product Debt shall be the lesser of the applicable Bank Product Amount last reported to Agent or the actual Bank Product Debt as calculated by the methodology reported to Agent for determining the amount due.  Agent shall have no obligation to calculate the amount to be distributed with respect to any Bank Product Debt, but may rely upon written notice of the amount (setting forth a reasonably detailed calculation) from the Secured Party.  In the absence of such notice, Agent may assume the amount to be distributed is the Bank Product Amount last reported to it.  The allocations set forth in this Section are solely to determine the rights and priorities of Agent and Lenders as among themselves, and may be changed by agreement among them without the consent of Borrower.  This Section is not for the benefit of or enforceable by Borrower.

     4.5.2     Erroneous Application.  Agent shall not be liable for any application of amounts made by it in good faith and, if any such application is subsequently determined to have been made in error, the sole recourse of any Lender or other Person to which such amount should have been made shall be to recover the amount from the Person that actually received it (and, if such amount was received by any Lender, such Lender hereby agrees to return it).

**4.6     Loan Account; Account Stated**.

     4.6.1     Loan Account.  Agent shall maintain in accordance with its usual and customary practices an account or accounts (the "Loan Account") evidencing the Debt of

Borrower resulting from each Loan. Any failure of Agent to record anything in the Loan Account, or any error in doing so, shall not limit or otherwise affect the obligation of Borrower to pay any amount owing hereunder.

4.6.2    Entries Binding. Entries made in the Loan Account shall constitute presumptive evidence of the information contained therein. If any information contained in the Loan Account is provided to or inspected by any Person, then such information shall be conclusive and binding on such Person for all purposes absent manifest error, except to the extent such Person notifies Agent in writing within 30 days after receipt or inspection that specific information is subject to dispute.

**4.7    Taxes.**

4.7.1    Payments Free of Taxes. All payments by Borrower of Obligations shall be free and clear of and without reduction for any Taxes. If Applicable Law requires Borrower or Agent to withhold or deduct any Tax (including backup withholding or withholding Tax), the withholding or deduction shall be based on information provided pursuant to **Section 4.8** and Agent shall pay the amount withheld or deducted to the relevant Governmental Authority. If the withholding or deduction is made on account of Indemnified Taxes or Other Taxes, the sum payable by Borrower shall be increased so that Agent or Lender, as applicable, receives an amount equal to the sum it would have received if no such withholding or deduction (including deductions applicable to additional sums payable under this Section) had been made. Without limiting the foregoing, Borrower shall timely pay all Other Taxes to the relevant Governmental Authorities.

4.7.2    Payment. Borrower shall indemnify, hold harmless and reimburse (within 10 days after demand therefor) Agent and Lenders for any Indemnified Taxes or Other Taxes (including those attributable to amounts payable under this Section) withheld or deducted by Borrower or Agent, or paid by Agent or any Lender, with respect to any Obligations or Loan Documents, whether or not such Taxes were properly asserted by the relevant Governmental Authority, and including all penalties, interest and reasonable expenses relating thereto, as well as any amount that a Lender fails to pay indefeasibly to Agent under **Section 4.8**. A certificate as to the amount of any such payment or liability delivered to Borrower by Agent, or by a Lender (with a copy to Agent), shall be conclusive, absent manifest error. As soon as practicable after any payment of Taxes by Borrower, Borrower shall deliver to Agent a receipt from the Governmental Authority or other evidence of payment satisfactory to Agent.

**4.8    Lender Tax Information.**

4.8.1    Status of Lenders. Each Lender shall deliver documentation and information to Agent and Borrower, at the times and in form required by Applicable Law or reasonably requested by Agent or Borrower, sufficient to permit Agent or Borrower to determine (a) whether or not payments made with respect to Obligations are subject to Taxes, (b) if applicable, the required rate of withholding or deduction, and (c) such Lender's entitlement to any available exemption from, or reduction of, applicable Taxes for such payments or otherwise to establish such Lender's status for withholding tax purposes in the applicable jurisdiction.

4.8.2 <u>Documentation</u>. If Borrower is resident for tax purposes in the United States, any Lender that is a "United States person" within the meaning of section 7701(a)(30) of the Code shall deliver to Agent and Borrower IRS Form W-9 or such other documentation or information prescribed by Applicable Law or reasonably requested by Agent or Borrower to determine whether such Lender is subject to backup withholding or information reporting requirements. If any Foreign Lender is entitled to any exemption from or reduction of withholding tax for payments with respect to the Obligations, it shall deliver to Agent and Borrower, on or prior to the date on which it becomes a Lender hereunder (and from time to time thereafter upon request by Agent or Borrower, but only if such Foreign Lender is legally entitled to do so), (a) IRS Form W-8BEN claiming eligibility for benefits of an income tax treaty to which the United States is a party; (b) IRS Form W-8ECI; (c) IRS Form W-8IMY and all required supporting documentation; (d) in the case of a Foreign Lender claiming the benefits of the exemption for portfolio interest under section 881(c) of the Code, IRS Form W-8BEN and a certificate showing such Foreign Lender is not (i) a "bank" within the meaning of section 881(c)(3)(A) of the Code, (ii) a "10 percent shareholder" of Borrower within the meaning of section 881(c)(3)(B) of the Code, or (iii) a "controlled foreign corporation" described in section 881(c)(3)(C) of the Code; or (e) any other form prescribed by Applicable Law as a basis for claiming exemption from or a reduction in withholding tax, together with such supplementary documentation necessary to allow Agent and Borrower to determine the withholding or deduction required to be made.

4.8.3 <u>Lender Obligations</u>. Each Lender shall promptly notify Borrower and Agent of any change in circumstances that would change any claimed Tax exemption or reduction. Each Lender shall indemnify, hold harmless and reimburse (within 10 days after demand therefor) Borrower and Agent for any Taxes, losses, claims, liabilities, penalties, interest and expenses (including reasonable attorneys' fees) incurred by or asserted against Borrower or Agent by any Governmental Authority due to such Lender's failure to deliver, or inaccuracy or deficiency in, any documentation required to be delivered by it pursuant to this Section. Each Lender authorizes Agent to set off any amounts due to Agent under this Section against any amounts payable to such Lender under any Loan Document.

**4.9** **Payment of Other Obligations**. Obligations other than Loans, including Extraordinary Expenses, shall be paid by Borrower as provided in the Loan Documents or, if no payment date is specified, **on demand**.

**4.10** **One Obligation**. The Loans and other Obligations shall constitute one general obligation of Borrower and (unless otherwise expressly provided in any Loan Document) shall be secured by Agent's Lien upon all Collateral.

**4.11** **Effect of Termination.** On the Term Loan Maturity Date, all Obligations shall be immediately due and payable, and any Lender may terminate its and its Affiliates' Bank Products (including, only with the consent of Agent, any Cash Management Services); <u>provided</u> that such Lender may (but shall not be obligated to) allow Borrower a transition period (but not more than 90 days) to retain a successor provider of the terminated products or services. All undertakings of Borrower contained in the Loan Documents shall survive such date, and Agent shall retain its Liens in the Collateral and all of its rights and remedies under the Loan Documents until Full Payment of the Obligations. Notwithstanding Full Payment of the

Obligations, Agent shall not be required to terminate its Liens in any Collateral unless, with respect to any damages Agent may incur as a result of the dishonor or return of Payment Items applied to Obligations, Agent receives (a) a written agreement, executed by Borrower and any Person whose advances are used in whole or in part to satisfy the Obligations, indemnifying Agent and Lenders from any such damages; or (b) such Cash Collateral as Agent, in its discretion, deems necessary to protect against any such damages. **Sections 3.4, 3.5, 4.4, 4.7, 4.8, 11, 13.2** and this Section, and the obligation of Borrower and Lender with respect to each indemnity given by it in any Loan Document, shall survive Full Payment of the Obligations and any release relating to this credit facility.

## SECTION 5.    CONDITIONS PRECEDENT

**5.1    Conditions Precedent**.  This Agreement will not be effective until each of the following conditions shall have been satisfied:

(a)    Agent shall have received evidence satisfactory to it that the Confirmation Order has been entered by the Bankruptcy Court and the Confirmation Order shall be in full force and effect and shall not have been vacated, stayed, reversed, modified or amended and shall not be on appeal.

(b)    All conditions precedent to the Effective Date (as such term is defined in the Plan of Reorganization) set forth in Section [__] of the Plan of Reorganization, other than conditions expressly waived by the Required Lenders in writing, shall have been satisfied and Agent shall have received a certificate from a Senior Officer of Borrower certifying as to the satisfaction of such conditions.

(c)    Notes shall have been executed by Borrower and delivered to each Lender that requests issuance of a Note.  Each other Loan Document shall have been duly executed and delivered to Agent by each of the signatories thereto, and Borrower shall be in compliance with all terms thereof.

(d)    Agent shall have received acknowledgments of all filings or recordations necessary to perfect its Liens in the Collateral, as well as UCC and Lien searches and other evidence satisfactory to Agent that such Liens are the only Liens upon the Collateral, except Permitted Liens.

(e)    Agent shall have received evidence, in form and substance satisfactory to it, that PCS and Prime Acceptance have each merged with and into Borrower.

(f)    Agent shall have received certificates, in form and substance satisfactory to it, from a knowledgeable Senior Officer of Borrower certifying that, after giving effect to the initial Loans and transactions hereunder, (i) no Default or Event of Default exists; (ii) the representations and warranties set forth in **Section 8** are true and correct; and (iii) Borrower has complied with all agreements and conditions to be satisfied by it under the Loan Documents.

(g)    Agent shall have received a certificate of a duly authorized officer of Borrower, certifying (i) that attached copies of Borrower's Organic Documents are true and complete, and in full force and effect, without amendment except as shown; (ii) that an attached

copy of resolutions authorizing execution and delivery of the Loan Documents is true and complete, and that such resolutions are in full force and effect, were duly adopted, have not been amended, modified or revoked, and constitute all resolutions adopted with respect to this credit facility; and (iii) to the title, name and signature of each Person authorized to sign the Loan Documents.  Agent may conclusively rely on this certificate until it is otherwise notified by the Borrower in writing.

(h)     Agent shall have received a written opinion of **[BORROWER'S CORPORATE COUNSEL]**, as well as any local counsel to Borrower or Agent, in form and substance satisfactory to Agent.[1]

(i)     Agent shall have received copies of the charter documents of Borrower, certified by the Secretary of State or other appropriate official of Borrower's jurisdiction of organization.  Agent shall have received a good standing certificate for Borrower, issued by the Secretary of State or other appropriate official of Borrower's jurisdiction of organization and each jurisdiction where Borrower's conduct of business or ownership of Property necessitates qualification.

(j)     Agent shall have received copies of policies or certificates of insurance for the insurance policies carried by Borrower, all in compliance with the Loan Documents.

(k)     Agent shall have received Borrower's and its Subsidiaries' pro forma consolidated and consolidating balance sheet, and related statements of income, cash flow and shareholder's equity, calculated on a monthly basis for Fiscal Year 2011, in form, scope and detail satisfactory to Agent in its discretion, accompanied by a certificate of a Senior Officer of Borrower certifying that such forecast was prepared in good faith and fairly presents, in all material respects, Borrower's expectations as to the matters covered thereby for the period covered thereby;

(l)     Agent shall have received pro forma consolidated and consolidating balance sheets, and related statements of income, cash flow and shareholder's equity, of Borrower and its Subsidiaries as of Plan Effectiveness prepared in accordance with GAAP;

(m)     Agent shall have completed its business, financial and legal due diligence of Borrower, including a roll-forward of its previous field examination, with results satisfactory to Agent.  No material adverse change in the financial condition of Borrower or in the quality, quantity or value of any Collateral shall have occurred since the date of Plan Effectiveness.

(n)     Agent shall have received copies of all Subordinated Debt Documents with respect to the Subordinated Debt in existence at the time of Plan Effectiveness.

(o)     Borrower shall have paid all fees and expenses to be paid to Agent and Lenders on the Closing Date.

(p)     All conditions precedent in any other Loan Document shall be satisfied.

---

[1] Note: The expectation is to receive a general corporate, enforceability and perfection opinion.

-34-

(q)      Agent shall have received a Total Collateral Value Certificate prepared as of the date of Plan Effectiveness.

## SECTION 6.      COLLATERAL

**6.1      Grant of Security Interest**.  To secure the prompt payment and performance of all Obligations, Borrower hereby grants to Agent, for the benefit of Secured Parties, a continuing security interest in and Lien upon all Property of Borrower, including all of the following Property, whether now owned or hereafter acquired, and wherever located:

(a)      all Accounts;

(b)      all Chattel Paper, including Electronic Chattel Paper;

(c)      all Commercial Tort Claims, including those shown on **Schedule 8.1.15**;

(d)      all Deposit Accounts;

(e)      all Documents;

(f)      all General Intangibles, including Intellectual Property;

(g)      all Goods, including Inventory, Equipment and Fixtures;

(h)      all Instruments;

(i)      all Investment Property;

(j)      all Letter-of-Credit Rights;

(k)      all Supporting Obligations;

(l)      all monies, whether or not in the possession or under the control of Agent, a Lender, or a bailee or Affiliate of Agent or a Lender, including any Cash Collateral;

(m)      all accessions to, substitutions for, and all replacements, products, and cash and non-cash proceeds of the foregoing, including proceeds of and unearned premiums with respect to insurance policies, and claims against any Person for loss, damage or destruction of any Collateral; and

(n)      all books and records (including customer lists, files, correspondence, tapes, computer programs, print-outs and computer records) pertaining to the foregoing.

Notwithstanding anything herein to the contrary, in no event shall the security interest granted under this **Section 6.1** attach to any Servicing Account.[2]

---

[2] Agent is evaluating whether the cash collateral accounts at MB Financial and at Bank of America should also be excluded.

**6.2**      <u>**Lien on Deposit Accounts; Cash Collateral**</u>.

     6.2.1      <u>Deposit Accounts</u>.    To further secure the prompt payment and performance of all Obligations, Borrower hereby grants to Agent, for the benefit of Secured Parties, a continuing security interest in and Lien upon all amounts credited to any Deposit Account of Borrower, including any sums in any blocked or lockbox accounts or in any accounts into which such sums are swept. Borrower hereby authorizes and directs each bank or other depository to deliver to Agent, upon request, all balances in any Deposit Account maintained by Borrower, without inquiry into the authority or right of Agent to make such request.

     6.2.2      <u>Cash Collateral</u>. Any Cash Collateral may be invested, at Agent's discretion, in Cash Equivalents, but Agent shall have no duty to do so, regardless of any agreement or course of dealing with Borrower, and shall have no responsibility for any investment or loss. Borrower hereby grants to Agent, for the benefit of Secured Parties, a security interest in all Cash Collateral held from time to time and all proceeds thereof, as security for the Obligations, whether such Cash Collateral is held in a Cash Collateral Account or elsewhere. Agent may apply Cash Collateral to the payment of any Obligations, in such order as Agent may elect, as they become due and payable. Each Cash Collateral Account and all Cash Collateral shall be under the sole dominion and control of Agent. Neither Borrower nor any other Person claiming through or on behalf of Borrower shall have any right to any Cash Collateral, until Full Payment of all Obligations.

**6.3**      <u>**Other Collateral**</u>.

     6.3.1      <u>Commercial Tort Claims</u>. Borrower shall promptly notify Agent in writing if Borrower has a Commercial Tort Claim (other than, as long as no Default or Event of Default exists, a Commercial Tort Claim for less than $100,000), shall promptly amend **Schedule 8.1.15** to include such claim, and shall take such actions as Agent deems appropriate to subject such claim to a duly perfected, first priority Lien in favor of Agent (for the benefit of Secured Parties).

     6.3.2      <u>Certain After-Acquired Collateral</u>. Borrower shall promptly notify Agent in writing if, after the Closing Date, Borrower obtains any interest in any Collateral consisting of Deposit Accounts, Chattel Paper, Documents, Instruments, Intellectual Property, Investment Property or Letter-of-Credit Rights and, upon Agent's request, shall promptly take such actions as Agent deems appropriate to effect Agent's duly perfected, first priority Lien upon such Collateral, including obtaining any appropriate possession, control agreement or Lien Waiver. If any Collateral is in the possession of a third party, at Agent's request, Borrower shall obtain an acknowledgment that such third party holds the Collateral for the benefit of Agent.

**6.4**      <u>**No Assumption of Liability**</u>. The Lien on Collateral granted hereunder is given as security only and shall not subject Agent or any Lender to, or in any way modify, any obligation or liability of Borrower relating to any Collateral.

**6.5**      <u>**Further Assurances**</u>. Promptly upon request, Borrower shall deliver such instruments, assignments, title certificates, or other documents or agreements, and shall take such actions, as Agent deems appropriate under Applicable Law to evidence or perfect its Lien on any

Collateral, or otherwise to give effect to the intent of this Agreement. Borrower authorizes Agent to file any financing statement that indicates the Collateral as "all assets" or "all personal property" of Borrower, or words to similar effect, and ratifies any action taken by Agent before the Closing Date to effect or perfect its Lien on any Collateral.

**6.6** **Foreign Subsidiary Stock**. Notwithstanding **Section 6.1**, the Collateral shall include only 65% of the voting stock of any Foreign Subsidiary.

## SECTION 7.   COLLATERAL ADMINISTRATION

**7.1** **Total Collateral Value Certificates**. On or before the 20th day and the last day of each month, Borrower shall deliver to Agent (and Agent shall promptly deliver same to Lenders): (x) a Total Collateral Value Certificate and (y) a summary report on aged trial balance of all Accounts in form and substance satisfactory to Agent in its sole discretion, each prepared, respectively, as of the last day of the previous month and as of the 15th day of the current month (the last day of the previous month and the 15th day of the current month being the "LTV Ratio Test Dates"; it being understood that the 15th day of the current month shall not be an LTV Ratio Test Date if the proviso to this sentence applies), and at such other times as Agent may request; provided that, so long as Borrower's Monthly LTV Ratio is less than 100%, Borrower shall not be required to deliver to Agent the Total Collateral Value Certificate or the summary report referred to in clause (y) above that would have been delivered on or before the last day of each month. All calculations of the Total Collateral Value in any Total Collateral Value Certificate shall originally be made by Borrower and certified by a Senior Officer, provided that Agent may from time to time review and adjust any such calculation (a) to reflect its reasonable estimate of declines in value of any Collateral, due to Collections or otherwise; (b) to adjust advance rates to reflect changes in dilution, quality, mix and other factors affecting Collateral; and (c) to the extent the calculation is not made in accordance with this Agreement.

**7.2** **Administration of Accounts**.

**7.2.1** **Records and Schedules of Accounts**. Borrower shall keep accurate and complete records of its Accounts, including all payments and collections thereon, and shall submit to Agent sales, collection, reconciliation and other reports in form satisfactory to Agent, on such periodic basis as Agent may request. Borrower shall also provide to Agent, on or before the 20th day of each month: (a) a detailed aged trial balance of all Accounts, respectively, as of the close of business of the previous month, specifying each Account's Account Debtor name and address, amount, invoice date and due date, showing any discount, allowance, credit, authorized return or dispute, and including such proof of delivery, copies of invoices and invoice registers, copies of related documents, repayment histories, status reports, (b) a detailed report about the Accounts that are not Eligible Accounts as of the close of business of the previous month in form satisfactory to Agent and (c) other information as Agent may reasonably request.

Notwithstanding anything to the contrary herein, Borrower shall not grant any discount, credit or allowance to any Contract Debtor without Agent's prior written consent, except for discounts, credits and allowances made or given in the Ordinary Course of Business. Borrower shall not accept any note or other instrument (except a check or other instrument for the immediate payment of money) with respect to any Account without Agent's written consent.

If Agent consents to the acceptance of any such instrument, the instrument shall be considered as evidence of the Account and not payment thereof and Borrower will promptly deliver such instrument to Agent, endorsed by Borrower to Agent in a manner satisfactory in form and substance to Agent. Regardless of the form of presentment, demand, notice of protest with respect thereto, the Contract Debtor shall remain liable thereon until such instrument is paid in full.

> 7.2.2    <u>Endorsement and Delivery of Loan Receivables</u>.    Borrower shall deliver to Agent, for the benefit of Secured Parties, any and all original agreements, documents and instruments evidencing Loan Receivables, and any and all original amendments thereto.

> 7.2.3    <u>Stamping and Delivery of Consumer Credit Contracts</u>.

> (a)    Borrower shall stamp all Consumer Credit Contracts on the face thereof with a legend substantially similar to the following statement: THIS IS COLLATERAL OF BANK OF AMERICA, N.A. AS AGENT (THE "AGENT") FOR THE BENEFIT OF VARIOUS FINANCIAL INSTITUTIONS PURSUANT TO A LOAN AND SECURITY AGREEMENT AMONG BANK OF AMERICA, N.A., SUCH FINANCIAL INSTITUTIONS AND PCS RECEIVABLES CORP.  ANY PURCHASE HEREOF WITHOUT THE CONSENT OF THE AGENT VIOLATES THE RIGHTS OF THE AGENT.

> (b)    Borrower shall deliver to Agent, for the benefit of Secured Parties, all Consumer Credit Contracts, unless Borrower (i) has provided Agent, for the benefit of Secured Parties, with a first priority perfected security interest in such Consumer Credit Contracts by means other than delivery to Agent, and (ii) retains possession of such Consumer Credit Contracts.

> (c)    Agent shall store all original agreements, documents and instruments evidencing Loan Receivables or Consumer Credit Contracts that have been duly delivered to Agent pursuant to **Sections 7.2.2** and **7.2.3(b)** in fireproof cabinets or other fireproof containers. Agent shall have no liability to Borrower for any loss or damage that Borrower may suffer or incur, either directly or indirectly, by reason of Agent's possession or handling of agreements, documents and instruments evidencing Loan Receivables or Consumer Credit Contracts, other than any loss or damage ultimately determined to be founded on gross negligence or willful misconduct of Agent.  In addition, Borrower agrees to indemnify Agent and hold it harmless from and against any and all claims, damages, penalties, judgments, liabilities, losses or expenses (including reasonable attorneys' fees and disbursements) incurred as a result of the assertion of any claim by any Dealer arising out of, or otherwise related to, Borrower's possession or handling of agreements, documents and instruments evidencing Loan Receivables or Dealer Consumer Credit Contracts, other than those claims ultimately determined to be founded on gross negligence or willful misconduct of Agent.

> 7.2.4    <u>Taxes</u>.  If an Account of Borrower includes a charge for any Taxes, Agent is authorized, in its discretion, to pay the amount thereof to the proper taxing authority for the account of Borrower and to charge Borrower therefor; <u>provided</u>, <u>however</u>, that neither Agent nor Lenders shall be liable for any Taxes that may be due from Borrower or with respect to any Collateral.

7.2.5    <u>Account Verification</u>.  Whether or not a Default or Event of Default exists, Agent shall have the right at any time, in the name of Agent, any designee of Agent or Borrower, to verify the validity, amount or any other matter relating to any Accounts of Borrower by mail, telephone or otherwise.  Borrower shall cooperate fully with Agent in an effort to facilitate and promptly conclude any such verification process.

**7.3    <u>Administration of Deposit Accounts</u>.    Schedule 7.3** sets forth all Deposit Accounts maintained by Borrower.  Borrower shall take all actions necessary to establish Agent's control of each such Deposit Account (other than an account exclusively used for payroll, payroll taxes or employee benefits, or an account containing not more that $10,000 at any time and other than Servicing Accounts).  Borrower shall be the sole account holder of each Deposit Account and shall not allow any other Person (other than Agent) to have control over a Deposit Account or any Property deposited therein.  Borrower shall promptly notify Agent of any opening or closing of a Deposit Account (other than a Servicing Account) and, with the consent of Agent, will amend **Schedule 7.3** to reflect same.

**7.4    <u>General Provisions</u>**.

7.4.1    <u>Location of Collateral</u>.  All tangible items of Collateral shall at all times be kept by Borrower at the business locations set forth in **Schedule 7.4.1**, except that Borrower may (a) make sales or other dispositions of Collateral in accordance with **Section 9.2.7**; and (b) move Collateral to another location in the United States, upon 30 Business Days' prior written notice to Agent.

7.4.2    <u>Insurance of Collateral; Condemnation Proceeds</u>.

(a)    Borrower shall maintain insurance with respect to the Collateral, covering casualty, hazard, theft, malicious mischief, flood and other risks, in amounts, with endorsements and with insurers (with a Best Rating of at least A7, unless otherwise approved by Agent) satisfactory to Agent.  All proceeds under each policy shall be payable to Agent.  From time to time upon request, Borrower shall deliver to Agent the originals or certified copies of its insurance policies and updated flood plain searches.  Unless Agent shall agree otherwise, each policy shall include satisfactory endorsements (i) showing Agent as loss payee; (ii) requiring 30 days prior written notice to Agent in the event of cancellation of the policy for any reason whatsoever; and (iii) specifying that the interest of Agent shall not be impaired or invalidated by any act or neglect of Borrower or the owner of the Property, nor by the occupation of the premises for purposes more hazardous than are permitted by the policy.  If Borrower fails to provide and pay for any insurance, Agent may, at its option, but shall not be required to, procure the insurance and charge Borrower therefor.  Borrower agrees to deliver to Agent, promptly as rendered, copies of all reports made to insurance companies.  While no Event of Default exists, Borrower may settle, adjust or compromise any insurance claim, as long as the proceeds are delivered to Agent. If an Event of Default exists, only Agent shall be authorized to settle, adjust and compromise such claims.

(b)    Any proceeds of insurance (other than proceeds from workers' compensation or D&O insurance) and any awards arising from condemnation of any Collateral

shall be paid to Agent.  Any such proceeds or awards shall be applied first to Term Loans and then to other Obligations.

        7.4.3      <u>Protection of Collateral</u>.  All expenses of protecting, storing, warehousing, insuring, handling, maintaining and shipping any Collateral, all Taxes payable with respect to any Collateral (including any sale thereof), and all other payments required to be made by Agent to any Person to realize upon any Collateral, shall be borne and paid by Borrower. Agent shall not be liable or responsible in any way for the safekeeping of any Collateral, for any loss or damage thereto (except for reasonable care in its custody while Collateral is in Agent's actual possession), for any diminution in the value thereof, or for any act or default of any warehouseman, carrier, forwarding agency or other Person whatsoever, but the same shall be at Borrower's sole risk.

        7.4.4      <u>Defense of Title to Collateral</u>.  Borrower shall at all times defend its title to Collateral and Agent's Liens therein against all Persons, claims and demands whatsoever, except Permitted Liens.

      **7.5**      **<u>Power of Attorney</u>**.  Borrower hereby irrevocably constitutes and appoints Agent (and all Persons designated by Agent) as Borrower's true and lawful attorney (and agent-in-fact) for the purposes provided in this Section.  Agent, or Agent's designee, may, without notice and in either its or Borrower's name, but at the cost and expense of Borrower:

        (a)      Endorse Borrower's name on any Payment Item or other proceeds of Collateral (including proceeds of insurance) that come into Agent's possession or control; and

        (b)      During an Event of Default, (i) notify any Account Debtors of the assignment of their Accounts, demand and enforce payment of Accounts by legal proceedings or otherwise, and generally exercise any rights and remedies with respect to Accounts; (ii) settle, adjust, modify, compromise, discharge or release any Accounts or other Collateral, or any legal proceedings brought to collect Accounts or Collateral; (iii) sell or assign any Accounts and other Collateral upon such terms, for such amounts and at such times as Agent deems advisable; (iv) collect, liquidate and receive balances in Deposit Accounts or investment accounts, and take control, in any manner, of proceeds of Collateral; (v) prepare, file and sign Borrower's name to a proof of claim or other document in a bankruptcy of an Account Debtor, or to any notice, assignment or satisfaction of Lien or similar document; (vi) receive, open and dispose of mail addressed to Borrower, and notify postal authorities to deliver any such mail to an address designated by Agent; (vii) endorse any Chattel Paper, Document, Instrument, bill of lading, or other document or agreement relating to any Accounts, Inventory or other Collateral; (viii) use Borrower's stationery and sign its name to verifications of Accounts and notices to Account Debtors; (ix) use information contained in any data processing, electronic or information systems relating to Collateral; (x) make and adjust claims under insurance policies; (xi) take any action as may be necessary or appropriate to obtain payment under any letter of credit, banker's acceptance or other instrument for which Borrower is a beneficiary; and (xii) take all other actions as Agent deems appropriate to fulfill Borrower's obligations under the Loan Documents.

**SECTION 8.    REPRESENTATIONS AND WARRANTIES**

**8.1    General Representations and Warranties**.  To induce Agent and Lenders to enter into this Agreement and to make available the Loans, Borrower represents and warrants that:

      8.1.1    Organization and Qualification.  Borrower and each Subsidiary is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization.  Borrower and each Subsidiary is duly qualified, authorized to do business and in good standing as a foreign corporation in each jurisdiction where failure to be so qualified could reasonably be expected to have a Material Adverse Effect.

      8.1.2    Power and Authority.  Borrower is duly authorized to execute, deliver and perform its Loan Documents.  The execution, delivery and performance of the Loan Documents have been duly authorized by all necessary action, and do not (a) require any consent or approval of any holders of Equity Interests of Borrower, other than those already obtained; (b) contravene the Organic Documents of Borrower; (c) require any Governmental Approval (other than the Confirmation Order); (d) violate or cause a default under any Applicable Law or Material Contract; or (e) result in or require the imposition of any Lien (other than Permitted Liens) on any Property of Borrower.

      8.1.3    Enforceability.  Each Loan Document is a legal, valid and binding obligation of Borrower, enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally.

      8.1.4    Capital Structure.  **Schedule 8.1.4** shows Borrower's name, its jurisdiction of organization, its authorized and issued Equity Interests, the holders of its Equity Interests, and all agreements binding on such holders with respect to their Equity Interests. Except as disclosed on **Schedule 8.1.4**, in the five years preceding the Closing Date, neither Borrower nor any Subsidiary has acquired any substantial assets from any other Person nor been the surviving entity in a merger or combination.  Borrower has no Subsidiaries.  There are no outstanding purchase options, warrants, subscription rights, agreements to issue or sell, convertible interests, phantom rights or powers of attorney relating to Equity Interests of Borrower or Subsidiary.

      8.1.5    Title to Properties; Priority of Liens.  Borrower and each Subsidiary has good and marketable title to (or valid leasehold interests in) all of its Real Estate, and good title to all of its personal Property, including all Property reflected in any financial statements delivered to Agent or Lenders, in each case free of Liens except Permitted Liens.  Borrower and each Subsidiary has paid and discharged all lawful claims that, if unpaid, could become a Lien on its Properties, other than Permitted Liens.  All Liens of Agent in the Collateral are duly perfected, first priority Liens, subject only to Permitted Liens that are expressly allowed to have priority over Agent's Liens.

      8.1.6    Real Property.  Set forth on **Schedule 8.1.6** is a complete and accurate list, as of the Closing Date, of the address or all real property owned or leased by Borrower,

-41-

together with, in the case of leased property, the name and mailing address of the lessor of such property.

       8.1.7    <u>Financial Statements</u>.  The consolidated and consolidating balance sheets, and related statements of income, cash flow and shareholder's equity, of Borrower and Subsidiaries that have been and are hereafter delivered to Agent and Lenders, are prepared in accordance with GAAP, and fairly present the financial positions and results of operations of Borrower and Subsidiaries at the dates and for the periods indicated.  All projections delivered from time to time to Agent and Lenders have been prepared in good faith, based on reasonable assumptions in light of the circumstances at such time.  Since November 30, 2010, there has been no change in the condition, financial or otherwise, of Borrower or any Subsidiary that could reasonably be expected to have a Material Adverse Effect, other than arising as a result of the Chapter 11 Cases.  No financial statement delivered to Agent or Lenders at any time contains any untrue statement of a material fact, nor fails to disclose any material fact necessary to make such statement not materially misleading.

       8.1.8    <u>Taxes</u>.  Each of Borrower and Subsidiaries has filed all federal, state and local tax returns and other reports that it is required by law to file, and has paid, or made provision for the payment of, all Taxes upon it, its income and its Properties that are due and payable, except to the extent being Properly Contested.  The provision for Taxes on the books of Borrower and each Subsidiary is adequate for all years not closed by applicable statutes, and for its current Fiscal Year.

       8.1.9    <u>Brokers</u>.  There are no brokerage commissions, finder's fees or investment banking fees payable in connection with any transactions contemplated by the Loan Documents.

       8.1.10    <u>Intellectual Property</u>.  Borrower and each Subsidiary owns or has the lawful right to use all Intellectual Property necessary for the conduct of its business, without conflict with any rights of others.  There is no pending or, to Borrower's knowledge, threatened Intellectual Property Claim with respect to Borrower, any Subsidiary or any of their Property (including any Intellectual Property).  Except as disclosed on **Schedule 8.1.10**, neither Borrower nor any Subsidiary pays or owes any Royalty or other compensation to any Person with respect to any Intellectual Property.  All Intellectual Property owned, used or licensed by, or otherwise subject to any interests of, Borrower or any Subsidiary is shown on **Schedule 8.1.10**.

       8.1.11    <u>Governmental Approvals</u>.  Each of Borrower and Subsidiaries has, is in compliance with, and is in good standing with respect to, all Governmental Approvals necessary to conduct its business and to own, lease and operate its Properties.  All necessary import, export or other licenses, permits or certificates for the import or handling of any goods or other Collateral have been procured and are in effect, and Borrower and Subsidiaries have complied with all foreign and domestic laws with respect to the shipment and importation of any goods or Collateral, except where noncompliance could not reasonably be expected to have a Material Adverse Effect.

       8.1.12    <u>Compliance with Laws</u>.  Each of Borrower and Subsidiaries has duly complied, and its Properties and business operations are in compliance, in all material respects

with all Applicable Law, except where noncompliance could not reasonably be expected to have a Material Adverse Effect. There have been no citations, notices or orders of material noncompliance issued to Borrower or any Subsidiary under any Applicable Law. No Inventory has been produced in violation of the FLSA.

8.1.13    Compliance with Environmental Laws. Except as disclosed on **Schedule 8.1.13**, no Borrower's or Subsidiary's past or present operations, Real Estate or other Properties are subject to any federal, state or local investigation to determine whether any remedial action is needed to address any environmental pollution, hazardous material or environmental clean-up. Neither Borrower nor any Subsidiary has received any Environmental Notice. Neither Borrower nor any Subsidiary has any contingent liability with respect to any Environmental Release, environmental pollution or hazardous material on any Real Estate now or previously owned, leased or operated by it.

8.1.14    Burdensome Contracts. Neither Borrower nor any Subsidiary is a party or subject to any contract, agreement or charter restriction that could reasonably be expected to have a Material Adverse Effect. Neither Borrower nor any Subsidiary is party or subject to any Restrictive Agreement, except as shown on **Schedule 8.1.14**. No such Restrictive Agreement prohibits the execution, delivery or performance of any Loan Document by Borrower.

8.1.15    Litigation. Except as shown on **Schedule 8.1.15**, there are no proceedings or investigations pending or, to Borrower's knowledge, threatened against Borrower or any Subsidiary, or any of their businesses, operations, Properties, prospects or conditions, that (a) relate to any Loan Documents or transactions contemplated thereby; or (b) could reasonably be expected to have a Material Adverse Effect if determined adversely to Borrower or any Subsidiary. Except as shown on such Schedule, Borrower does not have any Commercial Tort Claim (other than, as long as no Default or Event of Default exists, a Commercial Tort Claim for less than $100,000). Neither Borrower nor any Subsidiary is in default with respect to any order, injunction or judgment of any Governmental Authority.

8.1.16    No Defaults. No event or circumstance has occurred or exists that constitutes a Default or Event of Default. Neither Borrower nor any Subsidiary is in default, and no event or circumstance has occurred or exists that with the passage of time or giving of notice would constitute a default, under any Material Contract or in the payment of any Borrowed Money. There is no basis upon which any party (other than Borrower or a Subsidiary) could terminate a Material Contract prior to its scheduled termination date.

8.1.17    ERISA. Except as disclosed on **Schedule 8.1.17**:

(a)    Each Plan is in compliance in all material respects with the applicable provisions of ERISA, the Code, and other federal and state laws. Each Plan that is intended to qualify under Section 401(a) of the Code has received a favorable determination letter from the IRS or an application for such a letter is currently being processed by the IRS with respect thereto and, to the knowledge of Borrower, nothing has occurred which would prevent, or cause the loss of, such qualification. Each of Borrower and ERISA Affiliate has made all required contributions to each Plan subject to Section 412 of the Code, and no application for a funding

-43-