waiver or an extension of any amortization period pursuant to Section 412 of the Code has been made with respect to any Plan.

(b)     There are no pending or, to the knowledge of Borrower, threatened claims, actions or lawsuits, or action by any Governmental Authority, with respect to any Plan that could reasonably be expected to have a Material Adverse Effect.  There has been no prohibited transaction or violation of the fiduciary responsibility rules with respect to any Plan that has resulted in or could reasonably be expected to have a Material Adverse Effect.

(c)     (i) No ERISA Event has occurred or is reasonably expected to occur; (ii) no Pension Plan has any Unfunded Pension Liability; (iii) neither Borrower nor any ERISA Affiliate has incurred, or reasonably expects to incur, any liability under Title IV of ERISA with respect to any Pension Plan (other than premiums due and not delinquent under Section 4007 of ERISA); (iv) neither Borrower nor any ERISA Affiliate has incurred, or reasonably expects to incur, any liability (and no event has occurred which, with the giving of notice under Section 4219 of ERISA, would result in such liability) under Section 4201 or 4243 of ERISA with respect to a Multiemployer Plan; and (v) neither Borrower nor any ERISA Affiliate has engaged in a transaction that could be subject to Section 4069 or 4212(c) of ERISA.

(d)     With respect to any Foreign Plan, (i) all employer and employee contributions required by law or by the terms of the Foreign Plan have been made, or, if applicable, accrued, in accordance with normal accounting practices; (ii) the fair market value of the assets of each funded Foreign Plan, the liability of each insurer for any Foreign Plan funded through insurance, or the book reserve established for any Foreign Plan, together with any accrued contributions, is sufficient to procure or provide for the accrued benefit obligations with respect to all current and former participants in such Foreign Plan according to the actuarial assumptions and valuations most recently used to account for such obligations in accordance with applicable generally accepted accounting principles; and (iii) it has been registered as required and has been maintained in good standing with applicable regulatory authorities.

8.1.18     <u>Trade Relations</u>.  There exists no actual or threatened termination, limitation or modification of any business relationship between Borrower or any Subsidiary and any customer or supplier, or any group of customers or suppliers, who individually or in the aggregate are material to the business of Borrower or Subsidiary.  There exists no condition or circumstance that could reasonably be expected to impair the ability of Borrower or any Subsidiary to conduct its business at any time hereafter in substantially the same manner as conducted on the Closing Date.

8.1.19     <u>Labor Relations</u>.  Except as described on **Schedule 8.1.19**, neither Borrower nor any Subsidiary is party to or bound by any collective bargaining agreement, management agreement or consulting agreement.  There are no material grievances, disputes or controversies with any union or other organization of Borrower's or any Subsidiary's employees, or, to Borrower's knowledge, any asserted or threatened strikes, work stoppages or demands for collective bargaining.

8.1.20     <u>Not a Regulated Entity</u>.  Borrower is not (a) an "investment company" or a "person directly or indirectly controlled by or acting on behalf of an investment company"

within the meaning of the Investment Company Act of 1940; or (b) subject to regulation under the Federal Power Act, the Interstate Commerce Act, any public utilities code or any other Applicable Law regarding its authority to incur Debt.

8.1.21    <u>Margin Stock</u>.  Neither Borrower nor any Subsidiary is engaged, principally or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying any Margin Stock.  No Loan proceeds will be used by Borrower to purchase or carry, or to reduce or refinance any Debt incurred to purchase or carry, any Margin Stock or for any related purpose governed by Regulation T, U or X of the Board of Governors.

8.1.22    <u>Servicing Accounts</u>.    **Schedule 8.1.22** sets forth all Servicing Accounts.

**8.2    Complete Disclosure**.  No Loan Document contains any untrue statement of a material fact, nor fails to disclose any material fact necessary to make the statements contained therein not materially misleading.  There is no fact or circumstance that Borrower has failed to disclose to Agent in writing that could reasonably be expected to have a Material Adverse Effect.

## SECTION 9.        COVENANTS AND CONTINUING AGREEMENTS

**9.1    Affirmative Covenants**.  As long as any Obligations are outstanding, Borrower shall, and shall cause each Subsidiary to:

9.1.1    <u>Inspections; Appraisals</u>.

(a)    Permit Agent from time to time, subject (except when a Default or Event of Default exists) to reasonable notice and normal business hours, to visit and inspect the Properties of Borrower or any Subsidiary, inspect, audit and make extracts from Borrower's or any Subsidiary's books and records, and discuss with its officers, employees, agents, advisors and independent accountants Borrower's or such Subsidiary's business, financial condition, assets, prospects and results of operations.  Lenders may participate in any such visit or inspection, at their own expense.  Neither Agent nor any Lender shall have any duty to Borrower to make any inspection, nor to share any results of any inspection, appraisal or report with Borrower.  Borrower acknowledges that all inspections, appraisals and reports are prepared by Agent and Lenders for their purposes, and Borrower shall not be entitled to rely upon them.

(b)    Reimburse Agent for all charges, costs and expenses of Agent in connection with examinations of Borrower's books and records or any other financial or Collateral matters as Agent deems appropriate, up to four times per Loan Year, if Borrower's Monthly LTV Ratio is greater than or equal to 100%, and up to three times per Loan Year, if Borrower's Monthly LTV Ratio is less than 100%; <u>provided</u>, <u>however</u>, that if an examination or appraisal is initiated during a Default or Event of Default, all charges, costs and expenses therefor shall be reimbursed by Borrower without regard to such limits.  Subject to and without limiting the foregoing, Borrower specifically agrees to pay Agent's then standard charges for each day that an employee of Agent or its Affiliates is engaged in any examination activities, and shall pay the standard charges of Agent's internal appraisal group.  This Section shall not be construed to limit Agent's right to conduct examinations or to obtain appraisals at any time in its discretion, nor to use third parties for such purposes.

9.1.2    <u>Financial and Other Information</u>.  Keep adequate records and books of account with respect to its business activities, in which proper entries are made in accordance with GAAP reflecting all financial transactions and furnish to Agent and Lenders:

(a)    as soon as available, and in any event within 90 days after the close of each Fiscal Year, balance sheets as of the end of such Fiscal Year and the related statements of income, cash flow and shareholders' equity for such Fiscal Year, on consolidated and consolidating bases for Borrower and Subsidiaries, which consolidated statements shall be audited and certified (without qualification) by a firm of independent certified public accountants of recognized standing selected by Borrower and acceptable to Agent, and shall set forth in comparative form corresponding figures for the preceding Fiscal Year and other information acceptable to Agent;

(b)    as soon as available, and in any event within 30 days after the end of each month (but within 60 days after the last month in a Fiscal Year), unaudited balance sheets as of the end of such month and the related statements of income and cash flow for such month and for the portion of the Fiscal Year then elapsed, on consolidated and consolidating bases for Borrower and Subsidiaries, setting forth in comparative form corresponding figures for the preceding Fiscal Year and certified by the chief financial officer of Borrower as prepared in accordance with GAAP and fairly presenting the financial position and results of operations for such month and period, subject to normal year-end adjustments and the absence of footnotes;

(c)    concurrently with delivery of financial statements under <u>clauses (a)</u> and <u>(b)</u> above, or more frequently if requested by Agent while a Default or Event of Default exists, a Compliance Certificate executed by the chief financial officer of Borrower;

(d)    concurrently with delivery of financial statements under <u>clause (a)</u> above, copies of all management letters and other material reports submitted to Borrower by its accountants in connection with such financial statements;

(e)    not later than 30 days prior to the end of each Fiscal Year, projections of Borrower's consolidated balance sheets, results of operations and cash flow for the next Fiscal Year, month by month;

(f)    at Agent's request, a listing of Borrower's trade payables, specifying the trade creditor and balance due, and a detailed trade payable aging, all in form satisfactory to Agent;

(g)    promptly after the sending or filing thereof, copies of any proxy statements, financial statements or reports that Borrower has made generally available to its shareholders; copies of any regular, periodic and special reports or registration statements or prospectuses that Borrower files with the Securities and Exchange Commission or any other Governmental Authority, or any securities exchange; and copies of any press releases or other statements made available by Borrower to the public concerning material changes to or developments in the business of Borrower;

(h)    promptly after the sending or filing thereof, copies of any annual report to be filed in connection with each Plan or Foreign Plan; and

-46-

(i)        such other reports and information (financial or otherwise) as Agent may request from time to time in connection with any Collateral or Borrower's or any Subsidiary's financial condition or business.

Simultaneously with retaining accountants for its annual audit, Borrower shall send a letter to the accountants, with a copy to Agent and Lenders, notifying the accountants that one of the primary purposes for retaining their services and obtaining audited financial statements is for use by Agent and Lenders.  Agent is authorized to send such notice if Borrower fails to do so for any reason.

9.1.3    <u>Notices</u>.    Notify Agent and Lenders in writing, promptly after Borrower's obtaining knowledge thereof, of any of the following that affects Borrower:  (a) the threat or commencement of any proceeding or investigation, whether or not covered by insurance, if an adverse determination could have a Material Adverse Effect; (b) any pending or threatened labor dispute, strike or walkout, or the expiration of any material labor contract; (c) any default under or termination of a Material Contract; (d) the existence of any Default or Event of Default; (e) any judgment in an amount exceeding $100,000; (f) the assertion of any Intellectual Property Claim, if an adverse resolution could have a Material Adverse Effect; (g) any violation or asserted violation of any Applicable Law (including ERISA, OSHA, FLSA, or any Environmental Laws), if an adverse resolution could have a Material Adverse Effect; (h) any Environmental Release by Borrower or on any Property owned, leased or occupied by Borrower; or receipt of any Environmental Notice; (i) the occurrence of any ERISA Event; (j) the discharge of or any withdrawal or resignation by Borrower's independent accountants; (k) any opening of a new office or place of business, at least 30 days prior to such opening; or (l) any opening or closing of a Servicing Account, within five Business Days of such opening or closing.

9.1.4    <u>Landlord and Storage Agreements</u>.    Upon request, provide Agent with copies of all existing agreements, and promptly after execution thereof provide Agent with copies of all future agreements, between an Borrower and any landlord, warehouseman, processor, shipper, bailee or other Person that owns any premises at which any Collateral may be kept or that otherwise may possess or handle any Collateral.

9.1.5    <u>Compliance with Laws</u>.    Comply with all Applicable Laws, including ERISA, Environmental Laws, FLSA, OSHA, Anti-Terrorism Laws, and laws regarding collection and payment of Taxes, and maintain all Governmental Approvals necessary to the ownership of its Properties or conduct of its business, unless failure to comply (other than failure to comply with Anti-Terrorism Laws) or maintain could not reasonably be expected to have a Material Adverse Effect.  Without limiting the generality of the foregoing, if any Environmental Release occurs at or on any Properties of Borrower or any Subsidiary, it shall act promptly and diligently to investigate and report to Agent and all appropriate Governmental Authorities the extent of, and to make appropriate remedial action to eliminate, such Environmental Release, whether or not directed to do so by any Governmental Authority.

9.1.6    <u>Taxes</u>.    Pay and discharge all Taxes prior to the date on which they become delinquent or penalties attach, unless such Taxes are being Properly Contested.

9.1.7      <u>Insurance</u>.  In addition to the insurance required hereunder with respect to Collateral, maintain insurance with insurers (with a Best Rating of at least A7, unless otherwise approved by Agent) satisfactory to Agent, (a) with respect to the Properties and business of Borrower and Subsidiaries of such type (including product liability, workers' compensation, larceny, embezzlement, or other criminal misappropriation insurance), in such amounts, and with such coverages and deductibles as are customary for companies similarly situated; and (b) business interruption insurance in an amount not less than $[_____], with deductibles and subject to an Insurance Assignment satisfactory to Agent.

9.1.8      <u>Licenses</u>.  Keep each License affecting any Collateral or any other material Property of Borrower and Subsidiaries in full force and effect; promptly notify Agent of any proposed modification to any such License, or entry into any new License, in each case at least 30 days prior to its effective date; pay all Royalties when due; and notify Agent of any default or breach asserted by any Person to have occurred under any License.

**9.2**    <u>**Negative Covenants**</u>.  As long as any Obligations are outstanding, Borrower shall not, and shall cause each Subsidiary not to:

9.2.1      <u>Permitted Debt</u>.  Create, incur, guarantee or suffer to exist any Debt, except:

(a)     the Obligations;

(b)     Subordinated Debt in the principal amount of $[1,200,000][3] existing as of Plan Effectiveness and any other Subordinated Debt approved from time to time by Agent and Required Lenders;

(c)     Permitted Purchase Money Debt;

(d)     Bank Product Debt, as long as the aggregate mark-to-market obligations outstanding under Hedging Agreements do not exceed $150,000 at any time;

(e)     Permitted Contingent Obligations;

(f)     Debt consisting of trade payables incurred and being paid in the Ordinary Course of Business; and

(g)     Debt that is not included in any of the preceding clauses of this Section, is not secured by a Lien and does not exceed $100,000 in the aggregate at any time.

9.2.2      <u>Permitted Liens</u>.  Create or suffer to exist any Lien upon any of its Property, except the following (collectively, "<u>Permitted Liens</u>"):

(a)     Liens in favor of Agent;

(b)     Purchase Money Liens securing Permitted Purchase Money Debt;

---

[3] Borrower to confirm amount.

-48-

      (c)      Liens for Taxes not yet due or being Properly Contested;

      (d)      statutory Liens (other than Liens for Taxes or imposed under ERISA) arising in the Ordinary Course of Business, but only if (i) payment of the obligations secured thereby is not yet due or is being Properly Contested, and (ii) such Liens do not materially impair the value or use of the Property or materially impair operation of the business of Borrower or any Subsidiary;

      (e)      Liens incurred or deposits made in the Ordinary Course of Business to secure the performance of tenders, bids, leases, contracts (except those relating to Borrowed Money), statutory obligations and other similar obligations, or arising as a result of progress payments under government contracts, as long as such Liens are at all times junior to Agent's Liens;

      (f)      Liens arising in the Ordinary Course of Business that are subject to Lien Waivers;

      (g)      Liens arising by virtue of a judgment or judicial order against Borrower or any Subsidiary, or any Property of Borrower or a Subsidiary, as long as such Liens are (i) in existence for less than 20 consecutive days or being Properly Contested, and (ii) at all times junior to Agent's Liens;

      (h)      easements, rights-of-way, restrictions, covenants or other agreements of record, and other similar charges or encumbrances on Real Estate, that do not secure any monetary obligation and do not interfere with the Ordinary Course of Business;

      (i)      Liens incurred to secure Borrower's performance of Obligations arising from Bank Product Debt permitted under **Section 9.2.1(d)** on property with a fair market value not in excess of $150,000;

      (j)      normal and customary rights of setoff upon deposits in favor of depository institutions, and Liens of a collecting bank on Payment Items in the course of collection; and

      (k)      existing Liens shown on **Schedule 9.2.2**.

      9.2.3     <u>Distributions; Upstream Payments</u>.   Declare or make any Distributions, except Upstream Payments; or create or suffer to exist any encumbrance or restriction on the ability of a Subsidiary to make any Upstream Payment, except for restrictions under the Loan Documents, under Applicable Law or in effect on the Closing Date as shown on **Schedule 8.1.16**.

      9.2.4     <u>Subordinated Debt Standstill</u>.   Make any payments of interest or principal on the Subordinated Debt; <u>provided</u> that, so long as no Default or Event of Default exists or may be caused thereby, Borrower may make regularly scheduled payments of principal with respect to the Subordinated Debt in existence at Plan Effectiveness, which payment will not exceed $200,000 per Loan Year.

9.2.5     Origination of Consumer Credit Contracts.  In any month, purchase or otherwise acquire Consumer Credit Contracts (a) with a Value that is greater than 50% of Borrower's aggregate cash Collections for the immediately preceding month (the "Contract Originations Cap") or (b) when the aggregate amount of Borrower's Cash and Cash Equivalents is less than $1,000,000. If, during any month, the Value of the Borrower Consumer Credit Contracts purchased or otherwise acquired during such month is less than the Contract Originations Cap (such difference, an "Origination Shortfall"), Borrower shall be permitted to carry forward such Origination Shortfall for up to three months, provided that the Value of Borrower Consumer Credit Contracts during any month when Origination Shortfalls are utilized shall not exceed 75% of Borrower's aggregate cash Collections for the immediately preceding month.

9.2.6     Restricted Investments.  Make any Restricted Investment.

9.2.7     Disposition of Assets.  Make any Asset Disposition, except a Permitted Asset Disposition or a transfer of Property by a Subsidiary to Borrower.

9.2.8     Loans.  Make any loans or other advances of money to any Person, except (a) advances to an officer or employee for salary, travel expenses, commissions and similar items in the Ordinary Course of Business; (b) prepaid expenses and extensions of trade credit made in the Ordinary Course of Business; and (c) deposits with financial institutions permitted hereunder.

9.2.9     Restrictions on Payment of Certain Obligations.  Make any payments (whether voluntary or mandatory, or a prepayment, redemption, retirement, defeasance or acquisition) with respect to any (a) Subordinated Debt, except to the extent permitted (i) pursuant to **Section 9.2.4** hereof or (ii) under any Subordination Agreement relating to such Debt (and a Senior Officer of Borrower shall certify to Agent, not less than five Business Days prior to the date of payment, that all conditions under such agreement have been satisfied); (b) Borrowed Money (other than the Obligations) prior to its due date under the agreements evidencing such Debt as in effect on the Closing Date (or as amended thereafter with the consent of Agent); or (c) unsecured trade account payables existing prior to Plan Effectiveness in an aggregate amount in excess of $150,000 or otherwise in a manner inconsistent with the terms and condition set forth in [Sections __ and __] of the Plan of Reorganization.

9.2.10     Fundamental Changes.  Merge, combine or consolidate with any Person, or liquidate, wind up its affairs or dissolve itself, in each case whether in a single transaction or in a series of related transactions, except for mergers or consolidations of a wholly-owned Subsidiary with another wholly-owned Subsidiary or into Borrower; change its name or conduct business under any fictitious name; change its tax, charter or other organizational identification number; or change its form or state of organization; or acquire any interest in any Real Estate.

9.2.11     Subsidiaries.  Form or acquire any Subsidiary after the Closing Date.

9.2.12     Organic Documents.  Amend, modify or otherwise change any of its Organic Documents as in effect on the Closing Date.

-50-

9.2.13     <u>Tax Consolidation</u>.  File or consent to the filing of any consolidated income tax return with any Person other than Borrower and Subsidiaries.

9.2.14     <u>Accounting Changes</u>.   Make any material change in accounting treatment or reporting practices, except as required by GAAP and in accordance with **Section 1.2**; or change its Fiscal Year.

9.2.15     <u>Restrictive Agreements</u>.   Become a party to any Restrictive Agreement, except a Restrictive Agreement (a) in effect on the Closing Date; (b) relating to secured Debt permitted hereunder, as long as the restrictions apply only to collateral for such Debt; or (c) constituting customary restrictions on assignment in leases and other contracts.

9.2.16     <u>Hedging Agreements</u>.  Enter into any Hedging Agreement, except to hedge risks arising in the Ordinary Course of Business and not for speculative purposes.

9.2.17     <u>Conduct of Business</u>.  Engage in any business, other than its business as conducted on the Closing Date and any activities incidental thereto.

9.2.18     <u>Affiliate Transactions</u>.  Enter into or be party to any transaction with an Affiliate, except (a) transactions contemplated by the Loan Documents; (b) payment of reasonable compensation to officers and employees for services actually rendered, and loans and advances permitted by **Section 9.2.8**; (c) payment of customary directors' fees and indemnities; and (d) transactions with Affiliates in the Ordinary Course of Business, upon fair and reasonable terms fully disclosed to Agent and no less favorable than would be obtained in a comparable arm's-length transaction with a non-Affiliate.

9.2.19     <u>Plans</u>.  Become party to any Multiemployer Plan or Foreign Plan[, other than any in existence on the Closing Date].[4]

9.2.20     <u>Amendments to Subordinated Debt</u>.  Amend, supplement or otherwise modify any document, instrument or agreement relating to any Subordinated Debt, if such modification (a) increases the principal balance of such Debt, or increases any required payment of principal or interest; (b) accelerates the date on which any installment of principal or any interest is due, or adds any additional redemption, put or prepayment provisions; (c) shortens the final maturity date or otherwise accelerates amortization; (d) increases the interest rate; (e) increases or adds any fees or charges; (f) modifies any covenant in a manner or adds any representation, covenant or default that is more onerous or restrictive in any material respect for Borrower or any Subsidiary, or that is otherwise materially adverse to Borrower, any Subsidiary or Lenders; (g) with respect to the Subordinated Debt existing on Plan Effectiveness, is inconsistent with [Section __] of the Plan of Reorganization; or (h) results in the Obligations not constituting a "Senior Debt" under the applicable Subordinated Debt Documents, or otherwise not being fully benefited by the subordination provisions thereof.

**9.3**     **<u>Financial Covenants</u>**.  As long as any Obligations are outstanding, Borrower shall:

---

[4] Question: Are there any Plans in existence?

9.3.1     <u>Leverage Ratio</u>. Maintain a Leverage Ratio, determined at the end of each month, not greater than: **[**(a) 5.50:1.00 for any month during Loan Year 1, (b) 5.25:1.00 for any month during Loan Year 2, and (c) 5.00:1.00 for any month during Loan Year 3**]**.[5]

9.3.2     <u>Interest Coverage Ratio</u>. Maintain an Interest Coverage Ratio, determined at the end of each month and measured on a trailing twelve month basis, of at least 1.15:1.00.

9.3.3     <u>Monthly LTV Ratio</u>. Maintain, as of any LTV Ratio Test Date, for any month set forth below, a Monthly LTV Ratio that is less than the level indicated opposite such month set forth below:

| Loan Year 1 | | Loan Year 2 | | Loan Year 3 | |
|---|---|---|---|---|---|
| Month | LTV Ratio | Month | LTV Ratio | Month | LTV Ratio |
| January 2011 | 107% | January 2012 | 101% | | |
| February 2011 | 107% | February 2012 | 101% | | |
| March 2011 | 107% | March 2012 | 101% | | |
| April 2011 | 107% | April 2012 | 101% | | |
| May 2011 | 107% | May 2012 | 101% | | |
| June 2011 | 107% | June 2012 | 101% | Entire Loan Year 3 | |
| July 2011 | 104% | July 2012 | 96% | 96.0% | |
| August 2011 | 104% | August 2012 | 96% | | |
| September 2011 | 104% | September 2012 | 96% | | |
| October 2011 | 104% | October 2012 | 96% | | |
| November 2011 | 104% | November 2012 | 96% | | |
| December 2011 | 104% | December 2012 | 96% | | |

---

[5] These values are to be finalized after receipt of a pro-forma balance sheet reflecting Borrower's capital structure post Plan Effectiveness.

-52-

## SECTION 10.    EVENTS OF DEFAULT; REMEDIES ON DEFAULT

**10.1    Events of Default**.    Each of the following shall be an "Event of Default" hereunder, if the same shall occur for any reason whatsoever, whether voluntary or involuntary, by operation of law or otherwise:

(a)    Borrower fails to pay any Obligations when due (whether at stated maturity, on demand, upon acceleration or otherwise);

(b)    Any representation, warranty or other written statement of Borrower made in connection with any Loan Documents is incorrect or misleading in any material respect when given;

(c)    Borrower breaches or fails to perform any covenant contained in **Section 6.2, 6.3, 7.1, 7.4.2, 9.1.1, 9.1.2, 9.2 or 9.3**;

(d)    Borrower breaches or fails to perform any other covenant contained in any Loan Documents, and such breach or failure is not cured within 15 days after a Senior Officer of Borrower has knowledge thereof or receives notice thereof from Agent, whichever is sooner; provided, however, that such notice and opportunity to cure shall not apply if the breach or failure to perform is not capable of being cured within such period or is a willful breach by Borrower;

(e)    Borrower or any third party denies or contests the validity or enforceability of any Loan Documents or Obligations, or the perfection or priority of any Lien granted to Agent; or any Loan Document ceases to be in full force or effect for any reason (other than a waiver or release by Agent and Lenders);

(f)    Any breach or default of Borrower occurs under any document, instrument or agreement to which it is a party or by which it or any of its Properties is bound, relating to any Debt (other than the Obligations) in excess of $100,000, if the maturity of or any payment with respect to such Debt may be accelerated or demanded due to such breach;

(g)    Any judgment or order for the payment of money is entered against Borrower in an amount that exceeds, individually or cumulatively with all unsatisfied judgments or orders against Borrower, $100,000 (net of any insurance coverage therefor acknowledged in writing by the insurer), unless a stay of enforcement of such judgment or order is in effect, by reason of a pending appeal or otherwise;

(h)    A loss, theft, damage or destruction occurs with respect to any Collateral if the amount not covered by insurance exceeds $100,000;

(i)    Borrower is enjoined, restrained or in any way prevented by any Governmental Authority from conducting any material part of its business; Borrower suffers the loss, revocation or termination of any material license, permit, lease or agreement necessary to its business; there is a cessation of any material part of Borrower's business for a material period of time; any material Collateral or Property of Borrower is taken or impaired through

-53-

condemnation; Borrower agrees to or commences any liquidation, dissolution or winding up of its affairs; or Borrower is not Solvent;

(j)      An Insolvency Proceeding is commenced by Borrower; Borrower makes an offer of settlement, extension or composition to its unsecured creditors generally; a trustee is appointed to take possession of any substantial Property of or to operate any of the business of Borrower; or an Insolvency Proceeding is commenced against Borrower and:  Borrower consents to institution of the proceeding, the petition commencing the proceeding is not timely contested by Borrower, the petition is not dismissed within 30 days after filing, or an order for relief is entered in the proceeding; it being understood that the Chapter 11 Cases shall not be an Event of Default;

(k)      An ERISA Event occurs with respect to a Pension Plan or Multiemployer Plan that has resulted or could reasonably be expected to result in liability of Borrower to a Pension Plan, Multiemployer Plan or PBGC, or that constitutes grounds for appointment of a trustee for or termination by the PBGC of any Pension Plan or Multiemployer Plan; Borrower or an ERISA Affiliate fails to pay when due any installment payment with respect to its withdrawal liability under Section 4201 of ERISA under a Multiemployer Plan; or any event similar to the foregoing occurs or exists with respect to a Foreign Plan;

(l)      Borrower or any of its Senior Officers is criminally indicted or convicted for (i) a felony committed in the conduct of Borrower's business, or (ii) violating any state or federal law (including the Controlled Substances Act, Money Laundering Control Act of 1986 and Illegal Exportation of War Materials Act) that could lead to forfeiture of any material Property or any Collateral; or

(m)     A Change of Control occurs; or any event occurs or condition exists that has a Material Adverse Effect.

**10.2**    **Remedies upon Default**.  If an Event of Default described in **Section 10.1(j)** occurs with respect to Borrower, then to the extent permitted by Applicable Law, all Obligations shall become automatically due and payable, without any action by Agent or notice of any kind. In addition, or if any other Event of Default exists, Agent may in its discretion (and shall upon written direction of Required Lenders) do any one or more of the following from time to time:

(a)      declare any Obligations immediately due and payable, whereupon they shall be due and payable without diligence, presentment, demand, protest or notice of any kind, all of which are hereby waived by Borrower to the fullest extent permitted by law;

(b)      require Borrower to Cash Collateralize Bank Product Debt and other Obligations that are contingent or not yet due and payable, and, if Borrower fails promptly to deposit such Cash Collateral, Agent may (and shall upon the direction of Required Lenders) advance the required Cash Collateral as Loans; and

(c)      exercise any other rights or remedies afforded under any agreement, by law, at equity or otherwise, including the rights and remedies of a secured party under the UCC. Such rights and remedies include the rights to (i) take possession of any Collateral; (ii) require Borrower to assemble Collateral, at Borrower's expense, and make it available to Agent at a

place designated by Agent; (iii) enter any premises where Collateral is located and store Collateral on such premises until sold (and if the premises are owned or leased by Borrower, Borrower agrees not to charge for such storage); and (iv) sell or otherwise dispose of any Collateral in its then condition, or after any further manufacturing or processing thereof, at public or private sale, with such notice as may be required by Applicable Law, in lots or in bulk, at such locations, all as Agent, in its discretion, deems advisable.  Borrower agrees that ten days notice of any proposed sale or other disposition of Collateral by Agent shall be reasonable.  Agent shall have the right to conduct such sales on Borrower's premises, without charge, and such sales may be adjourned from time to time in accordance with Applicable Law.  Agent shall have the right to sell, lease or otherwise dispose of any Collateral for cash, credit or any combination thereof, and Agent may purchase any Collateral at public or, if permitted by law, private sale and, in lieu of actual payment of the purchase price, may set off the amount of such price against the Obligations.

**10.3   License**.  Agent is hereby granted an irrevocable, non-exclusive license or other right to use, license or sub-license (without payment of royalty or other compensation to any Person) any or all Intellectual Property of Borrower, computer hardware and software, trade secrets, brochures, customer lists, promotional and advertising materials, labels, packaging materials and other Property, in advertising for sale, marketing, selling, collecting, completing manufacture of, or otherwise exercising any rights or remedies with respect to, any Collateral.  Borrower's rights and interests under Intellectual Property shall inure to Agent's benefit.

**10.4   Setoff**.  At any time during an Event of Default, Agent, Lenders, and any of their Affiliates are authorized, to the fullest extent permitted by Applicable Law, to set off and apply any and all deposits (general or special, time or demand, provisional or final, in whatever currency) at any time held and other obligations (in whatever currency) at any time owing by Agent, such Lender or such Affiliate to or for the credit or the account of Borrower against any Obligations, irrespective of whether or not Agent, such Lender or such Affiliate shall have made any demand under this Agreement or any other Loan Document and although such Obligations may be contingent or unmatured or are owed to a branch or office of Agent, such Lender or such Affiliate different from the branch or office holding such deposit or obligated on such indebtedness.  The rights of Agent, each Lender and each such Affiliate under this Section are in addition to other rights and remedies (including other rights of setoff) that such Person may have.

**10.5   Remedies Cumulative; No Waiver**.

10.5.1   **Cumulative Rights**.   All agreements, warranties, guaranties, indemnities and other undertakings of Borrower under the Loan Documents are cumulative and not in derogation of each other.  The rights and remedies of Agent and Lenders are cumulative, may be exercised at any time and from time to time, concurrently or in any order, and are not exclusive of any other rights or remedies available by agreement, by law, at equity or otherwise.  All such rights and remedies shall continue in full force and effect until Full Payment of all Obligations.

10.5.2   **Waivers**.  No waiver or course of dealing shall be established by (a) the failure or delay of Agent or any Lender to require strict performance by Borrower with any terms of the Loan Documents, or to exercise any rights or remedies with respect to Collateral or

otherwise; (b) the making of any Loan during a Default, Event of Default or other failure to satisfy any conditions precedent; or (c) acceptance by Agent or any Lender of any payment or performance by Borrower under any Loan Documents in a manner other than that specified therein. It is expressly acknowledged by Borrower that any failure to satisfy a financial covenant on a measurement date shall not be cured or remedied by satisfaction of such covenant on a subsequent date.

## SECTION 11.    AGENT

### 11.1    <u>Appointment, Authority and Duties of Agent</u>.

11.1.1    <u>Appointment and Authority</u>.  Each Lender appoints and designates Bank of America as Agent hereunder.  Agent may, and each Lender authorizes Agent to, enter into all Loan Documents to which Agent is intended to be a party and accept all Security Documents, for Agent's benefit and the Pro Rata benefit of Lenders.  Each Lender agrees that any action taken by Agent or Required Lenders in accordance with the provisions of the Loan Documents, and the exercise by Agent or Required Lenders of any rights or remedies set forth therein, together with all other powers reasonably incidental thereto, shall be authorized by and binding upon all Lenders.  Without limiting the generality of the foregoing, Agent shall have the sole and exclusive authority to (a) act as the disbursing and collecting agent for Lenders with respect to all payments and collections arising in connection with the Loan Documents; (b) execute and deliver as Agent each Loan Document, including any intercreditor or subordination agreement, and accept delivery of each Loan Document from Borrower or any other Person; (c) act as collateral agent for Secured Parties for purposes of perfecting and administering Liens under the Loan Documents, and for all other purposes stated therein; (d) manage, supervise or otherwise deal with Collateral; and (e) take any Enforcement Action or otherwise exercise any rights or remedies with respect to any Collateral under the Loan Documents, Applicable Law or otherwise.  The duties of Agent shall be ministerial and administrative in nature, and Agent shall not have a fiduciary relationship with any Lender, Secured Party, Participant or other Person, by reason of any Loan Document or any transaction relating thereto.  Agent alone shall be authorized to determine whether any Accounts constitute Eligible Accounts, or whether to impose or release any reserve, which determinations and judgments, if exercised in good faith, shall exonerate Agent from liability to any Lender or other Person for any error in judgment.

11.1.2    <u>Duties</u>.  Agent shall not have any duties except those expressly set forth in the Loan Documents.  The conferral upon Agent of any right shall not imply a duty on Agent's part to exercise such right, unless instructed to do so by Required Lenders in accordance with this Agreement.

11.1.3    <u>Agent Professionals</u>.  Agent may perform its duties through agents and employees.  Agent may consult with and employ Agent Professionals, and shall be entitled to act upon, and shall be fully protected in any action taken in good faith reliance upon, any advice given by an Agent Professional.  Agent shall not be responsible for the negligence or misconduct of any agents, employees or Agent Professionals selected by it with reasonable care.

11.1.4    <u>Instructions of Required Lenders</u>.  The rights and remedies conferred upon Agent under the Loan Documents may be exercised without the necessity of joinder of any

-56-

other party, unless required by Applicable Law. Agent may request instructions from Required Lenders with respect to any act (including the failure to act) in connection with any Loan Documents, and may seek assurances to its satisfaction from Lenders of their indemnification obligations under **Section 11.6** against all Claims that could be incurred by Agent in connection with any act. Agent shall be entitled to refrain from any act until it has received such instructions or assurances, and Agent shall not incur liability to any Person by reason of so refraining. Instructions of Required Lenders shall be binding upon all Lenders, and no Lender shall have any right of action whatsoever against Agent as a result of Agent acting or refraining from acting in accordance with the instructions of Required Lenders. Notwithstanding the foregoing, instructions by and consent of all Lenders shall be required in the circumstances described in **Section 13.1.1(c)**, and in no event shall Required Lenders, without the prior written consent of each Lender, direct Agent to accelerate and demand payment of Loans held by one Lender without accelerating and demanding payment of all other Loans. In no event shall Agent be required to take any action that, in its opinion, is contrary to Applicable Law or any Loan Documents or could subject any Agent Indemnitee to personal liability.

**11.2     Agreements Regarding Collateral and Field Examination Reports**.

        11.2.1     <u>Lien Releases; Care of Collateral</u>. Lenders authorize Agent to release any Lien with respect to any Collateral (a) upon Full Payment of the Obligations; (b) that is the subject of an Asset Disposition which Borrower certifies in writing to Agent is a Permitted Asset Disposition or a Lien which Borrower certifies in writing is a Permitted Lien entitled to priority over Agent's Liens (and Agent may rely conclusively on any such certificate without further inquiry); (c) that does not constitute a material part of the Collateral; or (d) with the written consent of all Lenders. Lenders authorize Agent to subordinate its Liens to any Purchase Money Lien permitted hereunder. Agent shall have no obligation to assure that any Collateral exists or is owned by Borrower, or is cared for, protected or insured, nor to assure that Agent's Liens have been properly created, perfected or enforced, or are entitled to any particular priority, nor to exercise any duty of care with respect to any Collateral.

        11.2.2     <u>Possession of Collateral</u>. Agent and Lenders appoint each Lender as agent (for the benefit of Secured Parties) for the purpose of perfecting Liens in any Collateral held or controlled by such Lender, to the extent such Liens are perfected by possession or control. If any Lender obtains possession or control of any Collateral, it shall notify Agent thereof and, promptly upon Agent's request, deliver such Collateral to Agent or otherwise deal with it in accordance with Agent's instructions.

        11.2.3     <u>Reports</u>. Agent shall promptly forward to each Lender, when complete, copies of any field audit, examination or appraisal report prepared by or for Agent with respect to Borrower or Collateral ("Report"). Each Lender agrees (a) that neither Bank of America nor Agent makes any representation or warranty as to the accuracy or completeness of any Report, and shall not be liable for any information contained in or omitted from any Report; (b) that the Reports are not intended to be comprehensive audits or examinations, and that Agent or any other Person performing any audit or examination will inspect only specific information regarding Obligations or the Collateral and will rely significantly upon Borrower's books and records as well as upon representations of Borrower's officers and employees; and (c) to keep all Reports confidential and strictly for such Lender's internal use, and not to distribute any Report

(or the contents thereof) to any Person (except to such Lender's Participants, attorneys and accountants) or use any Report in any manner other than administration of the Loans and other Obligations. Each Lender agrees to indemnify and hold harmless Agent and any other Person preparing a Report from any action such Lender may take as a result of or any conclusion it may draw from any Report, as well as from any Claims arising as a direct or indirect result of Agent furnishing a Report to such Lender.

**11.3    Reliance By Agent**. Agent shall be entitled to rely, and shall be fully protected in relying, upon any certification, notice or other communication (including those by telephone, telex, telegram, telecopy or e-mail) believed by it to be genuine and correct and to have been signed, sent or made by the proper Person, and upon the advice and statements of Agent Professionals.

**11.4    Action Upon Default**. Agent shall not be deemed to have knowledge of any Default or Event of Default unless it has received written notice from a Lender or Borrower specifying the occurrence and nature thereof. If any Lender acquires knowledge of a Default or Event of Default, it shall promptly notify Agent and the other Lenders thereof in writing. Each Lender agrees that, except as otherwise provided in any Loan Documents or with the written consent of Agent and Required Lenders, it will not take any Enforcement Action, accelerate Obligations under any Loan Documents, or exercise any right that it might otherwise have under Applicable Law to credit bid at foreclosure sales, UCC sales or other similar dispositions of Collateral. Notwithstanding the foregoing, however, a Lender may take action to preserve or enforce its rights against Borrower where a deadline or limitation period is applicable that would, absent such action, bar recovery of Obligations held by such Lender, including the filing of proofs of claim in an Insolvency Proceeding.

**11.5    Ratable Sharing**. If any Lender shall obtain any payment or reduction of any Obligation, whether through set-off or otherwise, in excess of its share of such Obligation, determined on a Pro Rata basis or in accordance with **Section 4.5.1**, as applicable, such Lender shall forthwith purchase from Agent and the other Lenders such participations in the affected Obligation as are necessary to cause the purchasing Lender to share the excess payment or reduction on a Pro Rata basis or in accordance with **Section 4.5.1**, as applicable. If any of such payment or reduction is thereafter recovered from the purchasing Lender, the purchase shall be rescinded and the purchase price restored to the extent of such recovery, but without interest. No Lender shall set off against any Deposit Account without the prior consent of Agent.

**11.6    Indemnification of Agent Indemnitees**. EACH LENDER SHALL INDEMNIFY AND HOLD HARMLESS AGENT INDEMNITEES, TO THE EXTENT NOT REIMBURSED BY BORROWER (BUT WITHOUT LIMITING THE INDEMNIFICATION OBLIGATIONS OF BORROWER UNDER ANY LOAN DOCUMENT, ON A PRO RATA BASIS, AGAINST ALL CLAIMS THAT MAY BE INCURRED BY OR ASSERTED AGAINST ANY AGENT INDEMNITEE, PROVIDED THE CLAIM RELATES TO OR ARISES FROM AN AGENT INDEMNITEE ACTING AS OR FOR AGENT (IN ITS CAPACITY AS AGENT). In Agent's discretion, it may reserve for any such Claims made against an Agent Indemnitee, and may satisfy any judgment, order or settlement relating thereto, from proceeds of Collateral prior to making any distribution of Collateral proceeds to Lenders. If Agent is sued by any receiver, bankruptcy trustee, debtor-in-possession or other Person for any

alleged preference or fraudulent transfer, then any monies paid by Agent in settlement or satisfaction of such proceeding, together with all interest, costs and expenses (including attorneys' fees) incurred in the defense of same, shall be promptly reimbursed to Agent by each Lender to the extent of its Pro Rata share.

**11.7    Limitation on Responsibilities of Agent**.  Agent shall not be liable to Lenders for any action taken or omitted to be taken under the Loan Documents, except for losses directly and solely caused by Agent's gross negligence or willful misconduct.  Agent does not assume any responsibility for any failure or delay in performance or any breach by Borrower or Lender of any obligations under the Loan Documents.  Agent does not make to Lenders any express or implied warranty, representation or guarantee with respect to any Obligations, Collateral, Loan Documents or Borrower.  No Agent Indemnitee shall be responsible to Lenders for any recitals, statements, information, representations or warranties contained in any Loan Documents; the execution, validity, genuineness, effectiveness or enforceability of any Loan Documents; the genuineness, enforceability, collectibility, value, sufficiency, location or existence of any Collateral, or the validity, extent, perfection or priority of any Lien therein; the validity, enforceability or collectibility of any Obligations; or the assets, liabilities, financial condition, results of operations, business, creditworthiness or legal status of Borrower or any Account Debtor.  No Agent Indemnitee shall have any obligation to any Lender to ascertain or inquire into the existence of any Default or Event of Default, the observance or performance by Borrower of any terms of the Loan Documents, or the satisfaction of any conditions precedent contained in any Loan Documents.

**11.8    Successor Agent and Co-Agents**.

11.8.1    Resignation; Successor Agent.    Subject to the appointment and acceptance of a successor Agent as provided below, Agent may resign at any time by giving at least 30 days' written notice thereof to Lenders and Borrower.  Upon receipt of such notice, Required Lenders shall have the right to appoint a successor Agent which shall be (a) a Lender or an Affiliate of a Lender; or (b) a commercial bank that is organized under the laws of the United States or any state or district thereof, has a combined capital surplus of at least $200,000,000.  If no successor agent is appointed prior to the effective date of the resignation of Agent, then Agent may appoint a successor agent from among Lenders.  Upon acceptance by a successor Agent of an appointment to serve as Agent hereunder, such successor Agent shall thereupon succeed to and become vested with all the powers and duties of the retiring Agent without further act, and the retiring Agent shall be discharged from its duties and obligations hereunder but shall continue to have the benefits of the indemnification set forth in **Sections 11.6 and 13.2**.  Notwithstanding any Agent's resignation, the provisions of this **Section 11** shall continue in effect for its benefit with respect to any actions taken or omitted to be taken by it while Agent.  Any successor to Bank of America by merger or acquisition of stock shall continue to be Agent hereunder without further act on the part of the parties hereto, unless such successor resigns as provided above.

11.8.2    Separate Collateral Agent.    It is the intent of the parties that there shall be no violation of any Applicable Law denying or restricting the right of financial institutions to transact business in any jurisdiction.  If Agent believes that it may be limited in the exercise of any rights or remedies under the Loan Documents due to any Applicable Law, Agent may

appoint an additional Person who is not so limited, as a separate collateral agent or co-collateral agent. If Agent so appoints a collateral agent or co-collateral agent, each right and remedy intended to be available to Agent under the Loan Documents shall also be vested in such separate agent. Every covenant and obligation necessary to the exercise thereof by such agent shall run to and be enforceable by it as well as Agent. Lenders shall execute and deliver such documents as Agent deems appropriate to vest any rights or remedies in such agent. If any collateral agent or co-collateral agent shall die or dissolve, become incapable of acting, resign or be removed, then all the rights and remedies of such agent, to the extent permitted by Applicable Law, shall vest in and be exercised by Agent until appointment of a new agent.

**11.9    Due Diligence and Non-Reliance**. Each Lender acknowledges and agrees that it has, independently and without reliance upon Agent or any other Lenders, and based upon such documents, information and analyses as it has deemed appropriate, made its own credit analysis of Borrower and its own decision to enter into this Agreement and. Each Lender has made such inquiries concerning the Loan Documents, the Collateral and Borrower as such Lender feels necessary. Each Lender further acknowledges and agrees that the other Lenders and Agent have made no representations or warranties concerning Borrower, any Collateral or the legality, validity, sufficiency or enforceability of any Loan Documents or Obligations. Each Lender will, independently and without reliance upon the other Lenders or Agent, and based upon such financial statements, documents and information as it deems appropriate at the time, continue to make and rely upon its own credit decisions in taking or refraining from any action under any Loan Documents. Except for notices, reports and other information expressly requested by a Lender, Agent shall have no duty or responsibility to provide any Lender with any notices, reports or certificates furnished to Agent by Borrower or any credit or other information concerning the affairs, financial condition, business or Properties of Borrower (or any of its Affiliates) which may come into possession of Agent or any of Agent's Affiliates.

**11.10    Replacement of Certain Lenders**. If a Lender fails to give its consent to any amendment, waiver or action for which consent of all Lenders was required and Required Lenders consented, then, in addition to any other rights and remedies that any Person may have, Agent may, by notice to such Lender within 120 days after such event, require such Lender to assign all of its rights and obligations under the Loan Documents to Eligible Assignee(s) specified by Agent, pursuant to appropriate Assignment and Acceptance(s) and within 20 days after Agent's notice. Agent is irrevocably appointed as attorney-in-fact to execute any such Assignment and Acceptance if the Lender fails to execute same. Such Lender shall be entitled to receive, in cash, concurrently with such assignment, all amounts owed to it under the Loan Documents, including all principal, interest and fees through the date of assignment (but excluding any prepayment charge).

**11.11    Remittance of Payments and Collections**.

11.11.1    Remittances Generally. All payments by any Lender to Agent shall be made by the time and on the day set forth in this Agreement, in immediately available funds. If no time for payment is specified or if payment is due on demand by Agent and request for payment is made by Agent by 11:00 a.m. on a Business Day, payment shall be made by Lender not later than 2:00 p.m. on such day, and if request is made after 11:00 a.m., then payment shall be made by 11:00 a.m. on the next Business Day. Payment by Agent to any Lender shall be

made by wire transfer, in the type of funds received by Agent. Any such payment shall be subject to Agent's right of offset for any amounts due from such Lender under the Loan Documents.

11.11.2   <u>Failure to Pay</u>. If any Lender fails to pay any amount when due by it to Agent pursuant to the terms hereof, such amount shall bear interest from the due date until paid at the rate determined by Agent as customary in the banking industry for interbank compensation. In no event shall Borrower be entitled to receive credit for any interest paid by a Lender to Agent.

11.11.3   <u>Recovery of Payments</u>. If Agent pays any amount to a Lender in the expectation that a related payment will be received by Agent from Borrower and such related payment is not received, then Agent may recover such amount from each Lender that received it. If Agent determines at any time that an amount received under any Loan Document must be returned to Borrower or paid to any other Person pursuant to Applicable Law or otherwise, then, notwithstanding any other term of any Loan Document, Agent shall not be required to distribute such amount to any Lender. If any amounts received and applied by Agent to any Obligations are later required to be returned by Agent pursuant to Applicable Law, each Lender shall pay to Agent, **on demand**, such Lender's Pro Rata share of the amounts required to be returned.

**11.12   <u>Agent in Its Individual Capacity</u>**. As a Lender, Bank of America shall have the same rights and remedies under the other Loan Documents as any other Lender, and the terms "Lenders," "Required Lenders" or any similar term shall include Bank of America in its capacity as a Lender. Each of Bank of America and its Affiliates may accept deposits from, maintain deposits or credit balances for, invest in, lend money to, provide Bank Products to, act as trustee under indentures of, serve as financial or other advisor to, and generally engage in any kind of business with, Borrower and its Affiliates, as if Bank of America were any other bank, without any duty to account therefor (including any fees or other consideration received in connection therewith) to the other Lenders. In their individual capacity, Bank of America and its Affiliates may receive information regarding Borrower, its Affiliates and its Account Debtors (including information subject to confidentiality obligations), and each Lender agrees that Bank of America and its Affiliates shall be under no obligation to provide such information to Lenders, if acquired in such individual capacity and not as Agent hereunder.

**11.13   <u>Agent Titles</u>**. Each Lender, other than Bank of America, that is designated (on the cover page of this Agreement or otherwise) by Bank of America as an "Agent" or "Arranger" of any type shall not have any right, power, responsibility or duty under any Loan Documents other than those applicable to all Lenders, and shall in no event be deemed to have any fiduciary relationship with any other Lender.

**11.14   <u>No Third Party Beneficiaries</u>**. This **Section 11** is an agreement solely among Lenders and Agent, and shall survive Full Payment of the Obligations. This **Section 11** does not confer any rights or benefits upon Borrower or any other Person. As between Borrower and Agent, any action that Agent may take under any Loan Documents or with respect to any Obligations shall be conclusively presumed to have been authorized and directed by Lenders.

# SECTION 12.   BENEFIT OF AGREEMENT; ASSIGNMENTS AND PARTICIPATIONS

**12.1   Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of Borrower, Agent, Lenders, and their respective successors and assigns, except that (a) Borrower shall not have the right to assign its rights or delegate its obligations under any Loan Documents; and (b) any assignment by a Lender must be made in compliance with **Section 12.3**. Agent may treat the Person which made any Loan as the owner thereof for all purposes until such Person makes an assignment in accordance with **Section 12.3**.   Any authorization or consent of a Lender shall be conclusive and binding on any subsequent transferee or assignee of such Lender.

**12.2   Participations**.

**12.2.1   Permitted Participants; Effect**.   Any Lender may, in the ordinary course of its business and in accordance with Applicable Law, at any time sell to a financial institution or an Affiliate thereof ("Participant") a participating interest in the rights and obligations of such Lender under any Loan Documents.   Despite any sale by a Lender of participating interests to a Participant, such Lender's obligations under the Loan Documents shall remain unchanged, such Lender shall remain solely responsible to the other parties hereto for performance of such obligations, such Lender shall remain the holder of its Loans for all purposes, all amounts payable by Borrower shall be determined as if such Lender had not sold such participating interests, and Borrower and Agent shall continue to deal solely and directly with such Lender in connection with the Loan Documents.   Each Lender shall be solely responsible for notifying its Participants of any matters under the Loan Documents, and Agent and the other Lenders shall not have any obligation or liability to any such Participant.   A Participant that would be a Foreign Lender if it were a Lender shall not be entitled to the benefits of **Section 4.7** unless Borrower agrees otherwise in writing.

**12.2.2   Voting Rights**.   Each Lender shall retain the sole right to approve, without the consent of any Participant, any amendment, waiver or other modification of any Loan Documents other than that which forgives principal, interest or fees, reduces the stated interest rate or fees payable with respect to any Loan in which such Participant has an interest, postpones the date fixed for any regularly scheduled payment of principal, interest or fees on such Loan, or releases Borrower or any substantial portion of the Collateral.

**12.2.3   Benefit of Set-Off**.   Borrower agrees that each Participant shall have a right of set-off in respect of its participating interest to the same extent as if such interest were owing directly to a Lender, and each Lender shall also retain the right of set-off with respect to any participating interests sold by it.   By exercising any right of set-off, a Participant agrees to share with Lenders all amounts received through its set-off, in accordance with **Section 11.5** as if such Participant were a Lender.

**12.3   Assignments**.

**12.3.1   Permitted Assignments**.  A Lender may assign to an Eligible Assignee any of its rights and obligations under the Loan Documents, as long as (a) each assignment is of

a constant, and not a varying, percentage of the transferor Lender's rights and obligations under the Loan Documents and, in the case of a partial assignment, is in a minimum principal amount of $2,000,000 (unless otherwise agreed by Agent in its discretion) and integral multiples of $250,000 in excess of that amount; (b) except in the case of an assignment in whole of a Lender's rights and obligations, the aggregate amount of the Loans retained by the transferor Lender is at least $1,000,000 (unless otherwise agreed by Agent in its discretion); and (c) the parties to each such assignment shall execute and deliver to Agent, for its acceptance and recording, an Assignment and Acceptance. Nothing herein shall limit the right of a Lender to pledge or assign any rights under the Loan Documents to (i) any Federal Reserve Bank or the United States Treasury as collateral security pursuant to Regulation A of the Board of Governors and any Operating Circular issued by such Federal Reserve Bank, or (ii) counterparties to swap agreements relating to any Loans; provided, however, that any payment by Borrower to the assigning Lender in respect of any Obligations assigned as described in this sentence shall satisfy Borrower's obligations hereunder to the extent of such payment, and no such assignment shall release the assigning Lender from its obligations hereunder.

        12.3.2     Effect; Effective Date. Upon delivery to Agent of an assignment notice in the form of **Exhibit C** and a processing fee of $3,500 (unless otherwise agreed by Agent in its discretion), the assignment shall become effective as specified in the notice, if it complies with this **Section 12.3**. From such effective date, the Eligible Assignee shall for all purposes be a Lender under the Loan Documents, and shall have all rights and obligations of a Lender thereunder. Upon consummation of an assignment, the transferor Lender, Agent and Borrower shall make appropriate arrangements for issuance of replacement and/or new Notes, as applicable. The transferee Lender shall comply with **Section 4.8** and deliver, upon request, an administrative questionnaire satisfactory to Agent.

## SECTION 13.    MISCELLANEOUS

### 13.1    Consents, Amendments and Waivers.

        13.1.1     Amendment. No modification of any Loan Document, including any extension or amendment of a Loan Document or any waiver of a Default or Event of Default, shall be effective without the prior written agreement of Agent (with the consent of Required Lenders) and Borrower; provided, however, that:

        (a)     without the prior written consent of Agent, no modification shall be effective with respect to any provision in a Loan Document that relates to any rights, duties or discretion of Agent;

        (b)     without the prior written consent of each affected Lender, no modification shall be effective that would (i) increase the commitment of such Lender to make Loans hereunder; or (ii) reduce the amount of, or waive or delay payment of, any principal, interest or fees payable to such Lender; and

        (c)     without the prior written consent of all Lenders, no modification shall be effective that would (i) extend the Term Loan Maturity Date; (ii) alter **Section 4.5, 6.1** (except to add Collateral) or **13.1.1**; (iii) amend the definition of Total Collateral Value (or any defined

term used in such definition), Pro Rata or Required Lenders; (iv) increase any advance rate; (v) release Collateral with a book value greater than $1,000,000 during any calendar year, except as currently contemplated by the Loan Documents; or (vi) release Borrower from liability for any Obligations, if Borrower is Solvent at the time of the release.

13.1.2    Limitations.  The agreement of Borrower shall not be necessary to the effectiveness of any modification of a Loan Document that deals solely with the rights and duties of Lenders and Agent as among themselves.  Only the consent of the parties to the Fee Letter or any agreement relating to a Bank Product shall be required for any modification of such agreement, and any non-Lender that is party to a Bank Product agreement shall have no right to participate in any manner in modification of any other Loan Document.  Any waiver or consent granted by Agent or Lenders hereunder shall be effective only if in writing and only for the matter specified.

13.1.3    Payment for Consents.  Borrower will not, directly or indirectly, pay any remuneration or other thing of value, whether by way of additional interest, fee or otherwise, to any Lender (in its capacity as a Lender hereunder) as consideration for agreement by such Lender with any modification of any Loan Documents, unless such remuneration or value is concurrently paid, on the same terms, on a Pro Rata basis to all Lenders providing their consent.

**13.2    Indemnity**.  BORROWER SHALL INDEMNIFY AND HOLD HARMLESS THE INDEMNITEES AGAINST ANY CLAIMS THAT MAY BE INCURRED BY OR ASSERTED AGAINST ANY INDEMNITEE, INCLUDING CLAIMS ARISING FROM THE NEGLIGENCE OF AN INDEMNITEE.  In no event shall any party to a Loan Document have any obligation thereunder to indemnify or hold harmless an Indemnitee with respect to a Claim that is determined in a final, non-appealable judgment by a court of competent jurisdiction to result from the gross negligence or willful misconduct of such Indemnitee.

**13.3    Notices and Communications**.

13.3.1    Notice Address.  All notices and other communications by or to a party hereto shall be in writing and shall be given to Borrower, at Borrower's address shown on the signature pages hereof, and to any other Person at its address shown on the signature pages hereof (or, in the case of a Person who becomes a Lender after the Closing Date, at the address shown on its Assignment and Acceptance), or at such other address as a party may hereafter specify by notice in accordance with this **Section 13.3**.    Each such notice or other communication shall be effective only (a) if given by facsimile transmission, when transmitted to the applicable facsimile number, if confirmation of receipt is received; (b) if given by mail, three Business Days after deposit in the U.S. mail, with first-class postage pre-paid, addressed to the applicable address; or (c) if given by personal delivery, when duly delivered to the notice address with receipt acknowledged.  Notwithstanding the foregoing, no notice to Agent pursuant to **Section 4.2.3** shall be effective until actually received by the individual to whose attention at Agent such notice is required to be sent.  Any written notice or other communication that is not sent in conformity with the foregoing provisions shall nevertheless be effective on the date actually received by the noticed party.

       13.3.2      <u>Electronic Communications; Voice Mail</u>. Electronic mail and internet websites may be used only for routine communications, such as financial statements, Total Loan Value Certificates and other information required by **Section 9.1.2**, administrative matters, distribution of Loan Documents for execution. Agent and Lenders make no assurances as to the privacy and security of electronic communications. Electronic and voice mail may not be used as effective notice under the Loan Documents.

       13.3.3      <u>Non-Conforming Communications</u>. Agent and Lenders may rely upon any notices purportedly given by or on behalf of Borrower even if such notices were not made in a manner specified herein, were incomplete or were not confirmed, or if the terms thereof, as understood by the recipient, varied from a later confirmation. Borrower shall indemnify and hold harmless each Indemnitee from any liabilities, losses, costs and expenses arising from any telephonic communication purportedly given by or on behalf of Borrower.

       **13.4**      **Performance of Borrower's Obligations**. Agent may, in its discretion at any time and from time to time, at Borrower's expense, pay any amount or do any act required of Borrower under any Loan Documents or otherwise lawfully requested by Agent to (a) enforce any Loan Documents or collect any Obligations; (b) protect, insure, maintain or realize upon any Collateral; or (c) defend or maintain the validity or priority of Agent's Liens in any Collateral, including any payment of a judgment, insurance premium, warehouse charge, finishing or processing charge, or landlord claim, or any discharge of a Lien. All payments, costs and expenses (including Extraordinary Expenses) of Agent under this Section shall be reimbursed to Agent by Borrower, **on demand**, with interest from the date incurred to the date of payment thereof at the Default Rate. Any payment made or action taken by Agent under this Section shall be without prejudice to any right to assert an Event of Default or to exercise any other rights or remedies under the Loan Documents.

       **13.5**      **Credit Inquiries**. Borrower hereby authorizes Agent and Lenders (but they shall have no obligation) to respond to usual and customary credit inquiries from third parties concerning Borrower or any Subsidiary.

       **13.6**      **Severability**. Wherever possible, each provision of the Loan Documents shall be interpreted in such manner as to be valid under Applicable Law. If any provision is found to be invalid under Applicable Law, it shall be ineffective only to the extent of such invalidity and the remaining provisions of the Loan Documents shall remain in full force and effect.

       **13.7**      **Cumulative Effect; Conflict of Terms**. The provisions of the Loan Documents are cumulative. The parties acknowledge that the Loan Documents may use several limitations, tests or measurements to regulate similar matters, and they agree that these are cumulative and that each must be performed as provided. Except as otherwise provided in another Loan Document (by specific reference to the applicable provision of this Agreement), if any provision contained herein is in direct conflict with any provision in another Loan Document, the provision herein shall govern and control.

       **13.8**      **Counterparts**. Any Loan Document may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement shall become effective when Agent has received counterparts bearing

the signatures of all parties hereto.  Delivery of a signature page of any Loan Document by telecopy or other electronic means shall be effective as delivery of a manually executed counterpart of such agreement.

**13.9    Entire Agreement**.  Time is of the essence of the Loan Documents.  The Loan Documents constitute the entire contract among the parties relating to the subject matter hereof, and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.

**13.10    Relationship with Lenders**.  The obligations of each Lender hereunder are several, and no Lender shall be responsible for the obligations or commitments of any other Lender.  Amounts payable hereunder to each Lender shall be a separate and independent debt.  It shall not be necessary for Agent or any other Lender to be joined as an additional party in any proceeding for such purposes.  Nothing in this Agreement and no action of Agent or Lenders pursuant to the Loan Documents shall be deemed to constitute Agent and Lenders to be a partnership, association, joint venture or any other kind of entity, nor to constitute control of Borrower.

**13.11    No Advisory or Fiduciary Responsibility**.  In connection with all aspects of each transaction contemplated by any Loan Document, Borrower acknowledges and agrees that: (a)(i) this credit facility and any related arranging or other services by Agent, any Lender, any of their Affiliates or any arranger are arm's-length commercial transactions between Borrower and such Person; (ii) Borrower has consulted its own legal, accounting, regulatory and tax advisors to the extent it has deemed appropriate; and (iii) Borrower is capable of evaluating and understanding, and does understand and accept, the terms, risks and conditions of the transactions contemplated by the Loan Documents; (b) each of Agent, Lenders, their Affiliates and any arranger is and has been acting solely as a principal in connection with this credit facility, is not the financial advisor, agent or fiduciary for Borrower, any of its Affiliates or any other Person, and has no obligation with respect to the transactions contemplated by the Loan Documents except as expressly set forth therein; and (c) Agent, Lenders, their Affiliates and any arranger may be engaged in a broad range of transactions that involve interests that differ from those of Borrower and its Affiliates, and have no obligation to disclose any of such interests to Borrower or its Affiliates.  To the fullest extent permitted by Applicable Law, Borrower hereby waives and releases any claims that it may have against Agent, Lenders, their Affiliates and any arranger with respect to any breach or alleged breach of agency or fiduciary duty in connection with any aspect of any transaction contemplated by a Loan Document.

**13.12    Confidentiality**.    Each of Agent and Lenders agrees to maintain the confidentiality of all Information (as defined below), except that Information may be disclosed (a) to its Affiliates, and to its and their partners, directors, officers, employees, agents, advisors and representatives (provided such Persons are informed of the confidential nature of the Information and instructed to keep it confidential); (b) to the extent requested by any governmental, regulatory or self-regulatory authority purporting to have jurisdiction over it or its Affiliates; (c) to the extent required by Applicable Law or by any subpoena or other legal process; (d) to any other party hereto; (e) in connection with any action or proceeding, or other exercise of rights or remedies, relating to any Loan Documents or Obligations; (f) subject to an agreement containing provisions substantially the same as this Section, to any Transferee or any

actual or prospective party (or its advisors) to any Bank Product; (g) with the consent of Borrower; or (h) to the extent such Information (i) becomes publicly available other than as a result of a breach of this Section or (ii) is available to Agent, any Lender or any of their Affiliates on a nonconfidential basis from a source other than Borrower. Notwithstanding the foregoing, Agent and Lenders may publish or disseminate general information describing this credit facility, including the names and addresses of Borrower and a general description of Borrower's businesses, and may use Borrower's logos, trademarks or product photographs in advertising materials. As used herein, "Information" means all information received from Borrower or any Subsidiary relating to it or its business that is identified as confidential when delivered. Any Person required to maintain the confidentiality of Information pursuant to this Section shall be deemed to have complied if it exercises the same degree of care that it accords its own confidential information. Each of Agent and Lenders acknowledges that (i) Information may include material non-public information concerning Borrower or any Subsidiary; (ii) it has developed compliance procedures regarding the use of material non-public information; and (iii) it will handle such material non-public information in accordance with Applicable Law, including federal and state securities laws.

**13.13 GOVERNING LAW**. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, UNLESS OTHERWISE SPECIFIED, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAW PRINCIPLES (BUT GIVING EFFECT TO FEDERAL LAWS RELATING TO NATIONAL BANKS).

**13.14 Consent to Forum**.

**BORROWER HEREBY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT SITTING IN OR WITH JURISDICTION OVER CHICAGO, ILLINOIS, IN ANY PROCEEDING OR DISPUTE RELATING IN ANY WAY TO ANY LOAN DOCUMENTS, AND AGREES THAT ANY SUCH PROCEEDING SHALL BE BROUGHT BY IT SOLELY IN ANY SUCH COURT. BORROWER IRREVOCABLY WAIVES ALL CLAIMS, OBJECTIONS AND DEFENSES THAT IT MAY HAVE REGARDING SUCH COURT'S PERSONAL OR SUBJECT MATTER JURISDICTION, VENUE OR INCONVENIENT FORUM. EACH PARTY HERETO IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 13.3.1.** Nothing herein shall limit the right of Agent or any Lender to bring proceedings against Borrower in any other court, nor limit the right of any party to serve process in any other manner permitted by Applicable Law. Nothing in this Agreement shall be deemed to preclude enforcement by Agent of any judgment or order obtained in any forum or jurisdiction.

**13.15 Waivers by Borrower**. To the fullest extent permitted by Applicable Law, Borrower waives (a) the right to trial by jury (which Agent and each Lender hereby also waives) in any proceeding or dispute of any kind relating in any way to any Loan Documents, Obligations or Collateral; (b) presentment, demand, protest, notice of presentment, default, non-payment, maturity, release, compromise, settlement, extension or renewal of any commercial paper, accounts, documents, instruments, chattel paper and guaranties at any time held by Agent on which Borrower may in any way be liable, and hereby ratifies anything Agent may do in this

regard; (c) notice prior to taking possession or control of any Collateral; (d) any bond or security that might be required by a court prior to allowing Agent to exercise any rights or remedies; (e) the benefit of all valuation, appraisement and exemption laws; (f) any claim against Agent or any Lender, on any theory of liability, for special, indirect, consequential, exemplary or punitive damages (as opposed to direct or actual damages) in any way relating to any Enforcement Action, Obligations, Loan Documents or transactions relating thereto; and (g) notice of acceptance hereof.  Borrower acknowledges that the foregoing waivers are a material inducement to Agent and Lenders entering into this Agreement and that Agent and Lenders are relying upon the foregoing in their dealings with Borrower.  Borrower has reviewed the foregoing waivers with its legal counsel and has knowingly and voluntarily waived its jury trial and other rights following consultation with legal counsel.  In the event of litigation, this Agreement may be filed as a written consent to a trial by the court.

**13.16  Patriot Act Notice**.  Agent and Lenders hereby notify Borrower that pursuant to the requirements of the Patriot Act, Agent and Lenders are required to obtain, verify and record information that identifies Borrower, including its legal name, address, tax ID number and other information that will allow Agent and Lenders to identify it in accordance with the Patriot Act. Agent and Lenders will also require information regarding each personal guarantor, if any, and may require information regarding Borrower's management and owners, such as legal name, address, social security number and date of birth.

[*Remainder of page intentionally left blank; signatures begin on following page*]

-68-

**IN WITNESS WHEREOF**, this Agreement has been executed and delivered as of the date set forth above.

**BORROWER**:

**PCS RECEIVABLES CORP.**

By:
Title:_____
Address: 200 West Jackson Boulevard
          Suite 710
          Chicago, Illinois 60606-6910
          Attn:
          Telecopy:

*Post-Confirmation Loan*
*and Security Agreement*